# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| PROCRAFT CABINETRY, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.**_____ |
| v. | ) | |
| | ) | **JURY DEMAND** |
| SWEET HOME KITCHEN AND BATH, | ) | |
| INC. d/b/a PROCRAFT CHICAGO, | ) | |
| PROCRAFT CABINETRY FLORIDA, | ) | |
| LLC, PROCRAFT CABINETRY | ) | |
| DALLAS, LLC, PROCRAFT CABINETRY | ) | |
| HOUSTON, LLC, PROCRAFT | ) | |
| CABINETRY SEATTLE, LLC, THE | ) | |
| CABINET AND GRANITE DEPOT, LLC | ) | |
| d/b/a PROCRAFT CABINET & GRANITE | ) | |
| DEPOT, HUNT PREMIER PROPERTIES, | ) | |
| LLC d/b/a PROCRAFT CABINET & | ) | |
| GRANITE DEPOT, PROCRAFT | ) | |
| CABINETRY URBANDALE, | ) | |
| QIANG HUANG, MIN HUA LIN, | ) | |
| YONGCHUN YANG, SHU LIN, YAO | ) | |
| ZHAO, XIGUANG TANG, PAUL CHIH | ) | |
| YANG LIN, TAO YU ZHENG, JIA LIU, | ) | |
| QIQI JIANG, WENCHEN CHEN, | ) | |
| LONGRONG LIN, KEVIN GUO, | ) | |
| CHANGUANG LIN, SHAOCHUN LIN, | ) | |
| SHENGQUAN GUO, CHANGZHU LIN, | ) | |
| QINGFEN CHEN, QIAO YUN HUANG, | ) | |
| QIAO HUNT, and DERICK HUNT, | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## COMPLAINT

---

Plaintiff ProCraft Cabinetry, Inc. ("Plaintiff" or "ProCraft"), for its Complaint against

Defendants Sweet Home Kitchen and Bath, Inc. d/b/a ProCraft Chicago, ProCraft Cabinetry

Florida, LLC, ProCraft Cabinetry Dallas, LLC, ProCraft Cabinetry Houston, LLC, ProCraft

Cabinetry Seattle, LLC, The Cabinet and Granite Depot LLC d/b/a ProCraft Cabinet & Granite Depot, Hunt Premier Properties, LLC d/b/a ProCraft Cabinet & Granite Depot, ProCraft Cabinetry Urbandale, Qiang Huang, Min Hua Lin, Yongchun Yang, Shu Lin, Yao Zhao, Xiguang Tang, Paul Chih Yang Lin, Tao Yu Zheng, Jia Liu, Qiqi Jiang, Wenchen Chen, Longrong Lin, Kevin Guo, Changuang Lin, Shaochun Lin, Shengquan Guo, Changzhu Lin, Qingfen Chen, Qiao Yun Huang, Qiao Hunt, and Derick Hunt (collectively, "Defendants"), states as follows:

## I.     INTRODUCTION

1.     Plaintiff brings this case under the Racketeer Influenced and Corrupt Organizations Act, the Lanham Act, and various other federal and state statutes and common law.  Defendants are engaged in a unlawful enterprise that illegally imports, offers for sale, and sells counterfeit cabinetry (*e.g.*, kitchen and bathroom cabinets) that bears identical or confusing and substantially similar marks to Plaintiff's registered PROCRAFT trademark and PROCRAFT design trademark (the "Counterfeit Cabinetry").  Defendants conduct is intentional, systematic, and egregious.

2.     As described more fully herein, certain Defendants are former retailers and their owners who purchased cabinetry from Plaintiff.  After failing to pay for millions of dollars in cabinetry, those Defendants simply began importing the Counterfeit Cabinetry.  In fact, there have been numerous instances in which consumers have contacted Plaintiff believing that counterfeit cabinets sold by Defendants were actually cabinets purchased from Plaintiff.

3.     Plaintiff seeks injunctive relief to stop Defendants' illegal actions before further harm is done.  Plaintiff also seeks monetary and punitive damages to compensate Plaintiff, to the extent that can be done, for all of the damage caused by Defendants and to deter further and future illegal actions by Defendants.

2

4.     Plaintiff and Defendants previously discussed settlement of this case for several months but no resolution was achieved.  After settlement discussions were determined to be futile, Plaintiff dismissed without prejudice a prior pending lawsuit in the Chancery Court for Davidson County, Tennessee and filed the present Complaint.

## II.     THE PARTIES

5.     Plaintiff ProCraft Cabinetry, Inc. ("ProCraft" or "Plaintiff") is a corporation incorporated under the laws of the State of Tennessee, with its principal place of business located at 429 McNally Drive, Nashville, Tennessee 37211.

6.     Upon information and belief, Defendant Sweet Home Kitchen and Bath, Inc. d/b/a ProCraft Chicago ("Sweet Home") is a corporation incorporated under the laws of the State of Illinois, with its principal place of business at 4620 Roosevelt Road, Hillside, Illinois 60162. Upon information and belief, Sweet Home does business in Tennessee, including in this district. Sweet Home may be served with process through service upon its registered agent, Qiang Huang, at 4620 Roosevelt Road, Hillside, Illinois 60162.  Sweet Home is a "person" under 18 U.S.C. § 1961(3) because it can and, upon information and belief, legally does own property or has a beneficial interest in property.

7.     Upon information and belief, Defendant ProCraft Cabinetry Florida, LLC ("PC Florida") is a limited liability company organized under the laws of the State of Florida, with its principal place of business at 1850 South Powerline Road, Suite A-H, Deerfield Beach, Florida 33442.  Upon information and belief, PC Florida does business in Tennessee, including in this district.  PC Florida may be served with process through service upon its registered agent, Paul Chih Yang Lin, at 1850 South Powerline Road, Suite A-H, Deerfield Beach, Florida 33442.  PC

3

Florida is a "person" under 18 U.S.C. § 1961(3) because it can and, upon information and belief, legally does own property or has a beneficial interest in property.

8.      Upon information and belief, Defendant ProCraft Cabinetry Dallas, LLC ("PC Dallas") is a limited liability company organized under the laws of the State of Texas, with its principal place of business at 2230 Lyndon B. Johnson Freeway, Suite 100, Dallas, Texas 75234. Upon information and belief, PC Dallas does business in Tennessee, including in this district. PC Dallas may be served with process through service upon its registered agent, Tao Zheng, at 2230 Lyndon B. Johnson Freeway, Suite 100, Dallas, Texas 75234.  PC Dallas is a "person" under 18 U.S.C. § 1961(3) because it can and, upon information and belief, legally does own property or has a beneficial interest in property.

9.      Upon information and belief, Defendant ProCraft Cabinetry Houston, LLC ("PC Houston") is a limited liability company organized under the laws of the State of Texas, with its principal place of business at 4647 Pine Timbers Street, Suite 100, Houston, Texas 77041.  Upon information and belief, PC Houston does business in Tennessee, including in this district.  PC Houston may be served with process through service upon its registered agent, Tao Zheng, at 4647 Pine Timbers Street, Suite 100, Houston, Texas 77041.  PC Houston is a "person" under 18 U.S.C. § 1961(3) because it can and, upon information and belief, legally does own property or has a beneficial interest in property.

10.      Upon information and belief, Defendant ProCraft Cabinetry Seattle, LLC ("PC Seattle") is a limited liability company organized under the laws of the State of Washington, with its principal place of business at 20848 84th Avenue South, Kent, Washington 98032.  Upon information and belief, PC Seattle does business in Tennessee, including in this district.  PC Seattle may be served with process through service upon its registered agent, Jia Liu, at 20848

4

84th Avenue South, Kent, Washington 98032. PC Seattle is a "person" under 18 U.S.C. § 1961(3) because it can and, upon information and belief, legally does own property or has a beneficial interest in property.

11.     Upon information and belief, Defendant The Cabinet and Granite Depot LLC d/b/a ProCraft Cabinet & Granite Depot ("CGD") is a limited liability company organized under the laws of the State of Ohio, with its principal place of business at 9850 Princeton Glendale Road, Suite E, Cincinnati, Ohio 45246. Upon information and belief, CGD operates a showroom under the name "ProCraft Cabinetry & Granite Depot" located at 4756 Houston Road, Florence, Kentucky 41042. Upon information and belief, CGD does business in Tennessee, including in this district. CGD may be served with process through service upon its registered agent, Qiao Yun Huang, at 9850 Princeton Glendale Road, Suite E, Cincinnati, Ohio 45246. CGD is a "person" under 18 U.S.C. § 1961(3) because it can and, upon information and belief, legally does own property or has a beneficial interest in property.

12.     Upon information and belief, Defendant Hunt Premier Properties LLC /b/a ProCraft Cabinet & Granite Depot ("PC Kentucky") is a limited liability company organized under the laws of the State of Ohio, with its principal place of business at 213 West Stoneridge Drive, Milford, Ohio 45150. Upon information and belief, PC Kentucky operates a showroom under the name "ProCraft Cabinetry & Granite Depot" located at 4756 Houston Road, Florence, Kentucky 41042. Upon information and belief, PC Kentucky does business in Tennessee, including in this district. PC Kentucky may be served with process through service upon its registered agent, Qiao Hunt, at 213 West Stoneridge Drive, Milford, Ohio 45150. PC Kentucky is a "person" under 18 U.S.C. § 1961(3) because it can and, upon information and belief, legally does own property or has a beneficial interest in property.

5

13.     Upon information and belief, Defendant ProCraft Cabinetry Urbandale ("PC Urbandale"), is an unincorporated entity doing business at 10052 Justin Drive, Suite H, Urbandale, Iowa 50322.  Upon information and belief, PC Urbandale may be served with process through service upon an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process at its principal place of business, located at 10052 Justin Drive, Suite H, Urbandale, Iowa 50322. PC Urbandale is a "person" under 18 U.S.C. § 1961(3) because it can and, upon information and belief, legally does own property or has a beneficial interest in property.

14.     Upon information and belief, Defendant Qiang "Peter" Huang ("Peter Huang") is an Illinois resident located at 4709 Devon Avenue, Lisle, Illinois 60532.  Peter Huang is a "person" under 18 U.S.C. § 1961(3) because he can and, upon information and belief, legally does own property or has a beneficial interest in property.

15.     Upon information and belief, Defendant Min Hua "Jackey" Lin ("Jackey Lin") is an Illinois resident located at 9128 Talcott Road, Woodridge, Illinois 60517.  Jackey Lin is a "person" under 18 U.S.C. § 1961(3) because she can and, upon information and belief, legally does own property or has a beneficial interest in property.

16.     Upon information and belief, Defendant Yongchun Yang is a Tennessee resident located at 4717 Belmont Park Terrace, Nashville, Tennessee 37215. Yongchun Yang is a "person" under 18 U.S.C. § 1961(3) because Yongchun Yang can and, upon information and belief, legally does own property or has a beneficial interest in property.

17.     Upon information and belief, Defendant Shu Lin is an Illinois resident located at 880 South Chatham Avenue, Addison, Illinois 60101.  Shu Lin is a "person" under 18 U.S.C. §

1961(3) because Shu Lin can and, upon information and belief, legally does own property or has a beneficial interest in property.

18. Upon information and belief, Defendant Yao Zhao is an Alabama resident located at 4811 Inglewood Court SE, Owens Cross Roads, Alabama 35763. Yao Zhao is a "person" under 18 U.S.C. § 1961(3) because Yao Zhao can and, upon information and belief, legally does own property or has a beneficial interest in property.

19. Upon information and belief, Defendant Xiguang Tang is an Alabama resident located at 4811 Inglewood Court SE, Owens Cross Roads, Alabama 35763. Xiguang Tang is a "person" under 18 U.S.C. § 1961(3) because Xiguang Tang can and, upon information and belief, legally does own property or has a beneficial interest in property.

20. Upon information and belief, Defendant Paul Chih Yang Lin is an Illinois resident located at 2 Georgetown Court, Algonquin, Illinois 60102. Paul Chih Yang Lin is a "person" under 18 U.S.C. § 1961(3) because he can and, upon information and belief, legally does own property or has a beneficial interest in property.

21. Upon information and belief, Defendant Tao Yu Zheng is a Texas resident located at 4647 Pine Timbers Street, Suite 100, Houston, Texas 77041. Tao Yu Zheng is a "person" under 18 U.S.C. § 1961(3) because Tao Yu Zheng can and, upon information and belief, legally does own property or has a beneficial interest in property.

22. Upon information and belief, Defendant Jia Liu is an Illinois resident located at 5038 Jarlath Avenue, Skokie, Illinois 60077. Jia Liu is a "person" under 18 U.S.C. § 1961(3) because Jia Liu can and, upon information and belief, legally does own property or has a beneficial interest in property.

23.     Upon information and belief, Defendant Qiqi Jiang is an Indiana resident located at 9574 Dewey Place, Crown Point, Indiana 46307.  Qiqi Jiang is a "person" under 18 U.S.C. § 1961(3) because Qiqi Jiang can and, upon information and belief, legally does own property or has a beneficial interest in property.

24.     Upon information and belief, Defendant Wenchen Chen is an Illinois resident located at 1517 East Lowden Lane, Mount Prospect, Illinois 60056.  Wenchen Chen is a "person" under 18 U.S.C. § 1961(3) because Wenchen Chen can and, upon information and belief, legally does own property or has a beneficial interest in property.

25.     Upon information and belief, Defendant Longrong Lin is an Illinois resident located at 17846 Greenwood Drive, Tinley Park, Illinois 60487.  Longrong Lin is a "person" under 18 U.S.C. § 1961(3) because Longrong Lin can and, upon information and belief, legally does own property or has a beneficial interest in property.

26.     Upon information and belief, Defendant Kevin Guo is an Illinois resident located at 1859 Krowka Drive, Des Plaines, Illinois 60018.  Kevin Guo is a "person" under 18 U.S.C. § 1961(3) because Kevin Guo can and, upon information and belief, legally does own property or has a beneficial interest in property.

27.     Upon information and belief, Defendant Changguang Lin is an Illinois resident located at 22108 Meadow Lake Place, Richton Park, Illinois 60471.  Changguang Lin is a "person" under 18 U.S.C. § 1961(3) because Changguang Lin can and, upon information and belief, legally does own property or has a beneficial interest in property.

28.     Upon information and belief, Defendant Shaochun Lin is a New York resident located at 4838 203rd Street, First Floor, Oakland Gardens, New York 11364.  Shaochun Lin is a

"person" under 18 U.S.C. § 1961(3) because Shaochun Lin can and, upon information and belief, legally does own property or has a beneficial interest in property.

29.     Upon information and belief, Defendant Shengquan Guo is an Illinois resident located at 3915 Niblick Court, Crystal Lake, Illinois 60012. Shengquan Guo is a "person" under 18 U.S.C. § 1961(3) because Shengquan Guo can and, upon information and belief, legally does own property or has a beneficial interest in property.

30.     Upon information and belief, Defendant Changzhu Lin is an Illinois resident located at 17538 Dolorosa Drive, Orland Park, Illinois 60467.  Changzhu Lin is a "person" under 18 U.S.C. § 1961(3) because Changzhu can and, upon information and belief, legally does own property or has a beneficial interest in property.

31.     Upon information and belief, Defendant Qingfen Chen is an Illinois resident located at 9128 Talcott Road, Woodridge, Illinois 60517.  Qingfen Chen is a "person" under 18 U.S.C. § 1961(3) because Qingfen Chen can and, upon information and belief, legally does own property or has a beneficial interest in property.

32.     Upon information and belief, Defendant Qiao Yun Huang is an Ohio resident located at 9850 Princeton Glendale Road, Suite E, Cincinnati, Ohio 45246.  Qiao Yung Huang is a "person" under 18 U.S.C. § 1961(3) because Qiao Yung Huang can and, upon information and belief, legally does own property or has a beneficial interest in property.

33.     Upon information and belief, Defendant Qiao Hunt is an Ohio resident located at 213 West Stoneridge Drive, Milford, Ohio 45150.  Qiao Hunt is a "person" under 18 U.S.C. § 1961(3) because Qiao Hunt can and, upon information and belief, legally does own property or has a beneficial interest in property.

34.     Upon information and belief, Defendant Derick Hunt an Ohio resident located at 213 West Stoneridge Drive, Milford, Ohio 45150.  Derick Hunt is a "person" under 18 U.S.C. § 1961(3) because Derick Hunt can and, upon information and belief, legally does own property or has a beneficial interest in property.

### III.    NATURE OF ACTION

35.     This is an action for causes of action arising under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961 *et seq.*; trademark infringement, unfair competition, false designation of origin, false advertising, and cybersquatting arising under Section 43 of the Trademark Act of 1946 ("Lanham Act"), as amended, 15 U.S.C. § 1051 *et seq.*; common law trademark infringement, unfair competition and unjust enrichment under Tennessee law; breach of contract arising under Tennessee law; declaratory judgment; violations of the Florida Revised Limited Liability Act, Fla. Stat. § 605.0101 *et seq.*; and violations of the Texas Business Organization Code, Tex. Bus. Orgs. § 1.001 *et seq.*

### IV.    JURISDICTION AND VENUE

36.     This Court has subject matter jurisdiction over this action under 18 U.S.C. § 1964 in that this case arises under the RICO Act, 18 U.S.C. § 1961 *et seq.*, 15 U.S.C. § 1121 and 28 U.S.C. § 1338 in that this case arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; 28 U.S.C. § 2201 *et seq.*, in that this case arises under the Federal Declaratory Judgment Act, and 28 U.S.C. § 1331 as it involves a federal question.

37.     This Court has subject matter jurisdiction over the unfair competition claims herein under the provisions of 28 U.S.C. § 1338(b) in that said claims are joined with a substantial and related claim under the RICO Act, 18 U.S.C. § 1961 *et seq.* and the Lanham Act, 15 U.S.C. § 1051 *et seq.*

38.     This Court has supplemental jurisdiction over the claims that arise under Tennessee law pursuant to 28 U.S.C. § 1367(a) because they are substantially related to the claims that arise under the RICO Act and the Lanham Act of the United States.  Furthermore, this Court has supplemental jurisdiction because both the state and federal claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate the state and federal issues be consolidated for a single trial.

39.     Upon information and belief, this Court has general personal jurisdiction over Defendants based on their continuous and systematic minimum contacts with residents of Tennessee, through the distribution and sale of their goods and services in Tennessee, because they regularly transact business in this District, and/or have offered products into interstate commerce through one or more interactive websites, and have caused injury in this District. Upon information and belief, this Court also has specific personal jurisdiction over Defendants based on their purposeful direction of their promotional and advertising activities and sales of their goods and services to residents and customers in Tennessee, and through their contracting with and purchasing goods from a Tennessee corporation.

40.     Further, upon information and belief, Defendants have committed tortious acts within the State of Tennessee and/or have committed tortious acts without the State of Tennessee and regularly do or solicit business, engage in other persistent courses of conduct and/or derive substantial revenue from products sold offered in the State of Tennessee and derive substantial revenue from interstate commerce.  In addition, ProCraft has been injured in this judicial district.

41.     Further, this Court has personal jurisdiction under Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-201 *et seq.*, because, upon information and belief, (1) Defendants have transacted business in Tennessee; (2) the tortious acts or omissions occurred in Tennessee; (3)

11

the damages occurred in Tennessee to a corporation with its principal place of business in Tennessee; and (4) jurisdiction based on Defendants' contacts with Tennessee (including, but not limited to, sales of products and services) is not inconsistent with the Constitution of the State of Tennessee or the Constitution of the United States.

42.     In addition to the other grounds for personal jurisdiction, Defendants are subject to personal jurisdiction under 18 U.S.C. § 1965 because one or more of the Defendants have clear and direct minimum contacts with Tennessee and this District in particular and given the size of the enterprise, the near-nationwide pattern of racketeering and minimum contacts in the United States generally, the ends of justice require that other Defendants residing in any other district be brought before this Court and served with a summons.

