# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| PROCRAFT CABINETRY, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:17-cv-01392 ) CHIEF JUDGE CRENSHAW |
| SWEET HOME KITCHEN AND BATH, INC., et al., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Procraft Cabinetry, Inc. ("Procraft Cabinetry") brought this action against multiple entities and individuals including two of its shareholders, Qiang Huang and Min Hua Lin, alleging trademark infringement, violations of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq., and contract violations for violating the Shareholder Agreement. (Doc. No. 235.) In response, Huang and Lin filed a Third Party Complaint against Sophia Chen, the third shareholder and president of Procraft Cabinetry, alleging that she usurped her corporate authority by unilaterally directing Procraft Cabinetry to bring this action. (Doc. No. 255.) Count Five of the Third Party Complaint demands that Chen direct Procraft Cabinetry to withdraw this lawsuit. (Id. at 24.) After hundreds of filings and multiple hearings over a six-month period, on April 27, 2018, the Court issued an Order pursuant to Federal Rule of Civil Procedure 56(f) that it intended to dismiss the case, granting summary judgment to Huang and Lin on Count Five of the Third Party Complaint. (Doc. No. 270.) After a reasonable time for discovery and reviewing the additional

briefing from the parties, summary judgment is granted to Huang and Lin on Count Five of the Third Party Complaint.[1]

I. Background and Undisputed Material Facts

On January 15, 2010, Chen formed Procraft Cabinetry by filing the formation papers with the Tennessee Secretary of State. (Doc. No. 325 at 1-2.) At the time, Chen was the only shareholder of Procraft Cabinetry. (Id. at 2.) In November 2014, Chen, Huang, and Lin entered into the "Shareholders' Agreement of Procraft Cabinetry, Inc. Company." (Doc. No. 235-29.) The Shareholders' Agreement purported to form "Procraft Cabinetry, Inc. (429 McNally Dr., Nashville, TN 37211-3311, which shall be the only cabinet manufacturing company with occupancy in the entire building) a Company to be registered in Nashville, Davidson County, Tennessee . . . for cabinetry sales . . . ." (Id. at 2.) Huang, Lin, and Chen entered into the agreement because they saw a "growing market opportunity to provide company services for both residential and commercial needs," and wanted to pursue that "opportunity by their engagement with The Company." (Id.) "The Company" is defined as "Procraft Cabinetry, Inc." (Id.)

Under the Shareholders' Agreement, Chen became the President with 50% of the shares, Huang and Lin became Vice Presidents with a combined 50% of the shares. (Id. at 2-4.) Chen, as President, performed three tasks that were not shared with the Vice Presidents: (1) "represent[ing] and warrant[ing] that all debts and liabilities have been paid in full prior to the execution of this agreement"; (2) making "daily decisions that involve $5,000.00 or less in all Procraft locations";

---

[1] Procraft Cabinetry filed a Motion to Strike the Third Party Complaint under Federal Rule of Civil Procedure 12(f) because Huang and Lin verified it but did not read it. (Doc. No. 315.) The Court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) motions are "viewed with disfavor by the federal courts are infrequently granted." C. Wright & A. Miller, 5C Fed. Prac. & Proc. Civ. § 1380 (3d ed.). Procraft Cabinetry offers no authority that failure to read a pleading somehow makes the pleading "redundant, immaterial, impertinent, or scandalous." In fact, whether a pleading is verified has no bearing on summary judgment. Fed. R. Civ. P. 11(a); see also 5A Fed. Prac. & Proc. Civ. § 1339. Therefore, the Motion is denied.