43.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims arose in this District, and, upon information and belief, Defendants are subject to personal jurisdiction pursuant to Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-201 *et seq.*

## V.     THE CONTROVERSY

### A.     PROCRAFT'S BUSINESS IN THE KITCHEN AND BATH INDUSTRY

44.     ProCraft is a cabinet and cabinet accessory manufacturer, and distributer based in Nashville, Tennessee.

45.     With over forty years of experience manufacturing cabinets, ProCraft has grown into a major international cabinet supplier within the kitchen and bath industry.

46.     ProCraft's headquarters, showroom, and primary warehouse are located in Nashville, Tennessee.

47.     ProCraft's manufacturing facility is located in China.

12

48.     ProCraft also maintains warehouse locations in Houston, Texas and Atlanta, Georgia.

49.     When customers purchase products from ProCraft, such orders are filled with stock inventory and shipped from ProCraft's warehouse ("warehouse orders").

50.     If custom or larger orders cannot be filled by ProcCraft's in-stock inventory, such orders are manufactured by ProCraft's manufacturing facility in China and sent directly to the customer ("container orders").

51.     Container orders can be ordered and purchased through ProCraft's Nashville office.

## B.      THE PROCRAFT FAMILY OF TRADEMARKS

52.     Commencing at least as early as January 15, 2010, ProCraft has used the "PROCRAFT CABINETRY" mark continually nationwide in interstate commerce to identify certain of its goods and services and to distinguish such goods and services from those offered and provided by others.

53.     Among other intellectual property holdings, ProCraft is the owner of a federal trademark registration, U.S. Reg. No. 5,258,804, for the trademark PROCRAFT CABINETRY® (the "PROCRAFT CABINETRY® Mark") for use as a source and designation of origin in connection with "Cabinets; Cabinets being furniture for residential and commercial buildings; Kitchen Cabinets" (the "'804 Registration").  A true and correct copy of the '804 Registration is incorporated by reference and attached hereto as **Exhibit 1**.

54.     The '804 Registration is valid and subsisting and remains in full force and effect as evidence of the validity thereof and of ProCraft's exclusive right to own and use the PROCRAFT CABINETRY® Mark in connection with the goods and services specified in the '804 Registration.

55.     ProCraft is the owner of a federal trademark application, U.S. Application Serial No. 87/427,749 for the trademark PROCRAFT CABINETRY PROFESSIONALLY CRAFTED CABINETS and design depicted below (the "PROCRAFT Design Mark"), for use in connection with "Cabinets; Cabinets being furniture for residential and commercial buildings; Kitchen Cabinets" (the "'749 Application").



56.     The USPTO has published the '749 Application for opposition.  A true and correct copy of the Notice of Publication for the '749 Application is attached hereto as **Exhibit 2**.

57.     ProCraft also has established, through continuous, long-term use in commerce common law rights in the PROCRAFT CABINETRY Mark and PROCRAFT Design Mark, and the use of he phrase "PROCRAFT" as a trade name or part of a trade name.

58.     The afore-mentioned federally-registered and common law marks are hereinafter referred to collectively as the "PROCRAFT Marks."

59.     ProCraft owns all right, interest, and title to the PROCRAFT Marks, including all goodwill associated therewith and the right to sue for past, present, and future infringement.

60.     ProCraft has continuously used the PROCRAFT Marks and in the United States as a symbol of ProCraft as the source and origin for high quality cabinet products and accessories.

14

61.     ProCraft's products have been widely advertised or promoted and extensively offered for sale throughout the United States, including, without limitation, within the State of Tennessee.

62.     ProCraft has expended considerable time, resources, and effort in promoting the PROCRAFT Marks and developing substantial goodwill associated therewith.

63.     The PROCRAFT Marks are suggestive and inherently distinctive when used in conjunction with ProCraft's goods.

64.     Due to the continual use of the PROCRAFT Marks by ProCraft, the PROCRAFT Marks have come to indicate a single source of ProCraft's goods and services.  The PROCRAFT Marks have further come to indicate ProCraft as the single source of such quality goods.

65.     As a result of the long and exclusive use by ProCraft of its PROCRAFT Marks, the large sales under the PROCRAFT Marks, and the large amount of money spent or foregone for advertising and promotion of its goods, the PROCRAFT Marks have become, through widespread and favorable public acceptance and recognition, an exclusive asset of substantial value as a symbol of ProCraft, its quality products, and its goodwill.

66.     As a result of the long and exclusive use by ProCraft of its PROCRAFT Marks, the large sales under the PROCRAFT Marks, and the large amount of money spent or foregone for advertising and promotion of its goods, the PROCRAFT Marks have become famous through the wide recognition of the general consuming public of the United States as a designation of the source of goods of and originating from ProCraft.

67.     ProCraft and its use of the PROCRAFT Marks in the kitchen and bath industry are well-known.

## C.  PROCRAFT'S CABINET PRODUCTS AND ACCESSORIES

68.  ProCraft, under its PROCRAFT Marks and trade name, sells high quality cabinet products and accessories in a variety of door styles and finishes, including, without limitation, the following:

a.  "Arlington Oatmeal;"

b.  "Avalon Ashen;"

c.  "Belmont Gibraltar Gray;"

d.  "Liberty Shaker White;"

e.  "Liberty Shaker Espresso;"

f.  "Liberty Shaker Gray;"

g.  "Portland Chestnut;"

h.  "Saratoga Cinnamon;"

i.  "Calumet Mocha;"

j.  "Calumet Ivory;"

k.  "Providence Espresso;"

l.  "Providence White;" and

m.  "Sonoma Espresso."

The foregoing cabinet door style names shall be referred to hereinafter as the "ProCraft Product Marks."

69.  ProCraft also offers for sale accessory products for use in connection with its ProCraft Cabinetry® Products, including, but not limited to: blind corner pullout products, dishware organizers, pullout products, trash organizers, pullout organizers, and roll out sink trays, among other products.

16

70. ProCraft's cabinet products, in all door styles and finishes, and accessory products shall be referred to collectively hereinafter as the "ProCraft Cabinetry® Products." A true and correct copy of select webpages from ProCraft's website located at www.procraftcabinetry.com are attached hereto as collective **Exhibit 3**.

71. ProCraft also offers various business opportunities for third parties looking to partner with ProCraft to sell ProCraft Cabinetry® Products.

72. Specifically, ProCraft currently offers opportunities to serve as an authorized dealer, distributor, designer, or sales representative for ProCraft, subject to specific minimum requirements and other terms and conditions.

73. Those entities who do not meet ProCraft's minimum requirements or do not adhere to ProCraft's terms and conditions will not be accepted by ProCraft to serve as an authorized ProCraft business partner.

### D. DEFENDANTS' RELATIONSHIP WITH EACH OTHER

74. Upon information and belief, Defendants jointly own and/or operate an unincorporated entity and/or maintain an unregistered association called "ProCraft Kitchen and Bath."

75. Upon information and belief, Defendants advertise and promote their infringing and counterfeit products offered by "ProCraft Kitchen and Bath" under the word "Procraft" and/or the following design mark (collectively, the "Infringing Design Mark" or the "Counterfeit Mark"):

17



**1.     The ProCraft Kitchen Website**

76.     Upon information and belief, Defendants own and/or operate the website located at www.procraftkitchenandbath.com (the "ProCraft Kitchen Website").

77.     According to the WHOIS registry, the ProCraft Kitchen Website was created on January 24, 2017.    A true and correct copy of the WHOIS information for the www.procraftkitchenandbath.com domain name is attached hereto as **Exhibit 4**.

78.     Upon information and belief, Defendants have taken steps to intentionally shroud their involvement in the operation of the ProCraft Kitchen Website from disclosure; specifically, through utilizing "private registration" of its domain name through Contact Privacy, Inc. ("Contact Privacy").

79.     Defendants' use of a private registration through Contact Privacy shields its identity and contact information public disclosure by replacing Defendants' information in the publicly available WHOIS directory with Contact Privacy's contact information.  *See* **Exhibit 4**.

80.     The website located at the domain name www.procraftkitchenandbath.com directs consumers to a webpage advertising the unauthorized and counterfeit PROCRAFT products offered by Defendants.  A true and correct copy of select webpages of the ProCraft Kitchen Website is attached hereto as **Exhibit 5**.

18

81.     The ProCraft Kitchen Website claims that "ProCraft Kitchen and Bath" has locations in Chicago, Illinois; Dallas, Texas; Houston, Texas; Seattle, Washington; and Deerfield Beach, Florida.  *See* **Exhibit 5**.

82.     The ProCraft Kitchen Website lists the following address for its Chicago location:



83.     The Chicago address listed on the ProCraft Kitchen Website is the same address registered by Sweet Home for its registered agent.

84.     According to the Office of the Illinois Secretary of State, Department of Business Services database, Qingfen Chen serves as President of Sweet Home and Qiang ("Peter") Huang serves as Secretary and Registered Agent of Sweet Home.   A true and correct copy of a screenshot of the corporation file detail report for Sweet Home accessed from the Illinois Secretary of State, Department of Business Services database is attached hereto as **Exhibit 6**.

85.     Upon information and belief, Jackey Lin also maintains an active role operating Sweet Home as President and/or CEO.

86. The ProCraft Kitchen Website lists the following address for its Dallas location:



**DALLAS**

⚲ 2230 LBJ Freeway
Dallas, TX 75234
☎ 469.607.2588
🖨 469.480.2599
✉ info@procraftdallas.com
⏱ Mon - Fri: 9am - 5pm
Saturday: 9am - 3pm

*See* **Exhibit 5**.

87. The Dallas address listed on the ProCraft Kitchen Website is the same address registered by PC Dallas with the Texas Secretary of State. A true and correct copy of a screenshot of the business entity details for PC Dallas, available from the Texas Secretary of State Business Organizations Inquiry database, is attached hereto as **Exhibit 7**.

88. According to PC Dallas' Certificate of Formation, PC Dallas is governed by the following Managing Members: ProCraft, Longrong Lin, Kevin Guo, Changguang Lin, Jia Liu, Wenchen Chen Qiqi Jiang, Tao Zheng, Shaochun Lin, Shengquan Guo, and Changzhu Lin. A true and correct copy of PC Dallas' Certificate of Formation is attached hereto as **Exhibit 8**.

89. As described in Section V(D)(4)(c) *infra*, ProCraft was unaware of and did not authorize its appointment as a Managing Member of PC Dallas and, as such, has not participated in the operation of PC Dallas.

90.     The ProCraft Kitchen Website lists the following address for its Houston location:



*See* **Exhibit 5**.

91.     The Houston address listed on the ProCraft Kitchen Website is the same address registered by PC Houston with the Texas Secretary of State.   A true and correct copy of a screenshot of the business entity details for PC Houston, available from the Texas Secretary of State Business Organizations Inquiry database, is attached hereto as **Exhibit 9**.

92.     According to PC Houston's Certificate of Formation, PC Dallas is governed by the following Managing Members: ProCraft, Longrong Lin, Kevin Guo, Changguang Lin, Jia Liu, Changzhu Lin, Qiqi Jiang, Tao Zheng, Shaochun Lin, Shengquan Guo, and Wenchen Chen. A true and correct copy of PC Houston's Certificate of Formation is attached hereto as **Exhibit 10**.

93.     As described in Section V(D)(4)(d) *infra*, ProCraft was unaware of and did not authorize its appointment as a Managing Member of PC Houston and, as such, has not participated in the operation of PC Houston.

21

94.    The ProCraft Kitchen Website lists the following address for its Seattle location:



*See* **Exhibit 5**.

95.    The Seattle address listed on the ProCraft Kitchen Website is the same address registered by PC Seattle with the Washington Secretary of State.  A true and correct copy of a screenshot of the business entity details for PC Seattle, available from the Washington Secretary of State, Corporations Registration database, is attached hereto as **Exhibit 11**.

96.    According to the Washington Secretary of State, Corporations Registration database, PC Seattle is governed by the following Governors: Tao Yu Zheng, Jia Liu, Qiqi Jiang, and Wenchen Chen.  *See* **Exhibit 11**.

97.     The ProCraft Kitchen Website lists the following address for its Florida location:



*See* **Exhibit 5**.

98.     The Florida address listed on the ProCraft Kitchen Website is the same address registered by PC Florida with the Florida Department of State, Division of Corporations. A true and correct copy of a screenshot of the business entity details for PC Florida, available from the Florida Department of State, Division of Corporations database, is attached hereto as **Exhibit 12**.

99.     According to PC Florida's Articles of Incorporation, the following Authorized Members are authorized to manage PC Florida: ProCraft, Yongchun Yang, Shu Lin, Yao Zhao, and Paul Chih Yang Lin. A true and correct copy of PC Florida's Articles of Incorporation is attached hereto as **Exhibit 13**.

100.    As described in Section V(D)(4)(a) *infra*, ProCraft was unaware of and did not authorize its appointment as an Authorized Member of PC Florida and, as such, has not participated in the management of PC Florida.

101.    ProCraft has not granted authorization to Defendants to purchase the www.procraftkitchenandbath.com domain name.

102.     ProCraft has not granted authorization to Defendants to own and/or operate the ProCraft Kitchen Website.

103.     ProCraft has not granted authorization to use the PROCRAFT Marks on or to sell ProCraft Cabinetry® Products through the ProCraft Kitchen Website.

104.     Upon information and belief, the ProCraft Kitchen Website was designed to form contacts with potential customers, including residents in this District.

105.     Upon information and belief, Defendants operate and transact business through the interactive ProCraft Kitchen Website, through which Defendants invite potential customers from any city in the United States, including residents in this District, to submit their contact information to request pricing on Defendants' infringing and counterfeit products.



*See* **Exhibit 5**.

106.     Upon information and belief, Defendants operate and transact business through the interactive ProCraft Kitchen Website, through which Defendants invite potential customers from any city in the United States, including residents in this District, to partner with Defendants

24

to become a dealer, distributor, designer, sales representative for "ProCraft Kitchen and Bath." *See* **Exhibit 5**.

107.    Upon information and belief, Defendants operate and transact business through the interactive ProCraft Kitchen Website, through which Defendants accept online job applications to become a sales representative for "ProCraft Kitchen and Bath." *See* **Exhibit 5**.

108.    Upon information and belief, the ProCraft Kitchen Website was designed to form contacts with potential customers, claiming to hire "Sales Reps Nationwide" and inviting potential customers, including residents in this District, to submit a "business inquiry form" in order to receive training, sales support, and competitive compensation plans.

## Business Inquiry Form

- ☑ Currently Hiring Sales Reps Nationwide
- ☑ Training Provided
- ☑ Receive Sales Support
- ☑ High Quality & Competitive Products
- ☑ Competitive Compensation Plans
- ☑ Online Job Application

*See* **Exhibit 5**.

109.    Upon information and belief, the ProCraft Kitchen Website was designed to form contacts with potential customers, inviting them to "Call or email us to find out more information about our product, or to talk to a designer about pricing and how to get a quote." *See* **Exhibit 5**.

110.    Upon information and belief, the ProCraft Kitchen Website was designed to form contacts with potential customers, inviting them to "schedule appointments for our designers, or to make an appointment for a measurement." *See* **Exhibit 5**.

111.     The ProCraft Kitchen Website also allows potential customers to find a "ProCraft Kitchen and Bath" provider near the customers, including providers within the United States.

112.     The ProCraft Kitchen Website does not direct potential customers to ProCraft or any of the authorized providers to whom ProCraft distributes its ProCraft Cabinetry® Products.

113.     Upon information and belief, Defendants advertise and offer infringing and counterfeit products for sale in the United States through the interactive ProCraft Kitchen Website.

**2.     The PC Chicago Website**

114.     Upon information and belief, Defendants own and/or operate the website located at cabinetsplacerandom.squarespace.com (the "PC Chicago Website").  A true and correct copy of select webpages of the PC Chicago Website is attached hereto as **Exhibit 14**.

115.     The PC Chicago Website utilizes the same design logo as the ProCraft Kitchen Website:



*See* **Exhibit 14**.

116.     The PC Chicago Website claims that "ProCraft Kitchen and Bath" has locations in Chicago, Illinois; Dallas, Texas; Houston, Texas; Seattle, Washington; and Deerfield Beach, Florida.  *See* **Exhibit 14**.

117.    The PC Chicago Website lists the same addresses for its Chicago, Dallas, Houston, Seattle, and Florida locations as the ProCraft Kitchen Website.

118.    ProCraft has not granted authorization to Defendants to purchase the cabinetsrandom.squarespace.com domain name.

119.    ProCraft has not granted authorization to Defendants to own and/or operate the PC Chicago Website.

120.    ProCraft has not granted authorization to use the PROCRAFT Marks on or to sell ProCraft Cabinetry® Products through the PC Chicago Website.

121.    Upon information and belief, the PC Chicago Website was designed to form contacts with potential customers, including residents in this District.

122.    Upon information and belief, Defendants operate and transact business through the interactive PC Chicago Website, through which Defendants invite potential customers from any city in the United States, including residents in this District, to submit their contact information to request pricing on Defendants' infringing and counterfeit products.



*See* **Exhibit 14**.

123. Upon information and belief, Defendants operate and transact business through the interactive PC Chicago Website, through which Defendants invite potential customers from any city in the United States, including residents in this District, to submit their contact information and measurements to receive a pricing quote for Defendants' infringing and counterfeit products. *See* **Exhibit 14**.

124. Upon information and belief, Defendants operate and transact business through the interactive PC Chicago Website, through which Defendants invite potential customers from any city in the United States, including residents in this District, to start the "simple process" for ordering Defendants' infringing and counterfeit products online.



*See* **Exhibit 14**.

125. Upon information and belief, Defendants operate and transact business through the interactive PC Chicago Website because, after a potential customer (including residents in this District) starts the online ordering process on the PC Chicago Website, a "Sales Rep Will Call you."



*See* **Exhibit 14**.

126.    Upon information and belief, Defendants operate and transact business through the interactive PC Chicago Website because, after a potential customer (including residents in this District) starts the online ordering process, and after Defendants' "Sales Reps" call potential customers, "Our designers create 3D kitchen and quote payment and shipping & delivery."



*See* **Exhibit 14**.

127.    Upon information and belief, the PC Chicago Website was designed to form contacts with potential customers. including residents in this District, inviting them to place orders "by fax or email with your account in good standing[.]"  *See* **Exhibit 14**.

29

128.    Upon information and belief, the PC Chicago Website was designed to form contacts with potential customers, inviting them to "Call or email us to find out more information about our product, or to talk to a designer about pricing and how to get a quote." *See* **Exhibit 14**.

129.    Upon information and belief, the PC Chicago Website was designed to form contacts with potential customers, inviting them to "schedule appointments for our designers, or to make an appointment for a measurement." *See* **Exhibit 14**.

130.    The PC Chicago Website also allows potential customers to find a "ProCraft Kitchen and Bath" provider near the customers, including providers within the United States.

131.    The PC Chicago Website does not direct potential customers to ProCraft or any of the authorized providers to whom ProCraft distributes its ProCraft Cabinetry® Products.

132.    Upon information and belief, Defendants advertise and offer infringing and counterfeit products for sale in the United States through the interactive PC Chicago Website.

**3.      The PC Miami Website**

133.    Upon information and belief, Defendants own and/or operate the website located at www.procraftmiami.com (the "PC Miami Website").   A true and correct copy of select webpages of the PC Miami Website is attached hereto as **Exhibit 15**.

134.    The PC Miami Website lists the same contact address as PC Florida, listed on the ProCraft Kitchen Website.

135.    ProCraft has not granted authorization to Defendants to purchase the www.procraftmiami.com domain name.

136.    ProCraft has not granted authorization to Defendants to own and/or operate the PC Miami Website.

137.    ProCraft has not granted authorization to use the PROCRAFT Marks on or to sell ProCraft Cabinetry® Products through the PC Miami Website.

138.    Upon information and belief, the PC Miami Website was designed to form contacts with potential customers, including residents in this District.

139.    Upon information and belief, Defendants operate and transact business through the interactive PC Miami Website, through which Defendants invite potential customers from any city in the United States, including residents in this District, to submit their contact information to request pricing on Defendants' infringing and counterfeit products.



*See* **Exhibit 15**.