and (3) "ensur[ing] all taxes are paid and that there are no outstanding debts." (Id. at 3.) All three partners shared the remaining ten tasks: (1) "voting on decisions that involve more than $5,000.00, where the majority vote will rule"; (2) "overseeing manufacturing of cabinetry"; (3) "ordering and distributing cabinetry supplies to all Procraft Cabinetry locations"; (4) "communicating with cabinetry suppliers"; (5) "determining the quality of cabinets/cabinetry from other suppliers"; (6) "set pricing of cabinetry"; (7) "implement marketing for Procraft Cabinetry, Inc. and all Procraft Cabinetry locations"; (8) "approve of local advertisements for all Procraft Cabinetry locations"; (9) "operational decisions for other Procraft Cabinetry locations"; and (10) "determining commission rates for any business referrals form one Procraft Cabinetry location to another." (Doc. Id. at 3-4.) Chen, Huang, and Lin all signed the Shareholders' Agreement and their signatures were each notarized. (Id. at 9.) It is undisputed that the Shareholders' Agreement is a "true and correct copy of the Shareholders' Agreement of Procraft Cabinetry Inc. Company." (Doc. No. 325 at 5.)

Although each signed the Shareholders' Agreement, none of the three Partners asked for it to be translated into their natural language, which is Mandarin, nor did they personally read the Agreement. (Id. at 15-16.) Instead, the attorney who drafted the Agreement, Michael Maksimovich, explained the provisions to Lin and Huang in English. (Doc. No. 284-1 at 34-39.) No one translated the Shareholders' Agreement to Chen prior to her signing the document.[2] (Doc. No. 292-1 at 2.)

Eventually, the shareholders' relationship broke down. On October 19, 2017, Procraft Cabinetry, at Chen's direction, filed the original Complaint, alleging essentially that Huang and

---

[2] Because none of the Shareholders actually read the Shareholders' Agreement, Chen argues that the Agreement is not an accurate representation of the parties' intent. (Doc. No. 297 at 15-19.) Although the Court will analyze those arguments below, given the Court's conclusion that the Agreement is unambiguous, it is unnecessary to discuss the remaining forty pages of nonmaterial facts in Procraft Cabinetry's filings. (Doc. No. 325.) In compliance with Federal Rule of Civil Procedure 56(f)(2), the Court laid out all of the material facts in its prior Memorandum Opinion (Doc. No. 270), and Procraft Cabinetry concedes that the remaining facts are only material if the Court finds the Shareholders' Agreement ambiguous (which it does not). (Doc. No. 297 at 7.)

Lin created the other entity Defendants, conspired with them to infringe on Procraft Cabinetry's trademarks, and are using the scheme to compete with Procraft Cabinetry and ultimately cut Chen out. (Doc. No. 1.) The original Complaint alleged that Huang and Lin "were to become owners of ProCraft through their purchase of ProCraft stock." (Doc. No. 8 at 86.) The original Complaint sought relief that Huang and Lin be made to sell their shares of Procraft Cabinetry. (Id. at 89.) The same allegations were repeated in the Amended Complaint (Doc. No. 77 at 91-96), and the Second Amended Complaint, which is the operative Complaint (the "Complaint") (Doc. No. 235 at 103-09). However, the Complaint only demanded that Huang and Lin sell their shares of Procraft Cabinetry "to the extent [the Shareholders' Agreement] is valid, binding, and enforceable." (Id. at 109.)

On January 12, 2018, the Court issued a Temporary Injunction to maintain the status quo. (Doc. No. 87.) That injunction was in response to allegations that Huang and Lin were going to vote as shareholders of ProCraft to voluntarily dismiss this lawsuit. (Id. at 1.) The injunction enjoined Huang and Lin "from voting as shareholders or directors of ProCraft; participating in the operations of ProCraft; or taking any other action on behalf of ProCraft, directly or as a derivative action." (Id.) The Court clarified that the injunction does not prevent Huang or Lin from filing any derivative actions in the instant case as counterclaims or third-party claims. (Doc. No. 248.)

In March 2018, Procraft Cabinetry filed its Motion to Amend the First Amended Complaint (Doc. No. 200). Two days later it filed another Motion for a Temporary Restraining Order, this time against Procraft Cabinetry Florida, LLC, for trademark infringement. (Doc. No. 205.) After reviewing the allegations in the almost-200 page Complaint, the Court ordered supplemental briefing on whether Chen had authority to unilaterally direct Procraft Cabinetry to file this action, finding it may be dispositive on the Motion for a Temporary Restraining Order. (Doc. No. 232 at

4

1.) Procraft Cabinetry responded, in part, that the Shareholders' Agreement gave Chen authority to direct it to file the lawsuit. (Doc. No. 237 at 4.)