140.    Upon information and belief, the PC Miami Website was designed to form contacts with potential customers, inviting them to call or email Defendants "to take your kitchen or bathroom remodeling questions." *See* **Exhibit 15**.

141.    The PC Miami Website also allows potential customers to find a "ProCraft Kitchen and Bath" provider near the customers, including providers within the United States.

142.    The PC Miami Website does not direct potential customers to ProCraft or any of the authorized providers to whom ProCraft distributes its ProCraft Cabinetry® Products.

143.    Upon information and belief, Defendants advertise and offer infringing and counterfeit products for sale in the United States through the interactive PC Miami Website.

**4.    The PC Urbandale Website**

144.    Upon information and belief, Defendants own and/or operate the website located at www.gcraftcabinetry.com (the "PC Urbandale Website").  A true and correct copy of select webpages of the PC Urbandale Website is attached hereto as **Exhibit 16**.

145.    The PC Urbandale Website utilizes the same design logo as the ProCraft Kitchen Website:



*See* **Exhibit 16**.

146.    The PC Urbandale Website states that "ProCraft Cabinetry Des Moines is an exclusive dealer of ProCraft Cabinetry[.]"  *See* **Exhibit 16**.

147.    ProCraft has not entered into an exclusive dealership agreement with any entity located in Urbandale, Iowa.

148.    ProCraft has not authorized the entity(ies) operating the PC Urbandale Website to use the PROCRAFT Marks on or to sell ProCraft Cabinetry® Products through the PC Urbandale Website.

32

149.     Upon information and belief, PC Urbandale and the PC Urbandale Website are owned and/or operated in concert by Defendants, as evidenced by the PC Urbandale Website's use of the same unauthorized design mark as used on the PC Urbandale Website.

150.     ProCraft has not granted authorization to Defendants to own and/or operate the PC Urbandale Website.

151.     ProCraft has not granted authorization to Defendants to use the PROCRAFT Marks on or to sell ProCraft Cabinetry® Products through the PC Urbandale Website.

152.     Upon information and belief, the PC Urbandale Website was designed to form contacts with potential customers, including residents in this District.

153.     Upon information and belief, Defendants operate and transact business through the interactive PC Urbandale Website, through which they could accept orders of their products from any person in any city in the United States, including residents in this District.  *See* **Exhibit 16**.

154.     Upon information and belief, through their interactive PC Urbandale Website, Defendants transacted business, both accepting and processing orders of their products, including without limitation, their ""DOUBLE 50/50 Sink" and "Standard 10 x 10 Cabinets, Solid Wood, Avalon Ashen Color."



DOUBLE 50/50 Sink

~~$180.00~~ $110.00



Standard 10 x 10 Cabinets, Solid Wood, Avalon Ashen Color

~~$5,321.00~~ $2,660.50

*See* **Exhibit 16**.

155. Upon information and belief, Defendants operate and transact business through the interactive PC Urbandale Website, through which Defendants invite potential customers from any city in the United States, including residents in this District, to submit their contact information to request pricing on Defendants' infringing and counterfeit products.

# Pricing

*To start our quote and price our designers will need a measurement of your space. If you don't have one you can find more information on the measuring your kitchen page below. If you know the size of your kitchen you can fill out the form yourself or you can have one of our people come out for a free measurements.  As well as the measurements form we could use a little more information via our information form below. From there our designers will create a 3D kitchen or bath to fit your needs. Then we can give you an accurate quote and timeline. For more information feel free to email us or call.*

Name

Email

Subject

Message

Send

*See* **Exhibit 16**.

156.    Upon information and belief, Defendants operate and transact business through the interactive PC Urbandale Website, through which Defendants invite potential customers to schedule online a "FREE design consultation" or "FREE in home measurement."



*See* **Exhibit 16**.

157.    Upon information and belief, Defendants operate and transact business through the interactive PC Chicago Website, through which Defendants invite potential customers from any city in the United States, including residents in this District, to start the process for ordering Defendants' infringing and counterfeit products online.



*See* **Exhibit 16**.

158.    Upon information and belief, Defendants operate and transact business through the interactive PC Urbandale Website because, after a potential customer (including residents in this District) starts the online ordering process on the PC Urbandale Website, a "Sales Rep Will Call You."



*See* **Exhibit 16**.

159.    Upon information and belief, Defendants operate and transact business through the interactive PC Urbandale Website because, after a potential customer (including residents in

36

this District) starts the online ordering process, and after Defendants' "Sales Reps" call potential customers, "Our Designers Create 3D kitchen + Quote Payment and Shipping & Delivery."



*See* **Exhibit 16**.

160.    Upon information and belief, the PC Urbandale Website was designed to form contacts with potential customers, inviting them to "call or email us" to "speak with a sale or designer[.]" *See* **Exhibit 16**.

161.    The PC Urbandale Website also allows potential customers to find a "ProCraft Kitchen and Bath" provider near the customers, including providers within the United States.

162.    The PC Urbandale Website does not direct potential customers to ProCraft or any of the authorized providers to whom ProCraft distributes its ProCraft Cabinetry® Products.

163.    Upon information and belief, Defendants advertise and offer infringing and counterfeit products for sale in the United States through the interactive PC Urbandale Website.

**5.      The PC Kentucky Website**

164.    Upon information and belief, Defendants own and/or operate the website located at www.granitecincinnati.com (the "PC Kentucky Website").  A true and correct copy of select webpages of the PC Kentucky Website is attached hereto as **Exhibit 17**.

165.    The PC Kentucky Website states that it maintains a "Kentucky Showroom" under the name "ProCraft Cabinetry & Granite Depot."



**Kentucky Showroom**
ProCraft Cabinetry & Granite Depot
4756 Houston Rd
Florence Ky 41042
Phone: 859-283-1888
info@procraftky.com
Hours: Mon-Fri 9-6 Sat 10-4

*See* **Exhibit 17**.

166.    ProCraft has not entered into an exclusive dealership agreement with any entity located in Florence, Kentucky.

167.    ProCraft has not authorized the entity(ies) operating the PC Kentucky Website to use the PROCRAFT Marks on or to sell ProCraft Cabinetry® Products through the PC Kentucky Website.

168.    Upon information and belief, CGD, PC Kentucky, and the PC Kentucky Website are owned and/or operated in concert by Defendants.

169.    ProCraft has not granted authorization to Defendants to own and/or operate the PC Kentucky Website.

170.    ProCraft has not granted authorization to Defendants to use the PROCRAFT Marks on or to sell ProCraft Cabinetry® Products through the PC Kentucky Website.

171.    Upon information and belief, the PC Kentucky Website was designed to form contacts with potential customers, including residents in this District.

172.    Upon information and belief, Defendants operate and transact business through the interactive PC Kentucky Website, through which Defendants invite potential customers from any city in the United States, including residents in this District, to submit their contact information to request information on Defendants' infringing and counterfeit products.



See **Exhibit 17**.

173.    The PC Kentucky Website does not direct potential customers to ProCraft or any of the authorized providers to whom ProCraft distributes its ProCraft Cabinetry® Products.

174.    Upon information and belief, Defendants advertise and offer infringing and counterfeit products for sale in the United States through the interactive PC Kentucky Website.

39

**6.     The Individual Defendants' Participation In Defendants' Wrongful Activity**

175.    Upon information and belief, in his role as President of Sweet Home and individually, Qingfen Chen was and is actively and personally involved in the wrongful acts giving rise to this action.

176.    Upon information and belief, Qingfen Chen was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

177.    Upon information and belief, Qingfen Chen personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity.  As a result, Qingfen Chen is personally liable for the wrongful acts he has committed as alleged herein.  Further, as President of Sweet Home, Qingfen Chen has a direct financial interest in Sweet Home, and the right and ability to supervise Sweet Home's activities, including the wrongful acts alleged herein.

178.    Upon information and belief, Qingfen Chen knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

179.    Upon information and belief, Qingfen Chen directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

180.    Through his actions alleged herein, Qingfen Chen authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

181.    Upon information and belief, Qingfen Chen also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States,

refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

182.    Therefore, Qingfen Chen, in his capacity as President of Sweet Home, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

183.    Upon information and belief, Qingfen Chen had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

184.    Upon information and belief, in his role as Secretary of Sweet Home and individually, Peter Huang was and is actively and personally involved in the wrongful acts giving rise to this action.

185.    Upon information and belief, Peter Huang was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

186.    Upon information and belief, Peter Huang personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity.  As a result, Peter Huang is personally liable for the wrongful acts he has committed as alleged herein.  Further, as Secretary of Sweet Home, Peter Huang has a direct financial interest in Sweet Home and the right and ability to supervise Sweet Home's activities, including the wrongful acts alleged herein.

187.    Upon information and belief, Peter Huang knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

188.    Upon information and belief, Peter Huang directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

189.    Through his actions alleged herein, Peter Huang authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

190. Upon information and belief, Peter Huang also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

191. Therefore, Peter Huang, in his capacity as Secretary of Sweet Home, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

192. Upon information and belief, Peter Huang had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

193. Upon information and belief, in his role as President and CEO of Sweet Home and individually, Jackey Lin was and is actively and personally involved in the wrongful acts giving rise to this action.

194. Upon information and belief, Jackey Lin was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

195. Upon information and belief, Jackey Lin personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity. As a result, Jackey Lin is personally liable for the wrongful acts he has committed as alleged herein. Further, as Secretary of Sweet Home, Jackey Lin has a direct financial interest in Sweet Home and the right and ability to supervise Sweet Home's activities, including the wrongful acts alleged herein.

196. Upon information and belief, Jackey Lin knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

197.     Upon information and belief, Jackey Lin directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

198.     Through his actions alleged herein, Jackey Lin authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

199.     Upon information and belief, Jackey Lin also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

200.     Therefore, Jackey Lin, in his capacity as President and CEO of Sweet Home, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

201.     Upon information and belief, Jackey Lin had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

202.     Upon information and belief, in his role as an Authorized Member of PC Florida and individually, Yongchun Yang was and is actively and personally involved in the wrongful acts giving rise to this action.

203.     Upon information and belief, Yongchun Yang was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

204.     Upon information and belief, Yongchun Yang personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity.   As a result, Yongchun Yang is personally liable for the wrongful acts he has committed as alleged herein.

Further, as an Authorized Member of PC Florida, Yongchun Yang has a direct financial interest in PC Florida and the right and ability to supervise PC Florida's activities, including the wrongful acts alleged herein.

205.    Upon information and belief, Yongchun Yang knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

206.    Upon information and belief, Yongchun Yang directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

207.    Through his actions alleged herein, Yongchun Yang authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

208.    Upon information and belief, Yongchun Yang also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

209.    Therefore, Yongchun Yang, in his capacity as Authorized Member of PC Florida, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

210.    Upon information and belief, Yongchun Yang had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

44

211.    Upon information and belief, in his role as an Authorized Member of PC Florida and individually, Shu Lin was and is actively and personally involved in the wrongful acts giving rise to this action.

212.    Upon information and belief, Shu Lin was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

213.    Upon information and belief, Shu Lin personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity.  As a result, Shu Lin is personally liable for the wrongful acts he has committed as alleged herein.  Further, as an Authorized Member of PC Florida, Shu Lin has a direct financial interest in PC Florida and the right and ability to supervise PC Florida's activities, including the wrongful acts alleged herein.

214.    Upon information and belief, Shu Lin knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

215.    Upon information and belief, Shu Lin directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

216.    Through his actions alleged herein, Shu Lin authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

217.    Upon information and belief, Shu Lin also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

45

218. Therefore, Shu Lin, in his capacity as Authorized Member of PC Florida, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

219. Upon information and belief, Shu Lin had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

220. Upon information and belief, in his role as an Authorized Member of PC Florida and individually, Yao Zhao was and is actively and personally involved in the wrongful acts giving rise to this action.

221. Upon information and belief, Yao Zhao was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

222. Upon information and belief, Yao Zhao personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity. As a result, Yao Zhao is personally liable for the wrongful acts he has committed as alleged herein. Further, as an Authorized Member of PC Florida, Yao Zhao has a direct financial interest in PC Florida and the right and ability to supervise PC Florida's activities, including the wrongful acts alleged herein.

223. Upon information and belief, Yao Zhao knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

224. Upon information and belief, Yao Zhao directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

225. Through his actions alleged herein, Yao Zhao authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

226. Upon information and belief, Yao Zhao also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

227. Therefore, Yao Zhao, in his capacity as Authorized Member of PC Florida, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

228. Upon information and belief, Yao Zhao had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

229. Upon information and belief, in his role as an Authorized Member of PC Florida and individually, Xiguang Tang was and is actively and personally involved in the wrongful acts giving rise to this action.

230. Upon information and belief, Xiguang Tang was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

231. Upon information and belief, Xiguang Tang personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity. As a result, Xiguang Tang is personally liable for the wrongful acts his has committed as alleged herein. Further, as an Authorized Member of PC Florida, Xiguang Tang has a direct financial interest in PC Florida and the right and ability to supervise PC Florida's activities, including the wrongful acts alleged herein.

232.    Upon information and belief, Xiguang Tang knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

233.    Upon information and belief, Xiguang Tang directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

234.    Through his actions alleged herein, Xiguang Tang authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

235.    Upon information and belief, Xiguang Tang also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

236.    Therefore, Xiguang Tang, in his capacity as Authorized Member of PC Florida, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

237.    Upon information and belief, Xiguang Tang had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

238.    Upon information and belief, in his role as an Authorized Member and Director of Operations of PC Florida and individually, Paul Chih Yang Lin was and is actively and personally involved in the wrongful acts giving rise to this action.

239.    Upon information and belief, Paul Chih Yang Lin was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

48

240. Upon information and belief, Paul Chih Yang Lin personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity. As a result, Paul Chih Yang Lin is personally liable for the wrongful acts he has committed as alleged herein. Further, as an Authorized Member of PC Florida, Paul Chih Yang Lin has a direct financial interest in PC Florida and the right and ability to supervise PC Florida's activities, including the wrongful acts alleged herein.

241. Upon information and belief, Paul Chih Yang Lin knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

242. Upon information and belief, Paul Chih Yang Lin directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

243. Through his actions alleged herein, Paul Chih Yang Lin authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

244. Upon information and belief, Paul Chih Yang Lin also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

245. Therefore, Paul Chih Yang Lin, in his capacity as Authorized Member of PC Florida, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

49

246.     Upon information and belief, Paul Chih Yang Lin had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

247.     Upon information and belief, in his role as an Governor of PC Seattle, Organizer and Managing Member of PC Dallas, Organizer, President, and Managing Member of PC Houston, and individually, Tao Yu Zheng was and is actively and personally involved in the wrongful acts giving rise to this action.

248.     Upon information and belief, Tao Yu Zheng was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

249.     Upon information and belief, Tao Yu Zheng personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity.  As a result, Tao Yu Zheng is personally liable for the wrongful acts he has committed as alleged herein.  Further, as a Governor of PC Seattle, Organizer and Managing Member of PC Dallas, and Organizer, President, and Managing Member of PC Houston, Tao Yu Zheng has a direct financial interest in PC Seattle, PC Dallas, and PC Houston, and the right and ability to supervise PC Seattle's, PC Dallas', and PC Houston's activities, including the wrongful acts alleged herein.

250.     Upon information and belief, Tao Yu Zheng knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

251.     Upon information and belief, Tao Yu Zheng directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

252.     Through his actions alleged herein, Tao Yu Zheng authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

253. Upon information and belief, Tao Yu Zheng also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

254. Therefore, Tao Yu Zheng, in his capacity as a Governor of PC Seattle, Organizer and Managing Member of PC Dallas, and Organizer, President, and Managing Member of PC Houston, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

255. Upon information and belief, Tao Yu Zheng had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

256. Upon information and belief, in his role as a Governor of PC Seattle, Director and Manager of PC Dallas, and Managing Member of PC Houston, and individually, Jia Liu was and is actively and personally involved in the wrongful acts giving rise to this action.

257. Upon information and belief, Jia Liu was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

258. Upon information and belief, Jia Liu personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity. As a result, Jia Liu is personally liable for the wrongful acts he has committed as alleged herein. Further, as a Governor of PC Seattle, Director and Manager of PC Dallas, and Managing Member of PC Houston, Jia Liu has a direct financial interest in PC Seattle, PC Dallas, and PC Houston, and the

right and ability to supervise PC Seattle's, PC Dallas', and PC Houston's activities, including the wrongful acts alleged herein.

259.    Upon information and belief, Jia Liu knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

260.    Upon information and belief, Jia Liu directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

261.    Through his actions alleged herein, Jia Liu authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

262.    Upon information and belief, Jia Liu also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

263.    Therefore, Jia Liu, in his capacity as a Governor of PC Seattle, Director and Manager of PC Dallas, and Managing Member of PC Houston, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

264.    Upon information and belief, Jia Liu had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

265.    Upon information and belief, in his role as a Governor of PC Seattle, Managing Member of PC Dallas, and Managing Member of PC Houston, and individually, Qiqi Jiang was and is actively and personally involved in the wrongful acts giving rise to this action.

52

266. Upon information and belief, Qiqi Jiang was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

267. Upon information and belief, Qiqi Jiang personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity. As a result Qiqi Jiang is personally liable for the wrongful acts he has committed as alleged herein. Further, as a Governor of PC Seattle, Managing Member of PC Dallas, and Managing Member of PC Houston, Qiqi Jiang has a direct financial interest in PC Seattle, PC Dallas, and PC Houston, and the right and ability to supervise PC Seattle's, PC Dallas', and PC Houston's activities, including the wrongful acts alleged herein.

268. Upon information and belief, Qiqi Jiang knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

269. Upon information and belief, Qiqi Jiang directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

270. Through his actions alleged herein, Qiqi Jiang authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

271. Upon information and belief, Qiqi Jiang also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

53

272.    Therefore, Qiqi Jiang, in his capacity as a Governor of PC Seattle, Managing Member of PC Dallas, and Managing Member of PC Houston, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

273.    Upon information and belief, Qiqi Jiang had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

274.    Upon information and belief, in his role as a Governor of PC Seattle, Managing Member of PC Dallas, and Managing Member of PC Houston, and individually, Wenchen Chen was and is actively and personally involved in the wrongful acts giving rise to this action.

275.    Upon information and belief, Wenchen Chen was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

276.    Upon information and belief, Wenchen Chen personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity.  As a result, Wenchen Chen is personally liable for the wrongful acts he has committed as alleged herein.  Further, as a Governor of PC Seattle, Managing Member of PC Dallas, and Managing Member of PC Houston, Wenchen Chen has a direct financial interest in PC Seattle, PC Dallas, and PC Houston, and the right and ability to supervise PC Seattle's, PC Dallas', and PC Houston's activities, including the wrongful acts alleged herein.

277.    Upon information and belief, Wenchen Chen knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

278.    Upon information and belief, Wenchen Chen directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

54

279. Through his actions alleged herein, Wenchen Chen authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

280. Upon information and belief, Wenchen Chen also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

281. Therefore, Wenchen Chen, in his capacity as a Governor of PC Seattle, Managing Member of PC Dallas, and Managing Member of PC Houston, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

282. Upon information and belief, Wenchen Chen had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

283. Upon information and belief, in his role as a Managing Member of PC Dallas, and Managing Member of PC Houston, and individually, Longrong Lin was and is actively and personally involved in the wrongful acts giving rise to this action.

284. Upon information and belief, Longrong Lin was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

285. Upon information and belief, Longrong Lin personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity. As a result, Longrong Lin is personally liable for the wrongful acts he has committed as alleged herein. Further, as a Managing Member of PC Dallas and Managing Member of PC Houston, Longrong Lin has a

55

direct financial interest in PC Dallas and PC Houston, and the right and ability to supervise PC Dallas' and PC Houston's activities, including the wrongful acts alleged herein.