On April 17, 2018, Huang and Lin filed the Third Party Complaint, which contained verified allegations that Chen improperly unilaterally directed Procraft Cabinetry to file this action. (Doc. No. 255.) Because this is a dispositive issue under Tennessee law, the Court stayed all the remaining discovery and ordered supplemental briefing on the issue. (Doc. No. 270-71.) In its Memorandum Opinion, the Court laid out all of the material facts to the issue, explained the law on corporate authority, and explained that, under the facts currently before the Court, Chen did not have authority to unilaterally direct Procraft Cabinetry to file the lawsuit. (Doc. No. 270.) It allowed further discovery on the narrow issue of corporate authority and allowed for supplemental briefing. (Doc. No. 271.) The parties have filed their supplemental briefs (Doc. No. 297, 330, 336, 358), and the issue is ripe for decision.

II.     Standard of Review

The Court may grant summary judgment on grounds not raised by a party after "giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(2). The Court must view the "inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). Because the Court satisfied the initial burden of "identifying portions of the record that demonstrate the absence of a genuine dispute over material facts," Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003), Procraft Cabinetry and Chen have the burden of showing that a rational trier of fact could find in their favor or "that there is a 'genuine issue for trial.'" Matsushita, 475 U.S. at 587. If the evidence offered by Procraft Cabinetry and Chen is "merely colorable," or "not significantly probative," or not enough

5

to lead a fair-minded jury to find in its favor, the Court should grant summary judgment to Huang and Lin. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citing Anderson, 477 U.S. at 247-49).

III. Analysis

All parties begin the analysis portion of their briefs discussing standing. (Doc. No. 297 at 6; Doc. No. 330 at 10.) The Court's Rule 56(f) Memorandum Opinion did not challenge Procraft Cabinetry's standing to bring this lawsuit. (Doc. No. 270.) Standing is a doctrine that "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 473 (1982)). A plaintiff proves it has standing to bring a lawsuit if it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). It is fairly obvious that Procraft Cabinetry has standing to bring the Complaint: it alleges that it suffered injuries in fact, including trademark infringement, that are fairly traceable to the challenged conduct of the defendants and can be redressed by a favorable judicial decision. (Doc. No. 235.) In fact, the Court held in its previous Memorandum Opinion that Procraft Cabinetry could have brought this direct action had its shareholders properly authorized it. (Doc. No. 270 at 3.) It reiterates that holding here.

Rather, the question the Court raised is whether Chen had authority to unilaterally direct Procraft Cabinetry to bring this action. (Doc. No. 270.) Under Tennessee law, each officer of a corporation "has the authority and shall perform the duties set forth in the bylaws or, to the extent

consistent with the bylaws, the duties prescribed by the board of directors or by direction of an officer authorized by the board of directors to prescribe the duties of other officers." Tenn. Code Ann. § 48-18-402. In the Court's Rule 56(f) Memorandum Opinion, the Court found that Chen did not have the authority to direct the corporation to file this lawsuit (Doc. No. 270 at 4), and therefore suggested that this action should be dismissed.

A. Whether the Shareholders' Agreement is Valid and Binding

Attempting to pinpoint and address Procraft Cabinetry's and Chen's arguments in support of Chen's authority to direct Procraft Cabinetry to bring this action is akin to trying to hit a moving target. As previously explained, Procraft Cabinetry had argued that Huang and Lin violated the valid Shareholders' Agreement and attempted to enforce the contract. It obtained an injunction preventing Huang and Lin from acting under that contract to dismiss the First Amended Complaint. It then argued that Chen had the ability to direct Procraft Cabinetry to file this lawsuit.