286.    Upon information and belief, Longrong Lin knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

287.    Upon information and belief, Longrong Lin directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

288.    Through his actions alleged herein, Longrong Lin authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

289.    Upon information and belief, Longrong Lin also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

290.    Therefore, Longrong Lin, in his capacity as a Managing Member of PC Dallas and Managing Member of PC Houston, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

291.    Upon information and belief, Longrong Lin had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

292.    Upon information and belief, in his role as a Managing Member of PC Dallas, and Managing Member of PC Houston, and individually, Kevin Guo was and is actively and personally involved in the wrongful acts giving rise to this action.

293.     Upon information and belief, Kevin Guo was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

294.     Upon information and belief, Kevin Guo personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity.  As a result, Kevin Guo is personally liable for the wrongful acts he has committed as alleged herein.  Further, as a Managing Member of PC Dallas and Managing Member of PC Houston, Kevin Guo has a direct financial interest in PC Dallas and PC Houston, and the right and ability to supervise PC Dallas' and PC Houston's activities, including the wrongful acts alleged herein.

295.     Upon information and belief, Kevin Guo knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

296.     Upon information and belief, Kevin Guo directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

297.     Through his actions alleged herein, Kevin Guo authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

298.     Upon information and belief, Kevin Guo also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

299. Therefore, Kevin Guo, in his capacity as a Managing Member of PC Dallas and Managing Member of PC Houston, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

300. Upon information and belief, Kevin Guo had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

301. Upon information and belief, in his role as a Managing Member of PC Dallas, and Managing Member of PC Houston, and individually, Changguang Lin was and is actively and personally involved in the wrongful acts giving rise to this action.

302. Upon information and belief, Changguang Lin was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

303. Upon information and belief, Changguang Lin personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity. As a result, Changguang Lin is personally liable for the wrongful acts he has committed as alleged herein. Further, as a Managing Member of PC Dallas and Managing Member of PC Houston, Changguang Lin has a direct financial interest in PC Dallas and PC Houston, and the right and ability to supervise PC Dallas' and PC Houston's activities, including the wrongful acts alleged herein.

304. Upon information and belief, Changguang Lin knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

305. Upon information and belief, Changguang Lin directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

306.     Through his actions alleged herein, Changguang Lin authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

307.     Upon information and belief, Changguang Lin also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

308.     Therefore, Changguang Lin, in his capacity as a Managing Member of PC Dallas and Managing Member of PC Houston, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

309.     Upon information and belief, Changguang Lin had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

310.     Upon information and belief, in his role as a Managing Member of PC Dallas, and Managing Member of PC Houston, and individually, Shaochun Lin was and is actively and personally involved in the wrongful acts giving rise to this action.

311.     Upon information and belief, Shaochun Lin was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

312.     Upon information and belief, Shaochun Lin personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity. As a result, Shaochun Lin is personally liable for the wrongful acts he has committed as alleged herein. Further, as a Managing Member of PC Dallas and Managing Member of PC Houston, Shaochun Lin has a

59

direct financial interest in PC Dallas and PC Houston, and the right and ability to supervise PC Dallas' and PC Houston's activities, including the wrongful acts alleged herein.

313.    Upon information and belief, Shaochun Lin knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

314.    Upon information and belief, Shaochun Lin directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

315.    Through his actions alleged herein, Shaochun Lin authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

316.    Upon information and belief, Shaochun Lin also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

317.    Therefore, Shaochun Lin, in his capacity as a Managing Member of PC Dallas and Managing Member of PC Houston, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

318.    Upon information and belief, Shaochun Lin had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

319.    Upon information and belief, in his role as a Managing Member of PC Dallas, and Managing Member of PC Houston, and individually, Shengquan Guo was and is actively and personally involved in the wrongful acts giving rise to this action.

320.    Upon information and belief, Shengquan Guo was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

321.    Upon information and belief, Shengquan Guo personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity.   As a result, Shengquan Guo is personally liable for the wrongful acts he has committed as alleged herein. Further, as a Managing Member of PC Dallas and Managing Member of PC Houston, Shengquan Guo has a direct financial interest in PC Dallas and PC Houston, and the right and ability to supervise PC Dallas' and PC Houston's activities, including the wrongful acts alleged herein.

322.    Upon information and belief, Shengquan Guo knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

323.    Upon information and belief, Shengquan Guo directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

324.    Through his actions alleged herein, Shengquan Guo authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

325.    Upon information and belief, Shengquan Guo also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

61

326.    Therefore, Shengquan Guo, in his capacity as a Managing Member of PC Dallas and Managing Member of PC Houston, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

327.    Upon information and belief, Shengquan Guo had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

328.    Upon information and belief, in his role as a Managing Member of PC Dallas, and Managing Member of PC Houston, and individually, Changzhu Lin was and is actively and personally involved in the wrongful acts giving rise to this action.

329.    Upon information and belief, Changzhu Lin was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

330.    Upon information and belief, Changzhu Lin personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity.  As a result, Changzhu Lin is personally liable for the wrongful acts he has committed as alleged herein. Further, as a Managing Member of PC Dallas and Managing Member of PC Houston, Changzhu Lin has a direct financial interest in PC Dallas and PC Houston, and the right and ability to supervise PC Dallas' and PC Houston's activities, including the wrongful acts alleged herein.

331.    Upon information and belief, Changzhu Lin knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

332.    Upon information and belief, Changzhu Lin directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

333.    Through his actions alleged herein, Changzhu Lin authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

334.    Upon information and belief, Changzhu Lin also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

335.    Therefore, Changzhu Lin, in his capacity as a Managing Member of PC Dallas and Managing Member of PC Houston, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

336.    Upon information and belief, Changzhu Lin had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

337.    Upon information and belief, in her role as Organizer and Owner of CGD, Qiao Yun Huang was and is actively and personally involved in the wrongful acts giving rise to this action.

338.    Upon information and belief, Qiao Yun Huang was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

339.    Upon information and belief, Qiao Yun Huang personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity.  As a result, Qiao Yun Huang is personally liable for the wrongful acts she has committed as alleged herein.  Further, as Organizer and Owner of CGD, Qiao Yun Huang has a direct financial interest in CGD, and the right and ability to supervise CGD's activities, including the wrongful acts alleged herein.

340. Upon information and belief, Qiao Yun Huang knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

341. Upon information and belief, Qiao Yun Huang directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

342. Through her actions alleged herein, Qiao Yun Huang authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

343. Upon information and belief, Qiao Yun Huang also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

344. Therefore, Qiao Yun Huang, in her capacity as Organizer and Owner of CGD, exercised control over Defendants and their wrongful acts and is personally liable for her participation.

345. Upon information and belief, Qiao Yun Huang had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

346. Upon information and belief, in her role as Organizer and Member of PC Kentucky, Qiao Hunt was and is actively and personally involved in the wrongful acts giving rise to this action.

347.    Upon information and belief, Qiao Hunt was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

348.    Upon information and belief, Qiao Hunt personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity.  As a result, Qiao Hunt is personally liable for the wrongful acts she has committed as alleged herein.  Further, as Organizer and Member of PC Kentucky, Qiao Hunt has a direct financial interest in Organizer and Member of PC Kentucky, and the right and ability to supervise Organizer and Member of PC Kentucky's activities, including the wrongful acts alleged herein.

349.    Upon information and belief, Qiao Hunt knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

350.    Upon information and belief, Qiao Hunt directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

351.    Through her actions alleged herein, Qiao Hunt authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

352.    Upon information and belief, Qiao Hunt also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

65

353. Therefore, Qiao Hunt, in her capacity as Organizer and Member of PC Kentucky, exercised control over Defendants and their wrongful acts and is personally liable for her participation.

354. Upon information and belief, Qiao Hunt had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

355. Upon information and belief, in his role as Organizer and Member of PC Kentucky, Derick Hunt was and is actively and personally involved in the wrongful acts giving rise to this action.

356. Upon information and belief, Derick Hunt was and is a moving, active, conscious force behind Defendants' infringement of the PROCRAFT Marks.

357. Upon information and belief, Derick Hunt personally took part in, ratified and/or directed others to engage in the infringing and/or wrongful activity. As a result, Derick Hunt is personally liable for the wrongful acts he has committed as alleged herein. Further, as Organizer and Member of PC Kentucky, Derick Hunt has a direct financial interest in Organizer and Member of PC Kentucky, and the right and ability to supervise Organizer and Member of PC Kentucky's activities, including the wrongful acts alleged herein.

358. Upon information and belief, Derick Hunt knowingly, personally, and actively participated in, authorized, ordered, controlled, participated, approved, or ratified Defendants' infringement of the PROCRAFT Marks.

359. Upon information and belief, Derick Hunt directed, controlled, and/or ordered Defendants' infringement of the PROCRAFT Marks.

360. Through his actions alleged herein, Derick Hunt authorized, ordered, controlled, participated, and/or ratified Defendants' acts of infringement of the PROCRAFT Marks.

361. Upon information and belief, Derick Hunt also was personally involved in the decision to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks

362. Therefore, Derick Hunt, in his capacity as Organizer and Member of PC Kentucky, exercised control over Defendants and their wrongful acts and is personally liable for his participation.

363. Upon information and belief, Derick Hunt had and continues to have a direct financial interest in Defendants' infringement of the PROCRAFT Marks.

## D. DEFENDANT'S WANTON, KNOWING, AND INTENTIONAL UNLAWFUL CONDUCT

### 1. Factual Allegations Common To All RICO Counts

364. Defendants are individual persons or legal entities that are capable and do hold actual and/or beneficial interests in property.

365. Defendants, individually and collectively, have engaged in "racketeering activity" as defined by 18 U.S.C. § 1961(1) by engaging in activities that are prohibited by 18 U.S.C. § 2320, namely, trafficking good bearing the Counterfeit Mark (collectively, the "Racketeering Activity").

366. The Racketeering Activity is not a one-time occurrence.

367. The Racketeering Activity has occurred repeatedly and without stopping over several months and continues to occur to this day such that it that poses a threat of continuity, in other words, projects into the future with a certain threat of repetition until stopped by this Court.

67

368.    As evidenced by, *inter alia*, Defendants' websites and multiple retail locations, the predicate Racketeering Activity is Defendants' way of conducting business activity that is intended to steal Plaintiff's valuable trademarks, goodwill, and its very business, and to profit from such theft.

369.    The Racketeering Activity undertaken by Defendants can be attributed to each Defendant operating as part of a long-term association that exists for criminal purposes.

370.    The multiple occurrences of Racketeering Activity are not unrelated occurrences or isolated events.

371.    The Racketeering Activity has occurred and continues to occur such there is a pattern of criminal acts that have the same or similar purposes, results, participants, victim, and/or methods of commission that are related.

372.    Upon information and believe, Defendants, individually and collectively, have imported and sold multiple units (e.g. cabinets) of the Counterfeit Cabinetry on different dates and in multiple States.

373.    Since the time that Defendants first engaged in Racketeering Activity, they have engaged in additional similar endeavors by, *inter alia*, adding new retail locations such as the recent location and new website for a Kentucky location.

374.    The Racketeering Activity has a direct nexus with interstate commerce because, at least, the Counterfeit Cabinetry

   a)  is imported from outside the United States;

   (b)  travels from the port of entry to another location in the United States;

   (c)  is offered for sale in multiple states (including but not limited to Illinois, Texas, Florida, Kentucky, and Washington); and

68

(d)  upon information and belief, uses mail, interstate wires, or other

instrumentalities of interstate commerce (including but not limited, internet websites,

telephone lines (as listed on Defendants' websites), and mobile phone lines).

375.    Upon information and belief, Defendants, individually and collectively, knew that

they were engaging in the offer for sale, sale, and/or importation of counterfeit cabinetry and

using the PROCRAFT CABINETRY® Mark and PROCRAFT Design Mark both on the

cabinetry and in connection with the offer for sale in interstate commerce, sale in interstate

commerce, and importation of the Counterfeit Cabinetry.

376.    The Racketeering Activity is economically motivated in that it involves profiting

or attempting to profit from the sales of the Counterfeit Cabinetry.

377.    To the extent any Defendant claims ignorance, such Defendant cannot claim

ignorance when, upon information and belief, Defendant knew, should have known, or strongly

suspects that they were involved with the sale of Counterfeit Cabinetry; the unauthorized use of

the PROCRAFT CABINETRY® Mark and PROCRAFT Design Mark both on the cabinetry and

in connection with the offer for sale, sale, and importation of the Counterfeit Cabinetry; and the

fact that "Procraft Cabinetry, Inc." was identified as a member of some of the Defendant entities

but was never present at any meeting of the members or boards of directors and was never

provided financial information.

378.    Moreover, Defendants' intent may be inferred from the fact that Defendants

facilitated the offers for sale, sales, and importation of the Counterfeit Cabinetry and gained

money and profited from Procraft's goodwill and reputation associated with the PROCRAFT

CABINETRY® Mark and PROCRAFT Design Mark.

69

379. Defendants have undertaken "racketeering activity" as defined by 18 U.S.C. § 1961(1) by undertaking actions that are indictable under 18 U.S.C. § 2320 (relating to trafficking in goods or services bearing counterfeit marks).

380. As described previously, Defendants have used a "counterfeit mark" as defined by 18 U.S.C. § 2320(f)(1).

381. Defendants have intentionally used the spurious Counterfeit Marks directly on the Counterfeit Cabinetry and in connection with the Counterfeit Cabinetry through at least labels, boxes, containers, documentation and packaging that were sold, offered for sale, and imported, and continue to be sold, offered for sale, and imported in numerous states throughout the United States.

382. The spurious Counterfeit Marks are intentionally identical with or substantially indistinguishable from the PROCRAFT CABINETRY® Mark or the PROCRAFT Design Mark.

383. The spurious Counterfeit Marks are likely to cause confusion, to cause mistake, or deceive, and in fact, actual confusion, mistake, and deception has occurred as set forth in detail herein.

384. The spurious Counterfeit Marks are intentionally applied to the Counterfeit Cabinetry, which is the same goods for which the PROCRAFT CABINETRY® Mark is registered with the United States Patent and Trademark Office.

385. Upon information and believe, Defendants, individually and collectively, have imported and sold multiple units of the Counterfeit Cabinetry on different dates and in multiple States.

386. Defendants' intentional actions and uses of the Counterfeit Marks in interstate commerce violated 18 U.S.C. § 2320.

70

387.     Defendants' uses of the Counterfeit Marks in connection with the Counterfeit Cabinetry are not the repackaging of genuine goods originating from Plaintiff and are intended to deceive or confuse consumers as to the actual origin of the Counterfeit Cabinetry.

388.     Defendants are part of an "enterprise" as defined by 18 U.S.C. § 1961(4) because, although not a legal entity, Defendants form a union or group associated-in-fact.

389.     Defendants have a shared purpose to steal Plaintiff's valuable trademarks, goodwill, and its very business, and to profit from such theft.

390.     There also is an interrelationship between ownership of the corporate Defendants.

391.     Upon information and belief, Defendants also have a structured relationship in that certain Defendants import the Counterfeit Cabinetry; certain Defendants distribute the Counterfeit Cabinetry to other Defendants; and certain Defendants then sell the Counterfeit Cabinetry to consumers.

392.     Moreover, Defendants share websites that list multiple Defendants and multiple locations on the shared websites to give appearance of a single entity, or source, even though the Defendant entities are separately formed companies.

393.     Upon information and belief, Defendants share a continuity of structure and personnel that shows relationships among those associated with the enterprise for example, but not by way of limitation, common and shared distribution; shared purchasing of cabinetry; collective marketing (including but not limited to listings on the same website); and common and overlapping ownership.

394.     Upon information and belief, Defendants have an ascertainable structure distinct from that inherent pattern of racketeering namely, Defendants are several legal entities and individuals that that are distinct entities separate from their engagement in the pattern of

racketeering activity and yet function as an enterprise with a hierarchical structure derived from common ownership and upon information and belief, distribution and coordination.

395. Finally, Defendants' Racketeering Activities have shown longevity sufficient to permit the Defendants to pursue the enterprise's purpose.

396. Defendants' individual and collective actions that meet the definition of "enterprise" shall herein be referred to collectively as the "Enterprise."

397. The individual Defendants are owners of the entity Defendants and, thus conduct the control and manage the activities of the entity Defendants.

398. Further, through, at least such control and management of entity Defendants, the individual Defendants conduct the affairs of the Enterprise just as the entity Defendants conduct the affairs of the Enterprise.

399. Plaintiff has suffered injury both factually and proximately caused by Defendants' unlawful Enterprise and pattern of Racketeering Activity including, but not limited to, actual monetary damages; loss of value of the PROCRAFT CABINETRY® Mark and/or the PROCRAFT Design Mark; value of its overall business; harm to reputation; lost customers; and lost opportunities for sale of its products.

400. Upon information and belief, Defendants have used the income generated from the unlawful Enterprise and pattern of Racketeering Activity to reinvest in the Enterprise to import more Counterfeit Cabinetry, increase the marketing of the Counterfeit Cabinetry and businesses in the Enterprise, and open new retail locations and otherwise distribute more Counterfeit Cabinetry.

## 2. Factual Allegations Common to All Trademark And Unfair Competition Counts

401. Without ProCraft's knowledge or consent, and beginning long after ProCraft had established extensive and valuable goodwill in connection with its goods identified by the

72

subject marks, Defendants commenced to use, and are currently using, in interstate commerce and commerce affecting interstate commerce, the phrases "PROCRAFT," "PROCRAFT KITCHEN & BATH," "PROCRAFT CHICAGO," "PROCRAFT DALLAS," "PROCRAFT HOUSTON," "PROCRAFT SEATTLE," "PROCRAFT MIAMI," "PROCRAFT CABINETRY & GRANITE DEPOT," "PROCRAFT KY," "PROCRAFT URBANDALE," the Infringing Design Mark, and/or variants thereof similar to or likely to cause confusion with the PROCRAFT Marks Mark (collectively, the "Infringing Marks" or "Counterfeit Marks") as a trademark in connection with the sale, offering for sale, distribution, advertising, and promotion of its services, including, without limitation, cabinet products, accessories, and services.

402. Defendants are not authorized dealers, distributors, designers, or sales representatives of ProCraft.

a. **ProCraft's Former Relationship With The Dealer Defendants.**

403. Sweet Home, PC Florida, PC Dallas, PC Houston, and PC Seattle (collectively, the "Former Dealer Defendants") previously were permitted to sell ProCraft Cabinetry® Products under certain terms and conditions.

404. Specifically, ProCraft agreed to sell ProCraft Cabinetry® Products to the Former Dealer Defendants, provided that at least PC Florida, PC Dallas, PC Houston, and PC Seattle served as exclusive ProCraft dealers and the Former Dealer Defendants timely paid for the ProCraft Cabinetry® Products ordered and received.

405. In connection with this exclusive dealer relationship, the PC Florida, PC Dallas, PC Houston, and PC Seattle were only permitted to sell ProCraft Cabinetry® Products, to the exclusion of all other manufacturers of cabinet products and accessories.

73

406. In connection with this exclusive dealer relationship, the Former Dealer Defendants were listed on ProCraft's website located at www.procraftcabinetry.com (the "ProCraft Website") and were permitted to use the PROCRAFT Marks only in connection with the sale of authorized and genuine ProCraft Cabinetry® Products.

407. The Former Dealer Defendants were not permitted to use the PROCRAFT Marks in connection with any websites other than the ProCraft Website.

408. The Former Dealer Defendants were not permitted to use the PROCRAFT Marks in connection with the sale of any products not that were not manufactured by or purchased from ProCraft.

409. The Former Dealer Defendants were not permitted to sublicense the PROCRAFT Marks.

410. ProCraft retained all ownership of the PROCRAFT Marks in connection with its exclusive dealer relationship with the Former Dealer Defendants.

411. As dealers of ProCraft Cabinetry® Products, any use by the Former Dealer Defendants of the PROCRAFT Marks inured to the benefit of ProCraft.

412. In connection with this dealer relationship and as the manufacturer of the ProCraft Cabinetry® Products, ProCraft exercised exclusive control over the nature and quality of the PROCRAFT CABINETRY® branded goods sold by the Former Dealer Defendants.