Now, after the Rule 56(f) Order, everything has changed. In Procraft Cabinetry's principal brief, it argues that the Shareholders' Agreement is ambiguous and appears to suggest that there are two Procraft Cabinetry corporations because the parties intended to create a company separate from Chen's Procraft Cabinetry. (Doc. No. 297 at 9.) In response to Huang and Lin's argument that there cannot be two Procraft Cabinetry companies under Tennessee law (Doc. No. 330 at 20), Procraft Cabinetry again shifts course in its reply brief, arguing that (1) the Shareholders' Agreement is ambiguous; (2) the parties intended to create a company other than Procraft Cabinetry, Inc.; (3) the Court should read the Shareholders' Agreement as creating a separate company and essentially form that company for the three shareholders, perhaps under the Procraft Wholesale brand name; (4) the Court should hold that Chen is the sole shareholder of Procraft Cabinetry, Inc., as she was when it was formed in 2010; and (5) Chen as the sole shareholder, had

7

authority to direct the corporation to file this lawsuit. (Doc. No. 336.) Chen joins these arguments. (Doc. No. 358.)

The first two premises of both of Procraft Cabinetry's and Chen's arguments are flawed. First, the Shareholders' Agreement is not ambiguous.[3] Under Tennessee law, the Court's "initial task in construing a contract is to determine whether the language is ambiguous." Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc., 78 S.W.3d 885, 890 (Tenn. 2002). When construing the contract, the Court's main focus is to effectuate the parties' intent at the time they entered the contract, which is "presumed to be that specifically expressed in the body of the contract." Id. A "strained construction [of the contract] will not be placed on the language used to find ambiguity where none exists." Id. at 981 (quoting Empress Health & Beauty Spa, Inc. v. Turner, 503 S.W.2d 188, 190-91 (Tenn. 1973)).

"It is not the role of this Court 'to make a different contract than that executed by the parties.'" Hanks v. First Am. Title Ins. Co., No. M2017-00560-COA-R3-CV, 2018 WL 2230674, at *5 (Tenn. Ct. App. May 16, 2018) (quoting Quebecor Printing Corp. v. L&B Mfg. Co., 209 S.W.3d 565, 578-81 (Tenn. Ct. App. 2006)). Although a "word or expression in the contract may, standing alone, be capable of two meanings," the "language in a contract must be construed in the context of that instrument in the whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." Adkins v. Bluegrass Estates, 360 S.W.3d 404, 412-13 (Tenn. Ct. App. 2011) (quoting Fisher v. Revell, 343 S.W.3d 776, 780 (Tenn. Ct. App. 2009)). "Thus, in determining whether or not there is such an ambiguity as calls for interpretation, the whole

---

[3] Tellingly, Procraft Cabinetry, directed solely by Chen, did not believe the Shareholders' Agreement was ambiguous for almost the entire litigation (or prior). In fact, it appeared to believe the exact opposite, asserting multiple causes of action on the basis of Lin and Huang's alleged-breaches of the Agreement. (Doc. No. 235.) It was not until the Court entered its Rule 56(f) Order that Procraft Cabinetry changed course to argue the Agreement's ambiguity.

instrument must be considered, and not an isolated part, such as a single sentence or paragraph." Id. at 412 (quoting Fisher, 343 S.W.3d at 780).

Procraft Cabinetry makes four arguments that the contract is ambiguous. First, it argues that the word "Company" in the title of the document, "Shareholders' Agreement of Procraft Cabinetry, Inc. Company," unambiguously shows that it governs a company other than Procraft Cabinetry, Inc. (Doc. No. 297 at 9.) Second, it argues that the clause in the Agreement that states that the company is "to be registered" in the future shows that the company is not yet in existence. (Id. at 9-10.) Third, it argues that the Agreement states that it will be a "cabinet manufacturing company" when it is actually only involved in sales. (Id. at 10.) Fourth, the Agreement only allocates 1,000 shares when the documents on file with the Tennessee Secretary of State say that it is authorized to allocate 10,000 shares. (Id.)

The first argument is not persuasive. The word "Company" does not change the company's name, and Tennessee law generally allows only one "Procraft Cabinetry, Inc." registered with the State. Tenn. Code Ann. § 48-54-101(b). Further, the Shareholders' Agreement itself defines the "Company" as "Procraft Cabinetry, Inc." (Doc. No. 341-1 at 2.) There is no ambiguity.