413. In connection with this dealer relationship and as the manufacturer of the ProCraft Cabinetry® Products, ProCraft exercised exclusive control over the nature and quality of the goods sold by the Former Dealer Defendants under the PROCRAFT Marks.

Case 3:17-cv-01392   Document 1   Filed 10/19/17   Page 74 of 138 PageID #: 74

414. Any authorization granted to the Former Dealer Defendants to use the PROCRAFT Marks was immediately revoked upon violation of the dealer relationship and/or nonpayment of outstanding invoices.

415. As described in Section V(D)(4) *infra*, Sweet Home ceased paying for ProCraft Cabinetry® Products on or around December 27, 2016.

416. As described in Section V(D)(4) *infra*, PC Florida ceased paying for ProCraft Cabinetry® Products on or around May 8, 2017.

417. As described in Section V(D)(4) *infra*, PC Dallas ceased paying for ProCraft Cabinetry® Products received on or around December 16, 2016.

418. As described in Section V(D)(4) *infra*, PC Houston ceased paying for ProCraft Cabinetry® Products received on or around October 11, 2016.

419. As described in Section V(D)(4) *infra*, PC Seattle ceased paying for ProCraft Cabinetry® Products received on or around October 26, 2016.

420. At least as early as May 18, 2017, the Former Dealer Defendants had actual notice that they were no longer authorized to sell ProCraft Cabinetry® Products or use the PROCRAFT Marks or variants thereof.

**b.    Defendants' Intentional Scheme To Overtake ProCraft's Business.**

421. Upon information and belief, the Former Dealer Defendants' refusal to pay for ProCraft Cabinetry® Products received is part of an intentional scheme of trademark infringement, counterfeiting, and unfair competition, wherein the Former Dealer Defendants, together with the remaining Defendants, conspired to exploit and usurp ProCraft's valuable goodwill by engaging in open and notorious infringement of the PROCRAFT Marks, copying ProCraft's website design, content, and advertising materials, targeting ProCraft's existing and

75

potential customers in the United States, refusing to pay for ProCraft Cabinetry® Products received, circumventing ProCraft's exclusive dealer channels and selling counterfeit products under the PROCRAFT Marks.

422. ProCraft removed the Former Dealer Defendants as authorized dealers from the ProCraft Website in or around January 2017.

423. Upon information and belief, upon ProCraft's removal of the Dealer Defendants from the ProCraft Website and refusal to sell further ProCraft Cabinetry® Products to the Dealer Defendants, Defendants commenced their intentional scheme to exploit and usurp ProCraft's PROCRAFT Marks, ProCraft business, and ProCraft customers by launching several unauthorized websites utilizing the PROCRAFT Marks and selling counterfeit ProCraft products.

        **i.**        **Defendants' Purchase Of The Infringing Domain Names**

424. Upon information and belief, Defendants own and operate the ProCraft Kitchen Website located at www.procraftkitchenandbath.com. *See* **Exhibit 5**.

425. Upon information and belief, Defendants own and operate the PC Miami Website located at www.procraftmiami.com. *See* **Exhibit 15**.

426. Upon information and belief, Defendants own and operate the PC Chicago Website located at cabinetsplacerandom.squarespace.com. *See* **Exhibit 14**.

427. Upon information and belief, Defendants own and operate the PC Urbandale Website located at www.gcraftcabinetry.com. *See* **Exhibit 16**.

428. Upon information and belief, Defendants own and operate the PC Kentucky Website located at www.granitecincinnati.com. *See* **Exhibit 17**.

76

429.     Upon information and belief, Defendants also have purchased several domain names incorporating the Infringing Marks, including, without limitation, www.procraftkitchenandbath.com, www.procraftchicago.com, www.procraftdallas.com, www.procrafthouston.com, www.procraftmiami.com, www.procraftseattle.com, www.procraftky.com, and www.aaprocraftkitchen.com (the "Infringing Domain Names").

430.     According to the WHOIS registry, the www.procraftkitchenandbath.com domain name was created on January 24, 2017.  *See* **Exhibit 4**.

431.     According to the WHOIS registry, the www.procraftmiami.com domain name was created on January 30, 2017.  A true and correct copy of the WHOIS information for the www.procraftkitchenandbath.com domain name is attached hereto as **Exhibit 18**.

432.     According to the WHOIS registry, the www.gcraftcabinetry.com domain name was created on May 20, 2017.  A true and correct copy of the WHOIS information for the PC Urbandale Website is attached hereto as **Exhibit 19**.

433.     According to the WHOIS registry, the www.procraftchicago.com domain name was created on August 25, 2016.  A true and correct copy of the WHOIS information for the www.procraftchicago.com domain name is attached hereto as **Exhibit 20**.

434.     According to the WHOIS registry, the www.procraftdallas.com domain name was created on October 26, 2016.  A true and correct copy of the WHOIS information for the www.procraftdallas.com domain name is attached hereto as **Exhibit 21**.

435.     According to the WHOIS registry, the www.procrafthouston.com domain name was created on October 26, 2016.  A true and correct copy of the WHOIS information for the www.procrafthouston.com domain name is attached hereto as **Exhibit 22**.

436.    According to the WHOIS registry, the www.procraftseattle.com domain name was created on October 26, 2016.  A true and correct copy of the WHOIS information for the www.procraftseattle.com domain name is attached hereto as **Exhibit 23**.

437.    According to the WHOIS registry, the www.procraftky.com domain name was created on March 3, 2015 and updated on February 16, 2017.  A true and correct copy of the WHOIS information for the www.procraftky.com domain name is attached hereto as **Exhibit 24**.

438.    According to the WHOIS registry, the www.aaprocraftkitchen.com domain name was created on June 15, 2017.  A true and correct copy of the WHOIS information for the www.aaprocraftkitchen.com domain name is attached hereto as **Exhibit 25**.

ii.    **Defendants' Copying Of The ProCraft Website**

439.    On the ProCraft Kitchen Website for Defendants' Counterfeit Cabinetry and as an aid to their sales efforts, Defendants have included unauthorized reproductions of ProCraft's original content.  A chart comparing Defendants' copied content to ProCraft's website content is attached hereto as **Exhibit 26**.

440.    Specifically, Defendants have copied nearly word for word several pages of ProCraft's textual content on the ProCraft Website and used such unauthorized copies on the ProCraft Kitchen Website.

441.    For their ProCraft Kitchen Website, Defendants copied and utilize a substantially similar website design and layout as the ProCraft Website.

442.    For their PC Chicago Website, Defendants copied and utilize a substantially similar website design and layout as the ProCraft Website.

443.    For their PC Miami Website, Defendants copied and utilize a substantially similar website design and layout as the ProCraft Website.

444. For their PC Urbandale Website, Defendants copied and utilize a substantially similar website design and layout as the ProCraft Website.

### iii. Defendants' Sale Of Counterfeit Cabinetry

445. On the Infringing Websites and as an aid to their sales efforts, Defendants offer for sale without authorization cabinet products and accessories under the PROCRAFT Marks (the "Counterfeit Cabinetry").

446. Upon information and belief, Defendants have contracted with a non-ProCraft manufacturing facility in China to purchase cabinet products and accessories.

447. Upon information and belief, Defendants' unauthorized manufacturer stamps the Counterfeit Cabinetry with either the PROCRAFT Marks or the Infringing Design Mark, as shown below on the ProCraft Kitchen Website and PC Urbandale Website:



Fig. 1: Screenshot from ProCraft Kitchen Website

79



Fig. 2: Screenshot from PC Urbandale Website

A true and correct copy of screenshots of select ProCraft Kitchen Webpages and PC Urbandale Webpages is attached hereto as **Exhibit 27**.

448.    Defendants use the Product Marks owned by ProCraft in connection with the sale of the Counterfeit Cabinetry.

449.    For example, on the ProCraft Kitchen Website, Defendants offer for sale the following Counterfeit Cabinetry under ProCraft's Product Marks:

a.    "Arlington Oatmeal;"

b.    "Avalon Ashen;"

c.    "Belmont Gibraltar Gray;"

d.    "Liberty Shaker White;"

e.    "Liberty Shaker Gray;"

f.    "Liberty Shaker Espresso;"

g.    "Portland Chestnut;" and

h.    "Saratoga Cinnamon."

*See* **Exhibit 5**.

450.    The ProCraft Kitchen Website also advertises that accessory products offered under the PROCRAFT Marks are "coming soon!"  *See* **Exhibit 5**.

451.    On the PC Chicago Website, Defendants offer for sale the following Counterfeit Cabinetry under ProCraft's Product Marks:

        a.   "Arlington Oatmeal;"

        b.    "Avalon Ashen;"

        c.   "Belmont Gibraltar Gray;"

        d.   "Liberty Shaker White;"

        e.   "Liberty Shaker Espresso;"

        f.   "Liberty Shaker Gray;"

        g.   "Portland Chestnut;"

        h.   "Saratoga Cinnamon;"

        i.   "Calumet Mocha;"

        j.   "Providence White;" and

        k.   "Sonoma Espresso."

*See* **Exhibit 14**.

452.    On the PC Miami Website, Defendants advertise unauthorized countertop products under the PROCRAFT Marks.  *See* **Exhibit 13**.

453.    On the PC Urbandale Website, Defendants offer for sale the following Counterfeit Cabinetry under ProCraft's Product Marks:

        a.   "Arlington Oatmeal;"

        b.    "Avalon Ashen;"

        c.   "Belmont Gibraltar Gray;"

81

d.   "Liberty Shaker White;"

e.   "Liberty Shaker Espresso;"

f.   "Liberty Shaker Gray;"

g.   "Portland Chestnut;" and

h.   "Calumet Mocha."

*See* **Exhibit 16**.

454.   The PC Urbandale Website advertises that accessory products offered under the PROCRAFT Marks are "coming soon!"  *See* **Exhibit 16**.

455.   On the PC Urbandale Website, Defendants advertise unauthorized faucet products under the PROCRAFT Marks.  *See* **Exhibit 16**.

456.   On the PC Kentucky Website, Defendants offer for sale the following Counterfeit Cabinetry:

a.   "Arlington Oatmeal;"

b.   "Avalon Ashen;"

c.   "Belmont Gibraltar Gray;"

d.   "Liberty Shaker White;"

e.   "Liberty Shaker Espresso;"

f.   "Liberty Shaker Gray;"

g.   "Portland Chestnut;"

h.   "Saratoga Cinnamon;"

i.   "Calumet Mocha;"

j.   "Calumet Ivory;"

k.   "Providence Espresso;"

82

l.   "Providence White;" and

m.   "Sonoma Espresso."

*See* **Exhibit 17**.

### iv.   Defendants' False And/Or Misleading Statements

457.   Defendants also have been making literally false and/or impliedly false and misleading statements through the Infringing Websites, which are likely to cause confusion, and to cause mistake, and to deceive as to the nature, characteristics, qualities, source, or geographic origin of Defendants' goods, services, or commercial activities, ProCraft generally, and/or ProCraft's goods, services, or commercial activities.

458.   Through their statements on the Infringing Websites and to ProCraft's existing and potential customers, Defendants have made literally and/or impliedly false and misleading statements which are likely to cause confusion, and to cause mistake, and to deceive as to the source, sponsorship, approval, or certification of Defendants' goods or services by ProCraft.

459.   Through their statements on the Infringing Websites, Defendants have made literally false and/or impliedly false and misleading representations that Defendants are the manufacturer of ProCraft Cabinetry® Products.

460.   In addition, on June 27, 2017, Defendants, by and through Paul Lin and PC Florida, sent a letter to Excalibur Kitchen and Bath, a ProCraft customer.  A true and correct copy of the June 27, 2017 letter is attached hereto as **Exhibit 28**.

461.   In the June 27, 2017 letter, Defendants have made literally false and/or impliedly false and misleading representations that ProCraft is Defendants' "Tennessee location."  *See* **Exhibit 28**.

462.    Through the Infringing Websites, Defendants have made literally and/or impliedly false and misleading statements which are likely to cause confusion, and to cause mistake, and to deceive as to the nature, characteristics, qualities, source, or geographic origin of Defendants' goods, services, or commercial activities, ProCraft generally, and/or ProCraft's goods, services, or commercial activities.

463.    Through their Infringing Websites, Defendants have made literally and/or impliedly false and misleading statements which are likely to cause confusion, and to cause mistake, and to deceive as to the source, sponsorship, approval, or certification of Defendants' goods or services by ProCraft.

464.    Through their statements alleged herein, Defendants falsely and/or misleadingly represent to existing and potential customers that Defendants are affiliated with or authorized by ProCraft to sell ProCraft Cabinetry® Products.

465.    Through their statements alleged herein, Defendants falsely and/or misleadingly represent to existing and potential customers that Defendants are the manufacturer of ProCraft Cabinetry® Products.

466.    Through their statements alleged herein, Defendants falsely and/or misleadingly represent to existing and potential customers that Defendants have over 40 years of experience.

467.    Upon information and belief, through the ProCraft Kitchen Website, Defendants falsely and/or misleadingly represent to existing and potential customers that Defendants are affiliated with the following organizations:

     

*See* **Exhibit 5**.

468.    Upon information and belief, even if Defendants' statements on the Infringing Websites are not literally false when taken individually, the cumulative effect of Defendants' statements is impliedly false and/or misleading.

### c.    Defendants' Wrongful Conduct

469.    Through their use of the Infringing Marks, including, but not limited to, on the ProCraft Kitchen Website, the PC Miami Website, the PC Urbandale Website, the PC Chicago Website and the PC Kentucky Website (collectively, the "Infringing Websites") and in the Infringing Domain Names, Defendants seek to unfairly trade off the valuable goodwill and reputation built by ProCraft through its PROCRAFT Marks.

470.    Defendants' uses of the Infringing Marks in interstate commerce to advertise, promote, offer for sale, and sell its cabinet products, accessories, and services, through the Infringing Websites, and in the Infringing Domain Names, were never approved, permitted or endorsed by ProCraft, and occurred after ProCraft had established extensive and valuable goodwill in connection with its goods and services identified by the PROCRAFT Marks.

471.    Defendants' use of the Infringing Marks in interstate commerce and commerce affecting interstate commerce was and continues to be without ProCraft's consent, and beginning long after ProCraft had established extensive and valuable goodwill in connection with its goods and services identified by the PROCRAFT Marks.

472.    ProCraft's first use in commerce of the PROCRAFT Marks predates Defendants' first use of the Infringing Marks and, therefore, have priority over Defendants' first use of the Infringing Marks.

### 3.    Factual Allegations Common To Causes Of Action Arising Under The Shareholder Agreement

473.    ProCraft Inc. was formed on or around January 15, 2010.

474. Hui "Sophia" Chen ("Sophia Chen") is the sole individual or entity listed on the Articles of Organization of ProCraft Inc.

475. Sophia Chen is listed as the registered agent of ProCraft Inc.

476. In or around ███REDACTED███ Sophia Chen, Peter Huang, and Jackey Lin entered into a Shareholders' Agreement of Procraft Cabinetry, Inc. Company (the "Shareholders Agreement"). A true and correct copy of the Shareholders Agreement is attached hereto as **Exhibit 29**.

477. ProCraft is a third party beneficiary of the Shareholders Agreement.

478. At all times prior to execution of the Shareholders Agreement, Sophia Chen was the sole owner of ProCraft.

479. ████████████████REDACTED████████████████
████████████████████████████

480. ████████████████REDACTED████████████████
███████████████

481. ████████████████REDACTED████████████████
██████████████

482. ████████████████REDACTED████████████████
█████████████████████████████████
███

483. ████████████████REDACTED████████████████
██████████████████████

484. ████████████████REDACTED████████████████

485. REDACTED

 REDACTED

486. REDACTED

 REDACTED

487. REDACTED

 REDACTED

 REDACTED

488. REDACTED

 REDACTED

489. REDACTED

 REDACTED

490. Peter Huang and Jackey Lin, by failing to REDACTED under the Shareholders' Agreement, have breached the Shareholders Agreement.

491. REDACTED

 REDACTED

492. REDACTED

 REDACTED

 REDACTED

493. REDACTED

494. REDACTED

 REDACTED

87

495.     REDACTED

496.     Marc Skopec is a sales representative for ProCraft.

497.     REDACTED

498.     REDACTED

499.     REDACTED

500.     REDACTED

501.     REDACTED

502.     REDACTED

503.     REDACTED

504.        REDACTED

505.        REDACTED

506.        REDACTED

507.      Through their actions described herein, Peter Huang and Jackey Lin have breached the Shareholders Agreement.

508.      The breach has been documented by ProCraft and has proven to be harmful to ProCraft.

509.      Peter Huang and Jackey Lin were notified of the breach at least as early as service if this Complaint.

510.      Notwithstanding being notified of their breach, Peter Huang and Jackey Lin continue to breach the Shareholders' Agreement     REDACTED

511.        REDACTED

512.        REDACTED

89

513. REDACTED

**4.    Factual Allegations Common To All Breach of Contract Counts And Violations of Business Statutes Arising Under State Law**

    **a.    PC Florida's Purchase of ProCraft's Products and Subsequent Failure to Pay for Such Products.**

514.    PC Florida was formed as a limited liability company on or around December 1, 2015.

515.    PC Florida's Articles of Incorporation lists ProCraft as a member of PC Florida. *See* **Exhibit 13**.

516.    ProCraft had no knowledge of its status as a member of PC Florida until recently and has never received any distribution or payment from PC Florida as a member.

517.    PC Florida placed warehouse and container orders from ProCraft for cabinets and cabinet accessories over the years.

518.    In 2016 and 2017, PC Florida placed multiple orders for product from ProCraft's warehouse totaling $27,870.41. A true and correct copy of PC Florida's Customer Open Balance Transaction Report and the invoices sent to PC Florida relating to the warehouse orders are attached as collective **Exhibit 30**.

519.    ProCraft delivered the products to PC Florida.

520.    Upon information and belief, PC Florida is still in possession and control of the products, has sold the products to a third party, or has wrongfully transferred such products to another Defendant without proper payment.

521.    As shown from PC Florida's Customer Open Balance Transaction Report, PC Florida has failed to pay for its warehouse orders and currently owes ProCraft $27,870.41 for the warehouse orders.

522.    In addition, PC Florida placed multiple container orders totaling $584,239.25.

523.    The container orders required ProCraft to manufacture the order at its manufacturing facility.  A true and correct copy of PC Florida's Customer Open Balance Transaction Report and the invoices sent to PC Florida relating to the container orders are attached as collective **Exhibit 31.**

524.    ProCraft delivered the products to PC Florida.

525.    Upon information and belief, PC Florida is still in possession and control of the products, has sold the products to a third party, or has wrongfully transferred such products to another Defendant without proper payment.

526.    As shown from PC Florida's Customer Open Balance Transaction Report, PC Florida has failed to pay for its container orders and currently owes ProCraft $584,239.25 for the container orders.

527.    On May 18, 2017, ProCraft sent PC Florida a demand letter to the registered agent address located on PC Florida's Articles of Incorporation.  A true and correct copy of the May 18, 2017 correspondence is attached as **Exhibit 32**.

528.    The letter came back as undeliverable as PC Florida had changed its registered agent's address.

529.    On May 31, 2017, ProCraft resent the letter to Paul Chih Yang Lin as the registered agent for PC Florida at the most recent registered agent address.  A true and correct copy of the May 31, 2017 correspondence to PC Florida is attached as **Exhibit 33.**

530.    ProCraft's correspondence to PC Florida, among other things, demands payment of the current balance of $612,109.66 owed to ProCraft be paid in full.

531.   Further, as an alleged member of PC Florida, ProCraft demands in the correspondence that PC Florida provide certain records and information pursuant to Section 605.0410(1) of the Florida Revised Limited Liability Act.

532.   PC Florida has failed to pay the outstanding balance of $612,109.66 and has failed to provide the requested records and financial records to ProCraft.

> **b.** **PC Seattle's Purchase of ProCraft's Products and Subsequent Failure to Pay for Such Products.**

533.   PC Seattle placed warehouse and container orders from ProCraft for cabinets and cabinet accessories over the years.