Second, that the Company is "to be registered" in Davidson County, Tennessee, is not ambiguous given its context within the entire agreement. (Doc. No. 294-2 at 3.) Procraft Cabinetry is correct that if the Court were to look solely at that sentence, it might appear that the three Shareholders were attempting to create a new company. However, the Court cannot consider a "single sentence" in determining the contract's ambiguity. Adkins, 360 S.W.3d at 412 (quoting Fisher, 343 S.W.3d at 780). Reading the Shareholders' Agreement as a whole, it is clear that the parties intended to own Procraft Cabinetry, Inc., and their relationship was to be governed by the Shareholders' Agreement. (Doc. No. 294-2.) This provision does not create ambiguity, especially

considering that Procraft Cabinetry is registered in Tennessee and was at the time the shareholders entered into their agreement.

Procraft Cabinetry's third argument is that because the first paragraph of the Agreement states that it is the "only cabinet manufacturing company with occupancy in the entire building," but Procraft Cabinetry is not a manufacturing company but instead is a retailer, that clause creates ambiguity as to whether the Shareholders' Agreement meant to be for Procraft Cabinetry. (Doc. No. 297 at 10.) However, in the exact same sentence, the Shareholders' Agreement states that Procraft Cabinetry shall be a company "for cabinetry sales." (Doc. No. 235-29 at 2.) In fact, that sentence defines the "Company Services" as "cabinetry sales." (Id.) In Section Three, the "Background & Rational and the Spirit of this Agreement," the shareholders agreed that they "recognized a growing market to provide company services for both residential and commercial needs." (Id.) The Shareholders' Agreement, therefore, unambiguously defines company services as "cabinetry sales" and a one-time reference to being a "cabinetry manufacturing company" does not make the Agreement ambiguous. Adkins, 360 S.W.3d at 412-13. Instead, it amounts to nothing more than a typo.

As to the fourth argument, Procraft Cabinetry does not cite any authority requiring a company to allocate all the shares it is authorized to allocate. Instead, Tennessee law states that a corporation "may" issue the number of authorized shares. Tenn. Code Ann. § 46-16-103(a). The fact that Procraft Cabinetry did not issue the number of shares for which it was authorized does not make the Shareholders' Agreement ambiguous.

Even if the Court were to find the Shareholders' Agreement to be ambiguous, Procraft Cabinetry foreclosed its second premise that the three shareholders intended to create a company other than Procraft Cabinetry, Inc., by entering in to the Agreement. Procraft Cabinetry alleged in

the Complaint that "Pursuant to the Shareholders' Agreement, Peter Huang and Jackey Lin were to become owners of ProCraft through their purchase of ProCraft stock." (Doc. No. 235 at 104.) Huang and Lin admitted that paragraph. (Doc. No. 256 at 135-36.) "[A]dmissions in the pleadings are generally binding on the parties and the Court." Shearon v. Womack, No. 3:15-cv-1061, 2017 WL 6381432, at *2 (M.D. Tenn. Dec. 14, 2017) (quoting Barnes v. Owens-Corning Fiberglas Corp., 201 F.3d 815, 829 (6th Cir. 2000)). Procraft Cabinetry cannot allege that Huang and Lin were to become owners of it in the Complaint, obtain a judicial admission, and now argue that they actually were to become members of a different corporation. Id. That fact has been withdrawn as an issue in the case, "dispensing wholly the need for proof of the fact." Id. (quoting Barnes, 201 F.3d at 815). Therefore, if the Court were to attempt to decipher the parties' intent of signing the agreement in a manner outside the four corners of the contract, the fact that Huang and Lin intended to become owners of Procraft Cabinetry by purchasing its stock has been conclusively proven. Accordingly, the Court finds that the Shareholder's' Agreement is valid and binding.[4]

B. Whether Chen Had the Authority to Direct the Corporation to File the Lawsuit

The Court previously interpreted the Shareholders' Agreement and held that it did not permit Chen to direct the corporation to file this lawsuit. (Doc. No. 270.) Specifically, the Court held that Tennessee law allows every corporation to defend its interests, including to "sue and be sued," "unless its charter provides otherwise." (Id. at 3 (citing Tenn. Code Ann. § 48-13-101)). Therefore, the Court must look to a corporation's Charter—here, Procraft Cabinetry's Shareholders' Agreement—to determine how and when the corporation may file suit.