534.   In 2015 and 2016, PC Seattle placed multiple orders for product from ProCraft's warehouse totaling $40,504.14.  A true and correct copy of PC Seattle's Customer Open Balance Transaction Report and the invoices sent to PC Seattle relating to the warehouse orders are attached as collective **Exhibit 34**.

535.   ProCraft delivered the products to PC Seattle.

536.   Upon information and belief, PC Seattle is still in possession and control of the products, has sold the products to a third party, or has wrongfully transferred such products to another Defendant without proper payment.

537.   As shown from PC Seattle's Customer Open Balance Transaction Report, PC Seattle has failed to pay for all its warehouse orders and currently owes ProCraft $17,263.0 for the warehouse orders.

538.   In 2015 and 2016, PC Seattle placed multiple container orders.

539.   The container orders required ProCraft to manufacture the order at its manufacturing facility.   A true and correct copy of PC Seattle's Customer Open Balance

Transaction Report and the invoices sent to PC Seattle relating to the container orders are attached as collective **Exhibit 35.**

540.    ProCraft delivered the products to PC Seattle.

541.    Upon information and belief, PC Seattle is still in possession and control of the products, has sold the products to a third party, or has wrongfully transferred such products to another Defendant without proper payment.

542.    As shown from PC Seattle's Customer Open Balance Transaction Report, PC Seattle has failed to pay for its container orders and currently owes ProCraft $222,727.72 for the container orders.

543.    On May 18, 2017, Procraft sent PC Seattle a demand letter to its registered agent's address. A true and correct copy of the May 18, 2017 correspondence is attached as **Exhibit 36**.

544.    ProCraft's correspondence to PC Seattle, among other things, demands payment of the current balance of $240,010.73 owed to ProCraft be paid in full.

545.    PC Seattle has failed to pay the outstanding balance of $240,010.73 to ProCraft.

   **c.      PC Dallas's Purchase of ProCraft's Products and Subsequent Failure to Pay for Such Products.**

546.    PC Dallas was formed as a limited liability company on or around August 21, 2014. PC Dallas's Certificate of Formation lists ProCraft as a member of PC Dallas. *See* **Exhibit 8**.

547.    ProCraft had no knowledge of its status as a member of PC Dallas until recently and has never received any distribution or payment from PC Dallas as a member.

548.    PC Dallas placed warehouse and container orders from ProCraft for cabinets and cabinet accessories in 2015 and 2016.

93

549.    In 2015 and 2016, PC Dallas placed multiple orders for product from ProCraft's warehouse totaling $43,488.21.  A true and correct copy of PC Dallas's Customer Open Balance Transaction Report and the invoices sent to PC Dallas relating to the warehouse orders are attached as collective **Exhibit 37**.

550.    ProCraft delivered the products to PC Dallas.

551.    Upon information and belief, PC Dallas is still in possession and control of the products, has sold the products to a third party, or has wrongfully transferred such products to another Defendant without proper payment.

552.    As shown from PC Dallas's Customer Open Balance Transaction Report, Procraft Dallas has failed to pay for its warehouse orders and currently owes ProCraft $45,580.02 for the warehouse orders.

553.    In addition, PC Dallas placed multiple container orders.

554.    The container orders required ProCraft to manufacture the order at its manufacturing facility.  A true and correct copy of PC Dallas's Customer Open Balance Transaction Report and the invoices sent to PC Dallas relating to the container orders are attached as collective **Exhibit 38**.

555.    ProCraft delivered the products to PC Dallas.

556.    Upon information and belief, PC Dallas is still in possession and control of the products, has sold the products to a third party, or has wrongfully transferred such products to another Defendant without proper payment.

557.    As shown from PC Dallas's Customer Open Balance Transaction Report, PC Dallas has failed to pay for its container orders and currently owes ProCraft $706,223.78 for the container orders.

558.　On May 18, 2017, ProCraft sent PC Dallas a demand letter to the registered agent. A true and correct copy of the May 18, 2017 correspondence is attached as **Exhibit 39**.

559.　ProCraft's correspondence to PC Dallas, among other things, demands payment of the current balance of $751,803.80 owed to ProCraft be paid in full.

560.　Further, as an alleged member of PC Dallas, ProCraft demands in the correspondence that PC Dallas provide certain records and information pursuant to Section 3.151 of the General Provisions of Texas's Business Organization Code.

561.　PC Dallas has failed to pay the outstanding balance of $751,803.80 and has failed to provide the requested records and financial records to ProCraft.

> **d.**　**PC Houston's Purchase of ProCraft's Products and Subsequent Failure to Pay for Such Products.**

562.　PC Houston was formed as a limited liability company on or around August 21, 2014.  PC Houston's Certificate of Formation lists ProCraft as a member of PC Houston.  *See* **Exhibit 10**.

563.　ProCraft had no knowledge of its status as a member of PC Houston until recently and has never received any distribution or payment from PC Houston as a member.

564.　PC Houston placed warehouse and container orders from ProCraft for cabinets and cabinet accessories.

565.　PC Houston placed multiple orders for product from ProCraft's warehouse.  A true and correct copy of PC Houston's Customer Open Balance Transaction Report and the invoices sent to PC Houston relating to the warehouse orders are attached as collective **Exhibit 40**.

566.　ProCraft delivered the products to PC Houston.

567.     Upon information and belief, PC Houston is still in possession and control of the products, has sold the products to a third party, or has wrongfully transferred such products to another Defendant without proper payment.

568.     As shown from PC Houston's Customer Open Balance Transaction Report, PC Houston has failed to pay for all its warehouse orders and currently owes ProCraft $15,950.67 for the warehouse orders.

569.     PC Houston also placed multiple container orders totaling $1,759,757.79.

570.     The container orders required ProCraft to manufacture the order at its manufacturing facility.   A true and correct copy of PC Houston's Customer Open Balance Transaction Report and the invoices sent to PC Houston relating to the container orders are attached as collective **Exhibit 41**.

571.     ProCraft delivered the products to PC Houston.

572.     Upon information and belief, PC Houston is still in possession and control of the products, has sold the products to a third party, or has wrongfully transferred such products to another Defendant without proper payment.

573.     As shown from PC Houston's Customer Open Balance Transaction Report, PC Houston has failed to pay for its container orders and currently owes ProCraft $1,027,989.71 for the container orders.

574.     On May 18, 2017, ProCraft sent PC Houston a demand letter to the registered agent address located on PC Houston's Certificate of Formation.  A true and correct copy of the May 18, 2017 correspondence is attached as **Exhibit 42**.

575.     The letter came back as undeliverable as PC Houston had changed its registered agent's address.

576.    On May 31, 2017, ProCraft resent the letter to Tao Zheng as the registered agent for PC Houston at the most recent registered agent address.  A true and correct copy of the May 31, 2017 correspondence to PC Houston is attached as **Exhibit 43.**

577.    ProCraft's correspondence to PC Houston, among other things, demands payment of the current balance of $1,043,940.38 owed to ProCraft be paid in full.

578.    Further, as an alleged member of PC Houston, ProCraft demands in the correspondence that PC Houston provide certain records and information pursuant to Section 3.151 of the General Provisions of Texas's Business Organization Code.

579.    PC Houston has failed to pay the outstanding balance of $1,043,940.38 and has failed to provide the requested records and financial records to ProCraft.

     **e.**     **Sweet Home's Purchase of ProCraft's Products and Subsequent Failure to Pay for Such Products.**

580.    Sweet Home was formed as corporation on or around July 1, 2013.

581.    Sweet Home placed warehouse and container orders from ProCraft for cabinets and cabinet accessories.

582.    Sweet Home placed multiple orders for product from ProCraft's warehouse.  A true and correct copy of Sweet Home's Customer Open Balance Transaction Report and the invoices sent to Sweet Home relating to the warehouse orders are attached as collective **Exhibit 44**.

583.    ProCraft delivered the products to Sweet Home.

584.    Upon information and belief, Sweet Home is still in possession and control of the products, has sold the products to a third party, or has wrongfully transferred such products to another Defendant without proper payment.

585.    As shown from Sweet Home's Customer Open Balance Transaction Report, Sweet Home has failed to pay for its warehouse orders and currently owes ProCraft $361,350.20 for the warehouse orders.

586.    In addition, Sweet Home has placed multiple container orders.

587.    The container orders required ProCraft to manufacture the order at its manufacturing facility.  A true and correct copy of Sweet Home's Customer Open Balance Transaction Report and the invoices sent to Sweet Home relating to the container orders are attached as collective **Exhibit 45**.

588.    ProCraft delivered the products to Sweet Home.

589.    Upon information and belief, Sweet Home is still in possession and control of the products, has sold the products to a third party, or has wrongfully transferred such products to another Defendant without proper payment.

590.    As shown from Sweet Home's Customer Open Balance Transaction Report, Sweet Home has failed to pay for all its container orders and currently owes ProCraft $927,780.57 for the container orders.

591.    On May 18, 2017, ProCraft sent Sweet Home a demand letter to the registered agent.  A true and correct copy of the May 18, 2017 correspondence is attached as **Exhibit 46**.

592.    ProCraft's correspondence to Sweet Home, among other things, demands payment of the current balance of $1,289,120.77 owed to ProCraft be paid in full.

593.    Sweet Home has failed to pay the outstanding balance of $1,289,120.77 to ProCraft.

### E.    HARM TO PROCRAFT

594.    ProCraft and Defendants are competitors in the kitchen and bath industry.

98

595.    Defendants' use of the Infringing Marks is without ProCraft's permission or authority and is likely to cause confusion, mistake, and deception among consumers and customers.

596.    Actual confusion and the loss of goodwill and business to ProCraft as a result of Defendants' actions alleged herein are evident from Defendants' communications with ProCraft's existing and potential customers.

597.    For example, on June 27, 2017, Defendants, by and through Paul Lin and PC Florida, sent a letter to Excalibur Kitchen and Bath, a ProCraft customer.  *See* **Exhibit 28**.

598.     In the June 27, 2017 letter, Defendants acknowledge Excalibur Kitchen and Bath's confusion between ProCraft and Defendants.

599.    The June 27, 2017 letter demonstrates the actual confusion and harm caused by Defendants' false and/or deceptively misleading representations and infringement of the PROCRAFT Marks.

600.    By means of further example, on October 6, 2017, ProCraft received a letter from Mary and Sam Saenz regarding their purchase of Counterfeit Cabinetry from PC Dallas.  A true and correct copy of the October 6, 2017 letter is attached hereto as **Exhibit 47**.

601.    In the October 6, 2017 letter, Mr. and Ms. Saenz identified several significant complaints with Defendants' Counterfeit Cabinetry, including, without limitation, defective installation, issues with Defendants' agents' unprofessional conduct (including use of a contractor with a criminal record), and Defendants' refusal to correct or replace their defective installation of Counterfeit Cabinetry.

602.    In the October 6, 2017 letter, Mr. and Ms. Saenz state that, as a result of their purchase of Defendants' Counterfeit Cabinetry, "Having ProCraft Cabinets installed in my home

99

by Chenault has caused my family mental anguish and stress which my family should not have had to endure."

603.     In the October 6, 2017 letter, Mr. and Ms. Saenz state that, as a result of their purchase of Defendants' Counterfeit Cabinetry, "ProCraft Cabinetry, Inc. should be more selective on who they elect to be distributors/dealers."

604.     In the October 6, 2017 letter, Mr. and Ms. Saenz state that, as a result of their purchase of Defendants' Counterfeit Cabinetry, "Chenault's behavior is also a reflection on ProCraft."

605.     In the October 6, 2017 letter, Mr. and Ms. Saenz state that, as a result of their purchase of Defendants' Counterfeit Cabinetry, "a product designed and manufactured by ProCraft was defective, and ProCraft is liable solely because it sold the product in question as a part of the stream of commerce."

606.     The October 6, 2017 letter demonstrates the actual confusion and harm caused by Defendants' false and/or deceptively misleading representations, infringement of the PROCRAFT Marks, and sale of Counterfeit Cabinetry.

607.     Defendants' use of the Infringing Marks in interstate commerce to advertise, promote, and market its goods and services were never approved, permitted or endorsed by ProCraft, and occurred after ProCraft had established extensive and valuable goodwill in connection with its goods and services identified by the PROCRAFT Marks.

608.     In selecting and continuing its use of the Infringing Marks, notwithstanding its actual knowledge of ProCraft's rights, Defendants have acted and continues to act with the wanton disregard for ProCraft's rights, and with the willful intent and purpose of improperly taking or benefiting from the favorable reputation and valuable goodwill that ProCraft has

established in the PROCRAFT Marks. Defendants' actions have caused and continue to cause their goods and services to be passed off as made, authorized, sponsored, or endorsed by or otherwise connected or associated with ProCraft.

609. The infringing trade names and trademarks utilized by Defendants are colorable imitations of and confusingly similar to the PROCRAFT Marks.

610. Defendants' wrongful and illegal activities are likely to cause confusion, and have to cause mistake, and to deceive consumers and others as to the source, nature, characteristics, and quality of the goods and services offered by Defendants.

611. Defendants' wrongful and illegal activities are likely to cause confusion, and to cause mistake, and to deceive consumers and others as to the to the origin, sponsorship, or approval of the goods and services offered by Defendants with or by ProCraft.

612. Defendants' offering of cabinet products, accessories, and services under the Infringing Marks is likely to cause, to the extent it has not already, actual confusion, actual injury, and loss of goodwill and business to ProCraft.

613. Upon information and belief, ProCraft has lost sales from, and Defendants have wrongfully profited from, sales of Defendants' Counterfeit Cabinetry, services, and accessory products for use in connection with the Counterfeit Cabinetry.

614. Defendants have offered for sale, continues to offer for sale, has sold, and enables others to sell its Counterfeit Cabinetry.

# VI.   CAUSES OF ACTION

## COUNT I

## VIOLATIONS OF THE RICO ACT, 18 U.S.C. § 1962(a).

### (*against all Defendants*)

615.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

616.    As set forth above, Defendants have engaged in a pattern of "racketeering activity" as defined in 18 U.S.C. § 1961(1).

617.    As set forth above, Defendants have engaged in a pattern of "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

618.    As set forth above, Defendants collectively are   "enterprise" as defined in 18 U.S.C. § 1961(4) whose activities affect interstate commerce.

619.    Upon information and belief, Defendants, individually and collectively, have received and continue to receive income derived, directly or indirectly, from the aforementioned pattern of racketeering activity.

620.    Upon information and belief, Defendants, individually and collectively, have used or invested, directly or indirectly the aforementioned income, or the proceeds of the aforementioned income, in acquisition of an interest in, or the operation of, the Enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

621.    Based on at least the aforementioned actions, Defendants have individually and collectively violated 18 U.S.C. § 1962(a).

622.    As direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(a), Plaintiffs have been injured in their business and property.

## COUNT II

## VIOLATIONS OF THE RICO ACT, 18 U.S.C. § 1962(b).

### (*against all Defendants*)

623.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

624.    As set forth above, Defendants have engaged in a pattern of "racketeering activity" as defined in 18 U.S.C. § 1961(1).

625.    As set forth above, Defendants have engaged in a pattern of "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

626.    As set forth above, Defendants collectively are  "enterprise" as defined in 18 U.S.C. § 1961(4) whose activities affect interstate commerce.

627.    Upon information and belief, Defendants, individually and collectively, are either employed by or associated with the Enterprise, which is engaged in, or the activities of which affect, interstate or foreign commerce.

628.    Upon information and belief, Defendants, individually and collectively conducted or participated and continue to conduct or participate, directly or indirectly, in the conduct of the Enterprise's affairs through the aforementioned pattern of racketeering activity.

629.    Upon information and belief, Defendants have used the income generated from the unlawful Enterprise and pattern of Racketeering Activity to reinvest in the Enterprise to import more Counterfeit Cabinetry; increase the marketing of the Counterfeit Cabinetry and businesses in the Enterprise; open new retail locations; otherwise distribute more Counterfeit Cabinetry; and invest in other investments both to benefit of the Enterprise and the Defendants individually and collectively.

630.    Based on at least the aforementioned actions, Defendants have individually and collectively violated 18 U.S.C. § 1962(c).

631.    As direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business and property.

## COUNT III

## VIOLATIONS OF THE RICO ACT, 18 U.S.C. § 1962(c).

### (*against all Defendants*)

632.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

633.    As set forth previously, Defendants have conspired to participate in activities prohibited by 18 U.S.C. §§ 1962(a)-(c).

634.    Based on at least the aforementioned actions, Defendants have individually and collectively violated 18 U.S.C. § 1962(d).

635.    As direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business and property.

## COUNT IV

## VIOLATIONS OF THE RICO ACT, 18 U.S.C. § 1962(d) *et seq.*

### (*against all Defendants*)

636.    Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

637.    As set forth above, Defendants have engaged in a pattern of "racketeering activity" as defined in 18 U.S.C. § 1961(1).

638.    As set forth above, Defendants have engaged in a pattern of "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

639.    As set forth above, Defendants collectively are "enterprise" as defined in 18 U.S.C. 1961(4) whose activities affect interstate commerce.

## COUNT V

## FEDERAL AND STATE TRADEMARK INFRINGEMENT

### (*against all Defendants*)

640.    ProCraft incorporates the preceding paragraphs as though fully set forth herein.

641.    Defendants' acts constitute infringement of ProCraft's exclusive rights to the PROCRAFT Marks in violation of the Lanham Act, specifically 15 U.S.C. § 1114(1) and § 1125, and of ProCraft's trademark rights under Tennessee state and common law.

642.    Defendants have used in commerce a reproduction, counterfeit, copy, or colorable imitation of the PROCRAFT Marks in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods or services on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive.

643.    Defendants' acts of infringement have caused ProCraft damages, and ProCraft seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unauthorized and infringing use of the PROCRAFT Marks, or variants thereof similar to or likely to cause confusion with the PROCRAFT Marks, for the damages sustained by ProCraft, for all costs necessary to remediate the infringing uses and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

644.    ProCraft seeks an award of punitive and/or treble damages for at least three times the amount of Defendants' profits or ProCraft's damages, whichever is greater, due to the nature of Defendants' wanton and willful conduct.

645.    Pursuant to 15 U.S.C. § 1116 and equity, ProCraft is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

646.     Pursuant to 15 U.S.C. § 1118 and equity, ProCraft is entitled to impoundment and destruction of infringing articles.

647.     ProCraft is further entitled to all available remedies provided by common law, including, but not limited, to temporary and permanent injunctive relief; Defendants' profits; any damages sustained by ProCraft; and costs.

## COUNT VI

### TRADE NAME INFRINGEMENT

#### (*against all Defendants*)

648.     ProCraft incorporates the preceding paragraphs as though fully set forth herein.

649.     Defendants' acts constitute trade name infringement in violation of ProCraft's trade name rights at common law.

650.     Defendants' acts of infringement have caused ProCraft damages, and ProCraft seeks judgment for Defendants' profits made by Defendants' unauthorized and infringing use of ProCraft's trade name, for the damages sustained by ProCraft, for all costs necessary to remediate the infringing uses and their effects, and for the costs incurred in bringing the present action.

651.     Further, ProCraft is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

## COUNT VII

### FEDERAL TRADEMARK COUNTERFEITING IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1114(1)(a)

#### (*against all Defendants*)

652.     ProCraft incorporates the preceding paragraphs as though fully set forth herein.

106

653. Defendants' acts constitute infringement of ProCraft's exclusive rights to the PROCRAFT Marks in violation of the Lanham Act, specifically 15 U.S.C. § 1114(1) and § 1125, and of ProCraft's trademark rights under Tennessee state and common law.

654. Defendants have used in commerce a reproduction, counterfeit, copy, or colorable imitation of the PROCRAFT Marks in connection with the sale, offering for sale, distribution, or advertising of Defendants' goods or services on or in connection with which such use is likely to cause confusion, to cause mistake, or to deceive.

655. Defendants' Infringing Marks are a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not Defendants knew such mark was so registered.