---

[4] Because this is an alternative holding to the Shareholders' Agreement being unambiguous, it is unnecessary for the Court to decide whether Chen, who directed the corporation to file the Complaint, would individually be bound by the corporation's judicial admission.

Procraft Cabinetry argues that it is authorized by Tennessee law to file a direct action against its shareholders. The Court agrees. This is similar to the standing issue, in which Procraft Cabinetry is confusing whether it can do something generally with whether it had authority to file this particular lawsuit. The Court held as such in its Rule 56(f) Order, holding that Procraft Cabinetry "would have been able to bring this lawsuit" had Chen obtained authority to direct the corporation to file it under the Shareholders' Agreement. (Id. at 3-4 (citing Tenn. Code Ann. § 48-13-102(1))). For example, if Chen joined with another shareholder to direct the corporation to sue the other, the corporation would have had proper authority to file that lawsuit. Again, this is not a question of whether Procraft Cabinetry can do something with proper authorization, but rather the consequences of one shareholder usurping the power given to her under the Agreement.

Procraft Cabinetry relies heavily on an unpublished state trial court decision that allows one member of a limited liability company to direct the company to file suit against the other member. Raley v. Brinkman, No. 16-0196-BC, 2016 WL 3632383 (Tenn. Chan. Ct. June 2, 2016), available at (Doc. No. 299-3). In Raley, the Davidson County Chancery Court denied a motion to dismiss because a limited liability company has the ability to bring direct suits on behalf of itself. (Doc. No. 299-3 at 10.) This case involves neither limited liability companies, nor the ability to bring direct actions generally, and is on summary judgment rather than a motion to dismiss. The analysis in Raley does not address the issue in the Court's Rule 56(f) Order and is not persuasive.

Procraft Cabinetry also argues that Keller v. Estate of McRedmond, 495 S.W.3d 852 (Tenn. 2016) gives it the right to bring a direct action against its shareholders. (Doc. No. 297 at 27.) The Court relied on Keller in its Rule 56(f) Memorandum Opinion because a Tennessee Supreme Court case is binding on the Court interpreting Tennessee law. State Auto Property and Cas. Ins. Co. v. Hargis, 785 F.3d 189, 195 (6th Cir. 2015) (citing Berrington v. Wal-Mart Stores, Inc., 696 F.3d

604, 608 (6th Cir. 2011)). However, Procraft Cabinetry discusses a passage from Keller that addressed whether an individual shareholder had standing to bring a direct action against the corporation. (Doc. No. 297 (citing Keller, 495 S.W.3d at 881-82)). The court held that the individuals did not have standing to raise a claim in a direct action that should be brought by the corporation or the individual derivatively. Keller, 495 S.W.3d at 882. That, again, is not the situation here because Procraft Cabinetry has standing to bring this lawsuit.

Procraft Cabinetry alternatively argues that the Shareholders' Agreement gives Chen the ability to file this action because she has the sole responsibility of "ensuring all taxes are paid and that there are no outstanding debts." (Doc. No. 297 at 28.) She argues that many of the entity defendants, Huang, and Lin owe money to Procraft Cabinetry, which puts the task of collecting that money to her.

In interpreting an ambiguous provision in a contract, Tennessee applies "established rules of construction to aid in determining the contracting parties' intent." Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc., 395 S.W.3d 653, 659 (Tenn. 2013) (citing Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002)). "It is the universal rule that a contract must be viewed beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another." So. Trust Ins. Co. v. Phillips, 474 S.W.3d 660, 670 (Tenn. Ct. App. 2015) (quoting Maggart v. Almany Realtors, Inc., 259 S.W.3d 700, 704 (Tenn. 2008)). Here, that the "no outstanding debts" clause is in the same task as "ensuring all taxes are paid" clause "illuminates" the reading of the "no outstanding debts" clause. Id. There is no indication in the Agreement that Chen would have any duty to ensure third parties' taxes were paid, such as Huang's, Lin's, or Procraft Florida, LLC's. Instead, Chen, as President of Procraft Cabinetry, was

to ensure that Procraft Cabinetry's taxes were paid. Likewise, it was Chen's responsibility to ensure Procraft Cabinetry's debts were paid, rather than any debts of third parties. .