656. Defendants' Infringing Marks are spurious marks which are identical with, or substantially indistinguishable from, ProCraft's PROCRAFT CABINETRY® Mark.

657. Defendants have infringed ProCraft's registered PROCRAFT CABINETRY® Trademark in violation of 15 U.S.C. § 1114.

658. Defendants intentionally used the Infringing Marks knowing that the Infringing Marks are counterfeit marks as defined by 15 U.S.C. §1116.

659. Defendants' acts of infringement have caused ProCraft damages, and ProCraft seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unauthorized and infringing use of the counterfeit marks, or variants thereof similar to or likely to cause confusion with the PROCRAFT Marks, for the damages sustained by ProCraft, for all costs necessary to remediate the infringing uses and their effects, and for the costs, expenses, and

reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

660. ProCraft seeks an award of punitive and/or treble damages for at least three times the amount of Defendants' profits or ProCraft's damages, whichever is greater, due to the nature of Defendants' wanton and willful conduct.

661. Pursuant to 15 U.S.C. § 1116 and equity, ProCraft is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

662. Pursuant to 15 U.S.C. § 1118 and equity, ProCraft is entitled to impoundment and destruction of infringing articles.

663. ProCraft is further entitled to all available remedies provided by common law, including, but not limited, to temporary and permanent injunctive relief; Defendants' profits; any damages sustained by ProCraft; and costs.

## COUNT VIII

### FEDERAL STATUTORY UNFAIR COMPETITION IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)

#### (*against all Defendants*)

664. ProCraft incorporates the preceding paragraphs as though fully set forth herein.

665. Defendants have used names and marks which are identical or confusingly similar to ProCraft's PROCRAFT Marks with the intent to deceive the public into believing that goods and services offered or sold by Defendants are made by, approved by, sponsored by, or affiliated with ProCraft.

666. Defendants' acts as alleged herein were committed with the intent to pass off Defendants' goods and services as the goods and services of, approved by, sponsored by, or affiliated with ProCraft, and with the intent to deceive and defraud the public.

108

667. Defendants' acts constitute unfair competition and passing off, and have caused ProCraft damages, including, without limitation, lost profits, harm to reputation, and costs to remediate the confusion and harm to ProCraft's goodwill and reputation caused by Defendants.

668. Defendants' acts constitute violations of 15 U.S.C. § 1125.

669. Defendants' acts of unfair competition have caused ProCraft damages, and ProCraft seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unfair competition and passing off of ProCraft's goods and services, for the damages sustained by ProCraft, for all costs necessary to remediate the unfair competition and passing off and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

670. ProCraft further seeks judgment for three times the amount of Defendants' profits or Plaintiff's damages, whichever is greater, due to the nature of Defendants' conduct.

671. Pursuant to 15 U.S.C. § 1116 and equity, ProCraft is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

672. Pursuant to 15 U.S.C. § 1118 and equity, ProCraft is entitled to impoundment and destruction of infringing articles.

## COUNT IX

## FALSE DESIGNATION OF ORIGIN IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)

### (*against all Defendants*)

673. ProCraft incorporates the preceding paragraphs as though fully set forth herein.

674. Defendants have caused products and/or services to enter interstate commerce designated with variations of the PROCRAFT Marks.

109

675. Defendants' use of said designation and other representations constitute a false designation of origin which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with ProCraft and as to the origin, sponsorship, or approval of such goods and services by ProCraft.

676. Defendants' acts are in violation of 15 U.S.C. § 1125 in that Defendants have used in connection with their goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with ProCraft and as to the origin, sponsorship, and approval of Defendants' goods, services, and commercial activities by ProCraft.

677. Defendants' acts have caused ProCraft damages, and ProCraft seeks judgment pursuant to 15 U.S.C. § 1117 for Defendants' profits made by Defendants' unfair competition and passing off of ProCraft's goods and services, for the damages sustained by ProCraft, for all costs necessary to remediate the unlawful acts and their effects, and for the costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy Defendants' actions.

678. ProCraft further seeks judgment for three times the amount of Defendants' profits or ProCraft's damages, whichever is greater, due to the nature of Defendants' conduct.

679. Pursuant to 15 U.S.C. § 1116 and equity, ProCraft is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal infringing conduct.

680. Pursuant to 15 U.S.C. § 1118 and equity, ProCraft is entitled to impoundment and destruction of infringing articles.

## COUNT X

### FALSE DESIGNATION OF ORIGIN IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a)

#### (*against all Defendants*)

681.    ProCraft incorporates the preceding paragraphs as though fully set forth herein.

682.    Defendants have acted as direct competitors to ProCraft.

683.    Defendants' explicit and implicit promotional claims in interstate commerce about their cabinet products, accessories, and services using the PROCRAFT Marks, including, but not limited to, the statements contained in Section V(D)(2)(b)(iv) *supra*, are literally and/or impliedly false and misleading.

684.    Defendants' explicit and implicit promotional claims in interstate commerce about ProCraft and/or ProCraft's ProCraft Cabinetry® Products, and including, but not limited to, the statements contained in Sections Section V(D)(2)(b)(iv) *supra*, are literally and/or impliedly false and misleading.

685.    Defendants' sale of and offers for sale of their cabinet products, accessories, and services using the PROCRAFT Marks, as alleged herein, constitutes "use in commerce" as defined in 15 U.S.C. § 1127.

686.    As alleged herein, Defendants have intentionally made literally false statements in commercial advertising or promotion in interstate commerce which misrepresent the source, sponsorship, approval, or certification of Defendants' goods or services by ProCraft, including, but not limited to, the statements contained in Section V(D)(2)(b)(iv) *supra*.

687.    As alleged herein, Defendants have intentionally made literally false statements in commercial advertising or promotion in interstate commerce which misrepresent the nature, characteristics, qualities, source, or geographic origin of Defendants' products, ProCraft

111

generally, ProCraft's products and/or services, or commercial activities, including, but not limited to, the statements contained in Section V(D)(2)(b)(iv) *supra*.

688.    Defendants' false and/or misleading statements regarding their cabinet products, accessories, and services using the PROCRAFT Marks are material in that the statements will likely influence existing and potential buyers of (a) cabinet products, accessories, and services generally; (b) Defendants' cabinet products, accessories, and services using the PROCRAFT Marks; (c) ProCraft's ProCraft Cabinetry® Products; and (d) accessory or related products for Defendants' cabinet products and services using the PROCRAFT Marks and/or ProCraft's ProCraft Cabinetry® Products.

689.    Buyers of Defendants' cabinet products, accessories, and services using the PROCRAFT Marks (and buyers of cabinet products, accessories, and services generally) have no choice in many circumstances but to trust that statements made by Defendants (directly or through its agents or representatives) that Defendants' cabinet products, accessories, and services using the PROCRAFT Marks have the nature, characteristics, and qualities claimed for them by Defendants.

690.    Defendants' false and/or misleading statements regarding their cabinet products, accessories, and services using the PROCRAFT Marks have actually deceived or have the capacity to tend to deceive a substantial portion of the intended audience for such statements.

691.    Defendants' false and/or misleading statements regarding ProCraft and/or ProCraft's ProCraft Cabinetry® Products are material in that the statements will likely influence existing and potential buyers of (a) cabinet products, accessories, and services generally; (b) Defendants' cabinet products, accessories, and services using the PROCRAFT Marks; (c) ProCraft's ProCraft Cabinetry® Products; and (d) accessory or related products for Defendants'

cabinet products and services using the PROCRAFT Marks and/or ProCraft's ProCraft Cabinetry® Products.

692.    Buyers of Defendants' cabinet products, accessories, and services using the PROCRAFT Marks (and buyers of cabinet products, accessories, and services generally) have no choice in many circumstances but to trust that statements made by Defendants (directly or through its agents or representatives) that ProCraft and/or ProCraft's ProCraft Cabinetry® Products, have the nature, characteristics, and qualities claimed for them by Defendants.

693.    Defendants' false and/or misleading statements regarding ProCraft and/or ProCraft's ProCraft Cabinetry® Products have actually deceived or have the capacity to tend to deceive a substantial portion of the intended audience for such statements.

694.    Defendants' false or misleading statements have been introduced into interstate commerce through, among other avenues, Defendants' publication of such statements on the Infringing Websites and in direct communications to potential and existing customers.

695.    By these actions, Defendants have engaged and continue to engage in false advertising and unfair competition in violation of the statutory law of the United States, 15 U.S.C. § 1125 *et seq.* As a result, ProCraft has suffered and will continue to suffer damage to its business, reputation, and goodwill.

696.    Defendants willfully, knowingly, intentionally, maliciously, or recklessly are using in commerce false and/or misleading descriptions of fact or misleading representations of fact concerning the nature, characteristics, and qualities of Defendants' cabinet products, accessories, and services using the PROCRAFT Marks and ProCraft's ProCraft Cabinetry® Products and/or about ProCraft generally.

113

697. Defendants' false and/or misleading statements have caused ProCraft injury and/or are likely to cause ProCraft injury, either by direct diversion of sales from ProCraft to Defendants or by a lessening of the goodwill associated with ProCraft's ProCraft Cabinetry® Products.

698. ProCraft has been injured by Defendants' actions and representations because customers who would otherwise have purchased from ProCraft have made, or will make, purchasing decisions based upon Defendants' false and misleading representations concerning the attributes of Defendants' cabinet products, accessories, and services using the PROCRAFT Marks and ProCraft's ProCraft Cabinetry® Products.

699. Unless enjoined by this Court, Defendants' acts will irreparably injure ProCraft's goodwill and erode its sales, customer base, and share in the market for cabinet products, accessories, and services.

700. Defendants' acts have caused ProCraft damages, and ProCraft seeks judgment pursuant to 15 U.S.C. § 1117 for statutory damages, Defendants' profits, any damages sustained by ProCraft; for all costs, expenses, and reasonable attorney fees (as this is an exceptional case) incurred in bringing the present action and attempts to remedy Defendants' actions.

701. ProCraft seeks an award of treble damages for at least three times the amount of Defendants' profits or ProCraft's damages, whichever is greater, due to the nature of Defendants' wanton and willful conduct.

702. Pursuant to 15 U.S.C. § 1116 and equity, ProCraft is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

114

703. Pursuant to 15 U.S.C. § 1117, ProCraft seeks judgment for three times the amount of Defendants' profits or ProCraft's damages, whichever is greater, due to the nature of Defendants' conduct.

704. Defendants' acts are willful, wanton, and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling ProCraft to recover additional damages and reasonable attorney fees and expenses pursuant to 15 U.S.C. § 1117.

705. Pursuant to 15 U.S.C. § 1118 and equity, ProCraft is entitled to impoundment and destruction of all packaging, containers, devices, products, literature, advertising and any other material bearing false, deceptive, and/or misleading statements and/or any variants thereof (or similar wording).

## COUNT XI

## CYBERSQUATTING UNDER FEDERAL LAW

### (*against all Defendants*)

706. ProCraft incorporates the preceding paragraphs as though fully set forth herein.

707. Defendants have registered and/or use the domain name www.procraftkitchenandbath.com.

708. Defendants have registered and/or use the domain name www.procraftchicago.com.

709. Defendants have registered and/or use the domain name www.procraftdallas.com.

710. Defendants have registered and/or use the domain name www.procrafthouston.com.

711. Defendants have registered and/or use the domain name www.procraftmiami.com.

115

712.    Defendants    have    registered    and/or    use    the    domain    name www.procraftseattle.com.

713.    Defendants have registered and/or use the domain name www.procraftky.com.

714.    Defendants    have    registered    and/or    use    the    domain    name www.aaprocraftkitchen.com.

715.    The Infringing Domain Names are identical and/or confusingly similar to, and/or dilutive to the PROCRAFT Marks.

716.    Defendants have a bad faith intent to profit from use of the Infringing PROCRAFT Marks in the Infringing Domain Names as evidenced by, *inter alia*, the infringement of the PROCRAFT Marks and the intent to divert customers from ProCraft's business and website to a site accessible under Infringing Domain Names that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.

717.    ProCraft has suffered and continue to suffer harm from Defendants' registration and use of the Infringing Domain Names.

718.    ProCraft is entitled to all available remedies provided by 15 U.S.C. §§ 1114, 1116, 1117, 1118, and 1125, including temporary, preliminary and permanent injunctive relief; Defendants' profits; any damages sustained by ProCraft; costs; pre-judgment interest; post-judgment interest; transfer and/or cancellation of the Infringing Domain Names; and other equitable relief.

719.    This is an exceptional case under 15 U.S.C. § 1117 such that ProCraft is entitled to its reasonable attorney fees and expenses.

116

## COUNT XII

## UNFAIR COMPETITION IN VIOLATION OF TENNESSEE COMMON LAW

### (*against all Defendants*)

720. ProCraft incorporates the preceding paragraphs as though fully set forth herein.

721. As alleged herein, ProCraft owns the PROCRAFT Marks.

722. As alleged herein, the PROCRAFT Marks are valid and legally protectable.

723. Defendants' infringing use of the PROCRAFT Marks, and/or variants thereof similar to or likely to cause confusion with the PROCRAFT Marks, is likely to cause confusion concerning the origin of the goods and services associated with the mark.

724. ProCraft and Defendants are competitors in the kitchen and bath industry, and compete for a common pool of customers. As alleged herein, Defendants have engaged in unfair, deceptive, or fraudulent conduct, which is likely to cause, if it has not already, customer confusion in violation of Tennessee common law.

725. Through Defendants' unauthorized use of the PROCRAFT Marks, and/or variants thereof similar to or likely to cause confusion with the PROCRAFT Marks, in connection with their cabinet products, accessories, and services, on the Infringing Websites, and in commerce, Defendants have committed trademark infringement, passing off, palming off, imitating, and/or unfair or deceptive practices that are causing or are likely to cause confusion or deception.

726. Defendants are liable to ProCraft for unfair competition under Tennessee law, because Defendants' conduct is tortious and has deprived ProCraft of customers and other prospects.

727. Defendants' acts as alleged herein were committed with the intent to deceive and defraud the public in order to gain an increase its sales, customer base, and share in the kitchen and bath industry and/or eliminate ProCraft from the kitchen and bath industry.

117

728. Defendants' acts as alleged herein constitute unfair competition in violation of Tennessee law.

729. Defendants' acts constituting unfair competition have caused ProCraft damages as alleged herein.

730. Defendants' foregoing acts constitute unfair competition and infringement of ProCraft's common law rights for which ProCraft has no adequate remedy at law.

731. Defendants' acts of unfair competition have caused ProCraft damages, and ProCraft seeks ProCraft's goods and services, for the damages sustained by ProCraft, for all costs necessary to remediate the unfair competition and passing off and their effects, and for the costs incurred in bringing the present action and prior attempts to remedy Defendants' actions.

732. ProCraft further seeks judgment for punitive damages of at least three times the amount of Defendant's profits or ProCraft's damages, whichever is greater, due to the nature of Defendants' conduct.

733. Further, ProCraft is entitled to preliminary and permanent injunctive relief against Defendants to stop the illegal conduct.

## COUNT XIII

## COMMON LAW UNJUST ENRICHMENT

### (*against all Defendants*)

734. ProCraft incorporates the preceding paragraphs as though fully set forth herein.

735. Upon information and belief, Defendants' willful and knowing acts, including its use of ProCraft's trademarks and trade names, permitted Defendants to procure customers that it otherwise would not have been able to obtain.

736. ProCraft has conferred a benefit, directly or indirectly, upon Defendants through Defendants' use of the Infringing Marks.

118

737.  Defendants have received appreciable benefits from using the Infringing Marks in commerce.

738.  It is inequitable for Defendants to retain the benefits of the use of the Infringing Marks, including, but not limited to, monetary and reputational benefits and value of the PROCRAFT Marks.

739.  Defendants' acts have caused ProCraft damages such that monetary and injunctive remedies are appropriate.

740.  Defendants have been unjustly enriched by virtue of its use of the Infringing Marks, to the detriment of ProCraft, as well as consumers in the marketplace.

741.  Defendants' actions have been made willfully and knowingly.

742.  Defendants' acts have caused ProCraft damages and unjustly enriched Defendants as alleged herein.

743.  ProCraft is entitled to all available remedies, including preliminary and permanent injunctive relief, damages, Defendants' profits, enhanced damages, and costs.

## COUNT XIV

## BREACH OF CONTRACT/VIOLATION OF THE UCC UNDER TENNESSEE LAW

### (*against Sweet Home*)

744.  ProCraft incorporates the preceding paragraphs as though fully set forth herein.

745.  ProCraft and Sweet Home entered into a contract where Procraft would provide Sweet Home with cabinets and cabinet accessories and Sweet Home would pay for such goods.

746.  Further, under Tenn. Code Ann. § 47-2-607(1), the buyer of goods must pay the contract rate for any goods accepted.

747.  ProCraft has delivered cabinets and cabinet accessories to Sweet Home, and Sweet Home has accepted the cabinets and cabinet accessories.

119

748. Sweet Home has failed to pay for the accepted goods and currently has an outstanding balance with ProCraft in the amount of $1,289,120.77.

749. ProCraft has been damaged in the amount of $1,289,120.77 due to Sweet Homes's nonpayment for the goods.

750. Such actions constitute a breach of contract under Tennessee law and/or violation of the Uniform Commercial Code as adopted by Tennessee.

## COUNT XV

## BREACH OF CONTRACT/VIOLATION OF THE UCC UNDER TENNESSEE LAW

### (*against PC Florida*)

751. ProCraft incorporates the preceding paragraphs as though fully set forth herein.

752. ProCraft and PC Florida entered into a contract where ProCraft would provide OC Florida with cabinets and cabinet accessories and PC Florida would pay for such goods.

753. Under Tenn. Code Ann. § 47-2-607(1), the buyer of goods must pay the contract rate for any goods accepted.

754. ProCraft has delivered cabinets and cabinet accessories to PC Florida and PC Florida has accepted the cabinets and cabinet accessories.

755. PC Florida has failed to pay for the accepted goods and currently has an outstanding balance with ProCraft in the amount of $612,109.66.

756. Such actions constitute a breach of contract under Tennessee law and/or violation of the Uniform Commercial Code as adopted by Tennessee.

## COUNT XVI

## DECLARATORY JUDGMENT OF MEMBERSHIP IN PC FLORIDA

### (*against PC Florida*)

757. ProCraft incorporates the preceding paragraphs as though fully set forth herein.

120

758. According to PC Florida's Articles of Incorporation, ProCraft is a member of PC Florida.

759. ProCraft had no knowledge of its status as a member of PC Florida until recently and has never received any distribution or payment from PC Florida as a member.

760. A justiciable controversy, therefore, exists regarding ProCraft's alleged membership in PC Florida.

761. A judicial declaration is necessary and appropriate in order that ProCraft may ascertain its rights and duties, if any, with respect to its alleged membership in PC Florida.

## COUNT XVII

### VIOLATION OF THE FLORIDA REVISED LIMITED LIABILITY COMPANY ACT, FLA. STAT. § 605.0101 *et seq.*

### (*Against PC Florida*)

762. ProCraft incorporates the preceding paragraphs as though fully set forth herein.

763. According to PC Florida's Articles of Incorporation, ProCraft is a member of PC Florida.

764. As a purported member of PC Florida and pursuant to Section 605.0410 of the Florida Revised Limited Liability Act, ProCraft requested certain financial and operational information of ProCraft Florida on May 31, 2017 to determine what, if any, membership ProCraft held in PC Florida.

765. To the extent the Court determines that ProCraft is a member of PC Florida, ProCraft is entitled to the following information as it relates to ProCraft Florida: 1) the full names and address of each member and manager; 2) a copy of the operating agreement; 3) all documents filed with the Florida Department of States; 4) copies of ProCraft Florida's federal, state, and local income tax returns and reports for the last three years; 5) copies of financial

121

statements for the last three years; and 6) a record of the agreed value of each member's actual and/or intended contributions, and the times these contributions were and/or will be made.

766.    To the extent the Court determines that ProCraft is a member of PC Florida, PC Florida failed to provide ProCraft with any of the requested information and documents.

767.    As such, ProCraft Florida has violated the Florida Revised Limited Liability Act.

768.    To the extent the Court determines that ProCraft is a member of PC Florida, ProCraft has suffered an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by PC Florida, including, without limitation, lack of knowledge regarding its membership interest in PC Florida, withholding of any allocation of profits and distributions owed, and withholding of any tax benefits or deductions related to PC Florida's business expenses.

769.    ProCraft is entitled to an order directing PC Florida to permit inspection or copying of the records demanded, and any remedies, monetary or otherwise, permitted under the Florida Revised Limited Liability Act, common law, and equity.

## COUNT XVIII

### BREACH OF CONTRACT/VIOLATION OF THE UCC UNDER TENNESSEE LAW

#### (*Against PC Dallas*)

770.    ProCraft incorporates the preceding paragraphs as though fully set forth herein.

771.    ProCraft and PC Dallas entered into a contract where ProCraft would provide PC Dallas with cabinets and cabinet accessories and PC Dallas would pay for such goods.

772.    Further, under Tenn. Code Ann. § 47-2-607(1), the buyer of goods must pay the contract rate for any goods accepted.

773.    ProCraft has delivered cabinets and cabinet accessories to PC Dallas and PC Dallas has accepted the cabinets and cabinet accessories.

122

774. Procraft Dallas has failed to pay for the accepted goods and currently has an outstanding balance with ProCraft in the amount of $706,223.78.

775. Such actions constitute a breach of contract under Tennessee law and/or violation of the Uniform Commercial Code as adopted by Tennessee.

## COUNT XIX

### DECLARATORY JUDGMENT OF MEMBERSHIP IN PC DALLAS

#### (*against PC Dallas*)

776. ProCraft incorporates the preceding paragraphs as though fully set forth herein.

777. According to PC Dallas' Certificate of Formation, ProCraft is a member of PC Dallas.

778. ProCraft had no knowledge of its status as a member of PC Dallas until recently and has never received any distribution or payment from PC Dallas as a member.

779. A justiciable controversy, therefore, exists regarding ProCraft's alleged membership in PC Dallas.

780. A judicial declaration is necessary and appropriate in order that ProCraft may ascertain its rights and duties, if any, with respect to its alleged membership in PC Dallas.

## COUNT XX

### VIOLATION OF THE TEXAS BUSINESS ORGANIZATION CODE, TEX. BUS. ORGS. § 1.001 *et seq.*

#### (*Against PC Dallas*)

781. ProCraft incorporates the preceding paragraphs as though fully set forth herein.

782. According to PC Dallas's Certificate of Formation, ProCraft is a member of PC Dallas.

783. As a purported member of PC Dallas and pursuant to Sections 3.151 and 3.153 of the General Provisions of Texas's Business Organization Code, ProCraft requested certain financial and operational information and documents of PC Dallas on May 18, 2017 to determine what, if any, membership ProCraft held in PC Dallas.

784. To the extent the Court determines that ProCraft is a member of PC Dallas, ProCraft is entitled to the following information as it relates to PC Dallas: 1) a current list of the percentage or other interest in the LLC owned by each member and if more than one class or group of membership interest exists, the names of the members of each class or group; 2) PC Dallas's federal, state, and local tax information for the last six years; 3) PC Dallas's company agreement if in writing; 4) executed copies of any powers of attorney; 5) documents establishing any class or group of membership interests; and 6) a written statement of the amount of cash contribution and a description and statement of the agreed value of any other contributions made or agreed to be made by each member, the dates the contributions were or will be made, any event that requires a member to make additional contributions, any event that requires the winding up of the entity, and the date each member became a member.

785. To the extent the Court determines that ProCraft is a member of PC Dallas, PC Dallas failed to provide ProCraft with any of the requested information and documents.

786. As such, PC Dallas has violated the Texas Business Organization Code.

787. To the extent the Court determines that ProCraft is a member of PC Dallas, ProCraft has suffered an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by PC Dallas, including, without limitation, lack of knowledge regarding its membership interest in PC Dallas, withholding of any allocation of

124

profits and distributions owed, and withholding of any tax benefits or deductions related to PC Dallas' business expenses.

788.    ProCraft is entitled to an order directing PC Dallas to permit inspection or copying of the records demanded, and any remedies, monetary or otherwise, permitted under the Texas Business Organization Code, common law, and equity.

## COUNT XXI

### BREACH OF CONTRACT/VIOLATION OF THE UCC UNDER TENNESSEE LAW

### (*Against PC Houston*)

789.    ProCraft incorporates the preceding paragraphs as though fully set forth herein.

790.    ProCraft and PC Houston entered into a contract where ProCraft would provide PC Houston with cabinets and cabinet accessories and PC Houston would pay for such goods.

791.    Further, under Tenn. Code Ann. § 47-2-607(1), the buyer of goods must pay the contract rate for any goods accepted.

792.    ProCraft has delivered cabinets and cabinet accessories to PC Houston and PC Houston has accepted the cabinets and cabinet accessories.

793.    PC Houston has failed to pay for the accepted goods and currently has an outstanding balance with ProCraft in the amount of $1,043,940.38.

794.    Such actions constitute a breach of contract under Tennessee law and/or violation of the Uniform Commercial Code as adopted by Tennessee.

## COUNT XXII

### DECLARATORY JUDGMENT OF MEMBERSHIP IN PC HOUSTON

### (*against PC Houston*)

795.    ProCraft incorporates the preceding paragraphs as though fully set forth herein.

796. According to PC Houston's Certificate of Formation, ProCraft is a member of PC Houston.

797. ProCraft had no knowledge of its status as a member of PC Houston until recently and has never received any distribution or payment from PC Houston as a member.

798. A justiciable controversy, therefore, exists regarding ProCraft's alleged membership in PC Houston.

799. A judicial declaration is necessary and appropriate in order that ProCraft may ascertain its rights and duties, if any, with respect to its alleged membership in PC Houston.

## COUNT XXIII

### VIOLATION OF THE TEXAS BUSINESS ORGANIZATION CODE, TEX. BUS. ORGS. § 1.001 *et seq.*

#### (*against PC Houston*)

800. ProCraft incorporates the preceding paragraphs as though fully set forth herein.

801. According to PC Houston's Certificate of Formation, ProCraft is a member of PC Houston.

802. As a purported member of PC Houston and pursuant to Section 3.151 of the General Provisions of Texas's Business Organization Code, ProCraft requested certain financial and operational information and documents of PC Houston on May 31, 2017 to determine what, if any, membership ProCraft held in PC Houston.

803. To the extent the Court determines that ProCraft is a member of PC Houston, ProCraft is entitled to the following information as it relates to PC Houston: 1) a current list of the percentage or other interest in PC Houston owned by each member and if more than one class or group of membership interest exists, the names of the members of each class or group; 2) PC Houston's federal, state, and local tax information for the last six years; 3) PC Houston's

126

company agreement if in writing; 4) executed copies of any powers of attorney; 5) documents establishing any class or group of membership interests; and 6) a written statement of the amount of cash contribution and a description and statement of the agreed value of any other contributions made or agreed to be made by each member, the dates the contributions were or will be made, any event that requires a member to make additional contributions, any event that requires the winding up of the entity, and the date each member became a member.

804. To the extent the Court determines that ProCraft is a member of PC Houston, PC Houston failed to provide ProCraft with any of the requested information and documents.

805. As such, PC Houston has violated the Texas Business Organization Code.

806. To the extent the Court determines that ProCraft is a member of PC Houston, ProCraft has suffered an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by PC Houston, including, without limitation, lack of knowledge regarding its membership interest in PC Houston, withholding of any allocation of profits and distributions owed, and withholding of any tax benefits or deductions related to PC Houston's business expenses.

807. ProCraft is entitled to an order directing PC Dallas to permit inspection or copying of the records demanded, and any remedies, monetary or otherwise, permitted under the Texas Business Organization Code, common law, and equity.

## COUNT XXIV

### BREACH OF CONTRACT/VIOLATION OF THE UCC UNDER TENNESSEE LAW

#### (*against PC Seattle*)

808. ProCraft incorporates the preceding paragraphs as though fully set forth herein.

809. ProCraft and PC Seattle entered into a contract where ProCraft would provide PC Seattle with cabinets and cabinet accessories and PC Seattle would pay for such goods.

810.    Further, under Tenn. Code Ann. § 47-2-607(1), the buyer of goods must pay the contract rate for any goods accepted.

811.    ProCraft has delivered cabinets and cabinet accessories to PC Seattle and PC Seattle has accepted the cabinets and cabinet accessories.

812.    PC Seattle has failed to pay for the accepted goods and currently has an outstanding balance with ProCraft in the amount of $240,010.73.

813.    ProCraft has been damaged in the amount of $240,010.73 due to PC Seattle's nonpayment for the goods.

814.    Such actions constitute a breach of contract under Tennessee law and/or violation of the Uniform Commercial Code as adopted by Tennessee.

## COUNT XXV

## BREACH OF CONTRACT

### (*against Peter Huang and Jackey Lin*)

815.    ProCraft incorporates the preceding paragraphs as though fully set forth herein.

816.    REDACTED

817.    REDACTED

818.    REDACTED

819.    REDACTED

820.    REDACTED

128

821.    Peter Huang and Jackey Lin, by failing to ██████ REDACTED ██████

under the Shareholders Agreement, have breached the Shareholders Agreement.

822.    ██████████ REDACTED ██████████

███████████████████████

823.    ██ RED ██ ██ ██ ██ ██ ██████ ██ ████ ████ █
      ED ██████████████████████████

███████████████████████████

824.    ██████████ REDACTED ██████████

825.    ██████████ REDACTED ██████████

███████████████████████████

826.    ██████████ REDACTED ██████████

████████████████████████████████

███████████████████████

827.    ██████████ REDACTED ██████████

████████████████████████████████

███████████████████

828.    ██████████ REDACTED ██████████

████████████████████████████████

███████████████████

829.    Marc Skopec is a sales representative for ProCraft.

830.    ██████████ REDACTED ██████████

████████████████████████████████

███████████████

129

831. REDACTED

832. REDACTED

833. REDACTED

834. REDACTED

835. REDACTED

836. REDACTED

837. REDACTED

838. REDACTED

839. REDACTED

130

840. Through their actions described herein, Peter Huang and Jackey Lin have breached the Shareholders Agreement.

841. As a result of Peter Huang's and Jackey Lin's breaches of the Shareholders Agreement, ProCraft has suffered and continues to suffer damage.

842. ProCraft is entitled to an award of monetary damages including, but not limited to, actual damages, lost profits, incidental damages, consequential damages, injunctive relief, expenses, interest, and costs.

## VII.    ENTITLEMENT TO INJUNCTIVE RELIEF

843. ProCraft incorporates the preceding paragraphs as though fully set forth herein.

844. By reason of Defendants' acts alleged herein, ProCraft has and will suffer immeasurable, and thus irreparable, damage to its business, reputation, and goodwill.

845. Upon information and belief, Defendants intend to continue to do the acts complained of herein unless restrained and enjoined.

846. ProCraft's remedy at law is inadequate.

847. ProCraft is entitled to a preliminary and permanent injunction as set forth in the Prayer for Relief hereinafter.

## VIII.    PRAYER FOR RELIEF

**WHEREFORE**, ProCraft prays:

A.    The Court enter a judgment in favor of ProCraft and against Defendants as to all causes of action alleged herein;

B.    ProCraft be awarded all relief to which they are entitled under 18 U.S.C. §§ 1961 *et seq.*; 15 U.S.C. § 1051 *et seq.*, Tennessee statutory and common law; the Florida Revised Limited Liability Act, Fla. Stat. § 605.0101 *et seq.*; and the Texas Business Organization Code, Tex. Bus. Orgs. § 1.001 *et seq.*;

C.     This Court issue preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116, Tennessee law, and equity, enjoining and restraining Defendants, and their affiliates, agents, partners, servants, and employees, or anyone acting with its authority or on its behalf, from directly or indirectly using any mark, word, designation, name, or domain name similar to ProCraft's PROCRAFT Marks that is likely to cause confusion or mistake or to deceive;

D.     This Court issue preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116, Tennessee law, and equity, enjoining and restraining Defendants, their officers, agents, servants, employees, attorneys, and anyone in active concert with, aiding, assisting, and/or enabling Defendants, from stating, representing, or implying orally or in writing (including, but not limited to, email communications, print advertisements, marketing materials, websites, blogs, social media) any statements that are likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with ProCraft, to deceive as to the source, sponsorship, approval, or certification of Defendants' goods or services by ProCraft, that misrepresent the nature, characteristics, qualities, source, or geographic origin of Defendants' cabinet products, accessories, and services, ProCraft generally, and/or ProCraft's ProCraft Cabinetry® Products, and/or any false and/or misleading statements (including, without limitation, those contained in Section V(D)(2)(b)(iv) *supra*), including, but not limited to:

    i.     directly or indirectly engaging in false and/or misleading advertising or promotion of Defendants' cabinet products, accessories, and services;

    ii.    making or inducing others to make false, misleading, or deceptive statements or representations of fact in connection with the promotion, advertisement, packaging, display, sale, offering for sale, manufacture, production, circulation, or distribution of Defendants' cabinet products,

accessories, and services, including, but not limited to, through the making of false and/or misleading representations about ProCraft's ProCraft Cabinetry® Products;

    iii.    making or inducing others to make false, misleading, or deceptive statements or representations of fact in connection with the promotion, advertisement, packaging, display, sale, offering for sale, manufacture, production, circulation, or distribution of Defendants' cabinet products, accessories, and services, including, but not limited to, through the making of false and/or misleading representations about ProCraft generally;

E.    This Court issue preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116, Tennessee law, and equity, enjoining and restraining Defendants, their officers, agents, servants, employees, attorneys, and anyone in active concert with, aiding, assisting, and/or enabling Defendants, from committing any unfair business practices directed toward obtaining the business and/or customers of ProCraft, including, without limitation, the false and/or misleading statements contained in Section V(D)(2)(b)(iv); and from committing any other deceptive and/or unfair business practices directed toward devaluing or diminishing the goodwill and reputation associated with ProCraft, including, without limitation, the false and/or misleading statements contained in Section V(D)(2)(b)(iv);

F.    This Court issue preliminary and permanent injunctions pursuant to 18 U.S.C. § 1964(a) imposing reasonable restrictions on Defendants' use of the PROCRAFT CABINETRY® Mark and PROCRAFT Design Mark and importation, offers for sale, and sales of any cabinetry products or offering any services related to cabinetry under those marks or any variants thereof;

G. This Court issue preliminary and permanent injunctions pursuant to 18 U.S.C. § 1964(a) that prohibit any person from investing in any enterprise any income derived from the pattern of Racketeering Activity; using the pattern of Racketeering Activity to acquire or maintain control over the Enterprise; conducting the affairs of the Enterprise through the pattern of Racketeering; and/or conspiring with anyone to undertake the foregoing actions;

H. Within five (5) days of issuance of preliminary and/or permanent injunctions, the Court order Defendants to file a sworn statement under oath and subject to penalty of perjury that it has fully complied with the terms of the injunctions;

I. This Court, pursuant to 15 U.S.C. § 1118 and equity, order that all labels, signs, prints, packages, wrappers, receptacles, pictures, websites and advertisements in the possession or under the control of Defendants bearing any mark, word, designation, name, or domain name that is confusingly similar to ProCraft's PROCRAFT Marks and all plates, molds, matrices, and other means of making the same, shall be delivered to ProCraft and destroyed;

J. Defendants be directed to publish and distribute corrective advertising (including, but not limited to, through email communications and on their websites where they have advertised) to reduce the effects of the literally false or impliedly false and/or misleading statements regarding Defendants' cabinet products, accessories, and services, ProCraft generally, ProCraft's ProCraft Cabinetry® Products, or variants thereof;

K. Defendants be required to account to ProCraft for any and all benefits or profits derived by Defendant from the use of any name or mark incorporating any mark, word, designation, name, or domain name that is confusingly similar to ProCraft's PROCRAFT Marks, including the sale of any and all products or services associated with any such name or mark, and for all damages sustained by ProCraft by reason of said acts of unfair competition, false

134

designation of origin, and/or other illegal acts complained of herein to the full extent permitted by 15 U.S.C. §§ 1117 and 1125, and Tennessee common law;

L.     ProCraft be awarded statutory damages under 15 U.S.C. § 1117(c), should ProCraft so elect;

M.     For its claims related to Defendants' false and/or misleading statements, ProCraft be granted an award of monetary damages in an amount to be determined at trial, treble damages, punitive damages, statutory damages, prejudgment and post-judgment interest, attorney fees, expenses, and costs as provided under 15 U.S.C. § 1117 and Tennessee statutory and common law;

N.     For its claims related to the Former Dealer Defendants' breaches of contract and violations of the UCC, ProCraft be granted an award of monetary damages in an amount to be determined at trial as provided under Tennessee statutory and common law, but in an amount not less than $75,000;

O.     The Court enter a declaratory judgment as to ProCraft's rights and duties, if any, with respect to its alleged membership in PC Florida;

P.     To the extent the Court determines that ProCraft is a member of PC Florida, ProCraft is entitled to an order directing PC Florida to permit inspection or copying of the records demanded, and any remedies, monetary or otherwise, permitted under the Florida Revised Limited Liability Act, common law, and equity;

Q.     The Court enter a declaratory judgment as to ProCraft's rights and duties, if any, with respect to its alleged membership in PC Dallas;

R.     To the extent the Court determines that ProCraft is a member of PC Dallas, ProCraft is entitled to an order directing PC Dallas to permit inspection or copying of the records

demanded, and any remedies, monetary or otherwise, permitted under the Texas Business Organizations Code, common law, and equity;

S.      The Court enter a declaratory judgment as to ProCraft's rights and duties, if any, with respect to its alleged membership in PC Houston;

T.      To the extent the Court determines that ProCraft is a member of PC Houston, ProCraft is entitled to an order directing PC Houston to permit inspection or copying of the records demanded, and any remedies, monetary or otherwise, permitted under the Texas Business Organizations Code, common law, and equity;

U.      REDACTED

V.      REDACTED

W.      This Court award ProCraft punitive and/or treble damages in an amount no less than three times the amount of Defendants' profits or ProCraft's damages, whichever is greater, due to the wanton, egregious, willful, deliberate, intentional, and/or malicious nature of its actions;

X.      This Court pursuant to 18 U.S.C. § 1964(a) order the Defendants to divest themselves of any interest, direct or indirect, in the unlawful enterprise including but not limited to any real property, personal property, intellectual property, money, investments, securities, unpaid invoices, contracts, equipment, cabinetry products, and all other assets used in connection with or related to the unlawful enterprise;

Y.      The costs of this action be awarded to ProCraft;

136

Z.     ProCraft be awarded its reasonable attorney fees due to the exceptional nature of this case and Defendants' intentional, wanton and willful illegal conduct and ;

AA.    This Court award Plaintiff its damages, costs (include reasonable attorneys' fees and expenses), and treble damages;

BB.    Pursuant to 18 U.S.C. § 1964(c), the Court award Plaintiff its damages, costs (include reasonable attorneys' fees and expenses), and treble damages;

CC.    Defendants be liable for any award of monetary damages, statutory damages, treble damages, punitive damages, costs, and/or attorney fees;

DD.    Any and all damages and other awards be assessed against Defendants jointly and severally;

EE.    Pre-judgment and post-judgment interest be awarded to ProCraft; and

FF.    This Court grant such other and further relief as it shall deem just.

## DEMAND FOR JURY TRIAL

Trial by jury is hereby demanded for all issues so triable.

Respectfully submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

/s/ Samuel F. Miller
Samuel F. Miller, TN Bar No. 22936
Maia T. Woodhouse, TN Bar No. 30438
Nicholas R. Valenti, TN Bar No. 35420
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, Tennessee 37201
Telephone: (615) 726-5594
Facsimile: (615) 744-5594
Email: smiller@bakerdonelson.com
      mwoodhouse@bakerdonelson.com
      nvalenti@bakerdonelson.com

*Counsel for Plaintiff ProCraft Cabinetry, Inc.*