Even if that provision put Chen in charge of all of Procraft Cabinetry's finances, it still would not give her authority to direct the corporation to file a lawsuit to collect the debts. (Id.) Chen would instead have the authority to "ensure" that there are no debts, and if she needed to collect a debt, she would have to bring it to the attention of the Shareholders. (Id.) Bringing a lawsuit is instead a decision that involves more than $5,000.00, over which a majority vote will rule. (Id.)

Finally, Procraft Cabinetry reasserts an argument that the Court previously rejected (Doc. No. 237, rejected in Doc. No. 270) that Chen had to direct the corporation to file the lawsuit to protect its trademarks and other assets. As the Court previously explained, if Chen thought it was necessary for the corporation to file a lawsuit but could not obtain a majority vote of the shareholders, a derivative lawsuit on behalf of the corporation would have been appropriate. (Doc. No. 270 at 5.) Instead, she determined to charge ahead, acting unilaterally as if she was the only shareholder of the corporation. Tennessee law does not permit this. Accordingly, the Court grants summary judgment on Count Five of Huang and Lin's Third Party Complaint against Chen.

If the Court finds that a corporation acted without the proper authorization, Tennessee Code Annotated § 48-13-104(c) permits the Court to "enjoin or set aside the [unauthorized] act, if equitable and if all affected persons are parties to the proceeding." The Court sets aside the unauthorized act, which is the filing of the Complaint. Accordingly, the Complaint is dismissed.

C. Temporary Injunction

The Court granted a temporary injunction preventing Huang and Lin from voting as shareholders of Procraft Cabinetry to end this lawsuit. (Doc. No. 87.) For the reasons above, that

injunction was improvidently granted. Accordingly, the Court dissolves the Injunction, and Huang and Lin may move for costs and damages sustained from being enjoined up to the amount of security posted by Procraft Cabinetry. Fed. R. Civ. P. 65(c).

D. Counterclaims and Third Party Complaint

Many of the entity defendants brought counterclaims against Procraft Cabinetry and a Third Party Complaint against Chen. (Doc. No. 253.) Those are also dismissed. For the counterclaims, the entity defendants invoke the Court's jurisdiction because it has supplemental jurisdiction under 28 U.S.C. § 1367(a). (Id. at 5.) In response to the counterclaims, Procraft Cabinetry filed counter-counterclaims, also invoking § 1367(a) for the Court's jurisdiction.[5] (Doc. No. 278 at 23.)

The Court may decline to exercise supplemental jurisdiction over the state law claims if it dismisses "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" Gamel v. City of Cincinnati, 625 F.3d 949, 951 (6th Cir. 2010) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ." Id. at 952 (quoting Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996)). After weighing the relevant factors, the Court does not see any reason to depart from general rule. Accordingly, the Court declines to retain supplemental jurisdiction over the counterclaims.

---

[5] To the extent that Procraft Cabinetry invokes federal question jurisdiction, 28 U.S.C. § 1331, for its declaratory judgment claims (Doc. No. 278 at 23), the Declaratory Judgment Act does not confer federal question jurisdiction to federal courts. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 879 (1950).

Third-party claims are authorized by Federal Rule of Civil Procedure 14, which allows a defendant to "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). When the claims against the defendant are dismissed, no party can be liable to that defendant so there is no ground for a third-party claim. Indeed, "it is rare that a court renders judgment in favor of the defendant or dismisses the underlying action but nonetheless chooses to address a third-party claim." <u>Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.</u>, 512 F.3d 800, 805 (6th Cir. 2008). The Court exercises its discretion to also dismiss the third-party claims against Chen. (Doc. No. 253.) The same applies to Huang and Lin's remaining third-party claims against Chen and Procraft Nashville, LLC. (Doc. No. 255.)

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE