IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| PROCRAFT CABINETRY, INC., ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | CIVIL ACTION NO. 3:17-cv-01392 |
| v. ) | |
| ) | JURY DEMAND |
| SWEET HOME KITCHEN AND BATH, ) | |
| INC. *et al.*, ) | CHIEF JUDGE CRENSHAW |
| ) | |
| Defendants/Counter-Plaintiffs/ ) | MAGISTRATE JUDGE FRENSLEY |
| Third-Party Plaintiffs, ) | |
| ) | |
| AND ) | |
| ) | |
| THE CABINET AND GRANITE ) | |
| DEPOT, LLC *et al.*, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| v. ) | |
| ) | |
| HUI CHEN *et al.*, ) | |
| ) | |
| Third-Party Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO STAY PENDING APPEAL**

In support its Motion to Stay Pending Appeal, Plaintiff ProCraft Cabinetry, Inc. ("Plaintiff") states as follows:

### I. INTRODUCTION

On September 24, 2018, the Court issued its Order granting summary judgment on Count Five of the Third Party Complaint and otherwise dismissed the entire case. (Dkts. 362 and 363).

1

On October 1, 2018, Plaintiff filed its Notice of Appeal from this Court's Order. The same day, Defendants Peter Huang and Jackie Lin sent a written notice to Sophia Chen, who Plaintiff respectfully asserts is the only true owner of Plaintiff, for a shareholders vote to (1) remove and replace Chen with Lin; (2) fire counsel for Plaintiff; (3) discuss cooperation of all shareholders in not interfering with duly elected officers, which will no longer include Chen; and (4) demand cooperation of Chen with Lin after he usurps her position as President. A true and correct copy of the notice is attached as <u>Exhibit 1</u> to the Motion. The notice scheduled the vote for <u>October 16, 2018</u>. Such a vote has the possibility of irreparably and irreversibly harming Plaintiff.

Pursuant to Fed. R. App. P. 8(a), Plaintiff moves for a Stay of the Order during the pendency of the appeal, thereby continuing the injunction barring such a vote from occurring for the duration of the litigation through appeal(s). Such stay would keep in place the status quo through the exhaustion of appeal(s).[1] Accordingly, Plaintiff respectfully requests entry of a stay pending its appeal.

## II. LAW AND ARGUMENT[2]

Plaintiff seeks a stay to maintain the status quo and ensure that its ability to enforce its legal rights is not irreversibly lost. "The determination of whether to grant a stay pending appeal is governed by the same factors as a motion for preliminary injunction: '(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the

---

[1] *C.f. McKinney v. Kellog Co.*, 2014 WL 4954351, *8 (W.D. Tenn. Oct. 2, 2014) (injunctive relief pending appeal is appropriate where necessary to return parties to and maintain the status quo).
[2] Throughout this Memorandum, arguments are made under the assumption that Huang and Lin are shareholders and officers of Plaintiff, which they are not. Plaintiff maintains that Huang and Lin have never been and were never intended to be shareholders or officers of Plaintiff but makes these arguments, as it is constrained to do by the Order (Dkt. 363), in the alternative for purposes of its appeal and obtaining a stay during its pendency.

2

court grants the stay; and (4) the public interest in granting the stay.'" *Barry v. Lyon*, 2015 WL 12838828, *1 (E.D. Mich. June 5, 2015) (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 152 (6th Cir. 1991)).

Because "the court has already once decided against the movant's success on the merits, the balancing calculus is different" among the four factors. *River Fields v. Peters*, 2009 WL 2406250, at *2 (W.D. Kent. Aug. 3, 2009). At this stage, "the first two factors are the most critical." *Ohio State Conference of N.A.A.C.P. v. Husted*, 769 F.3d 385, 387 (6th Cir. 2014). "To justify the granting of a stay . . . a movant need not always establish a high probability of success on the merits." *Griepentrog*, 945 F.2d at 153. Instead, "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay." *Id.* "Simply stated, more of one excuses less of the other." *Id.* Here, the risk is irreparable and irreversible harm is great.

**A. PLAINTIFF IS CERTAIN TO SUFFER IMMEDIATE, IRREPARABLE, IRREVERIBLE, AND SUBSTANTIAL HARM IN THE ABSENCE OF A STAY.**

Since this Court's ruling, Huang and Lin have again sent a letter to Chen in which they demand a shareholders meeting on October 16, 2018, for the purpose of (1) removing Chen and replacing her with Lin; (2) firing counsel for Plaintiff; and (3) ceasing all interference with Huang and Lin once they elect themselves as officers; and (4) demanding Chen's cooperation with Lin once he is elected President. (Exhibit 1). As Huang and Lin are named defendant-appellees, an implied result of the meeting is dismissal of Plaintiff's appeal,[3] leaving it no way seek redress, which is the epitome of irreparable harm.

---

[3] The Special Meeting Notice (Exhibit 1) was sent the same day Plaintiff's Notice of Appeal was filed. It is possible, if not likely, that Huang and Lin were not yet aware of the appeal at the time of the Special Meeting Notice was sent, and therefore would not have known to include its dismissal as a topic. However, the other topics in the letter – specifically "cooperation of all

"In evaluating the harm that will occur depending upon whether or not the stay is granted, [the Sixth Circuit] generally look[s] to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Griepentrog*, 154. "In addition, the harm alleged must be both certain and immediate." *Id*. As this Court itself recognized, the TRO was issued earlier in this case to maintain the status quo. (Dkt. 87 at 1 ¶ 1). Doing so continues to be of grave importance to "the ongoing operations of Plaintiff and preservation of its rights" during its appeal. *Id*. Respectfully, this Court has a "duty to see that the status quo is maintained while the appeal is pending."[4] *U.S. v. State of Mich*., 508 F.Supp. 480, 485 (W.D. Mich. Nov. 13, 1980).

The TRO previously enjoined precisely the same activity Huang and Lin have again undertaken since its dissolution by this Court. Once again, Huang and Lin have noticed a special meeting (Exhibit 1), where they intend to vote on removing Chen and instilling themselves in executive positions above Chen who is the sole officer and shareholder of Plaintiff, effectively stealing a company to which they have never had any ownership rights in the first place.

Even assuming Huang and Lin have some ownership interest in Plaintiff, which Plaintiff continues to assert they do not, they will take further action to the substantial, immediate, and permanent detriment of Plaintiff. Huang and Lin intend to fire Plaintiff's counsel, require Chen not to interfere with Huang and Lin after they elect themselves to be officers, and demand Chen's cooperation with Lin once he is elected President. (Exhibit 1). The implication is that Plaintiff's

---

shareholders . . . not to interfere with duly elected officers," "demanding cooperation of current management with the President," and "such other business as may properly come before the Special Meeting" – indicate Huang and Lin will vote to dismiss the appeal, just as they would have voted to dismiss this litigation but for the previously issued TRO.
[4] This is an exception to the general rule that Circuit Courts assume all matters involved on appeal. *Id*.

4

appeal, which names Huang and Lin as defendant-appellees, will be dismissed. *See id*. Such a dismissal would be manifestly opposite and contrary to a litigant's right to appeal an adverse decision. Huang and Lin also intend to file various shareholder derivative actions to ensure the same actions identified above, resulting in even more disruption of Plaintiff's business. Moreover, these actions by Huang and Lin would be in direct contravention with the non-compete clause of the Shareholders' Agreement, likely to cause harm for which monetary damages are difficult to calculate. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007). That the aforementioned meeting has been noticed leaves no doubt as to the certainty or immediacy of harm to Plaintiff.

In the absence of a stay, Plaintiff will lose the rights to its trademarks, and its ability to seek redress for the unlawful actions of Huang and Lin. The consequence will be waste of Plaintiff's assets for the benefit of other competitive companies in which Huang and Lin have an interest, usurping Plaintiff's goodwill and reputation. If taken down this path, Huang and Lin will drive Plaintiff out of business and by not enforcing rights or mandating payments by companies that they own, have broadcasted their intent to do so. In the corporate setting, no other fact pattern could be more deserving of a stay. *See Husted*, 769 F.3d at 387 (indicating that harm, if severe and irreparable, is the most important consideration in deciding a motion to stay).

B. **RESPECTFULLY, PLAINTIFF HAS A STRONG LIKELIHOOD OF PREVAILING ON THE MERITS OF ITS APPEAL.**

   *1. Plaintiff Disagrees with the Court's Determination Regarding Unambiguity and Decision Not to Consider the Parties' Sworn Testimony.*

Tennessee courts have "recognized certain circumstances that permit contracting parties to vary or to circumvent the plain terms of their written contract. Thus, the parol evidence rule does not prevent using extraneous evidence to prove that a written contract does not correctly embody

5

the parties' agreement." *GRW Enter., Inc. v. Davis*, 797 S.W.2d 606, 611 (Tenn. Ct. App. 1990); *see also Smith v. Hi-Speed, Inc.*, 535 S.W.3d 458, 470 (Tenn. Ct. App. 2016); *Williams v. Havey*, No. 3:16-cv-64, 2016 WL 4543482, at *3 (M.D. Tenn. Aug. 29, 2016). In fact, "it would border on absurd" to hold that the parties' sworn testimony "would not justify a court of conscience in looking behind the letter of the contract to determine whether it expresses the complete agreement of the parties." *Kilday v. Baskette*, 259 S.W.2d 162, 165 (Tenn. Ct. App. 1953). There are at least two reasons the Court must consider extraneous evidence in this case: latent ambiguity and mutual mistake. Yet, respectfully, Plaintiff asserts that the arguments have not been sufficiently addressed.

<u>a. The Shareholders' Agreement is latently ambiguous.</u>

In determining whether the Shareholders' Agreement is ambiguous, the Court did not differentiate between the two types of ambiguity that may exist in written instruments – latent and patent. *Neuro-Spine Solutions, P.C. v. Freund*, 2010 WL 11519983, *8 (E.D. Tenn. Sept. 21, 2010). Instead, the Court has spoken only to an absence of patent ambiguity[5], defined as that which is "produced by the uncertainty, contradictoriness or deficiency of the language of an instrument, so that no discovery of facts or proof of declarations can restore the doubtful sense without adding ideas which the words to not sustain." *Ward v. Berry & Associates, Inc.*, 614 S.W.2d 372, 374 (Tenn. Ct. App. 1981).

In contrast, a "latent ambiguity occurs when the language is open to more than one interpretation <u>when applied to the factual situation at issue</u>." *Perdue v. Estate of Jackson*, 2013 WL 2644670, *6 (Tenn. Ct. App. June 12, 2013) (internal quotations omitted) (emphasis added); *see also Ward,* 614 S.W.2d at 374 ("A latent ambiguity is one where the equivocality of expression

---

[5] Plaintiff maintains its position that the Shareholders' Agreement is ambiguous generally and reserves the right to argue both latent and patent ambiguity on appeal. Plaintiff limits it arguments herein solely for the purpose of obtaining a stay based upon the previous holdings of this Court.

6

or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by the mere development of extraneous facts without altering or adding to the written language or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words and phrases used."). "Where latent ambiguities arise as a result of <u>confusion about what the terms of a contract reference</u>, the Tennessee courts admit extrinsic evidence to supplement the terms." *Bulison v. U.S.*, 533 F.3d 419, 430 (6th Cir. 2008) (emphasis added); *see also Plastic Surgery Associates of Kingsport Inc. v. Pastrick*, 2015 WL 2400411, *9 (Tenn. Ct. App. May 19, 2015) (admitting extraneous evidence to explain how net profits should be calculated where no definition was provided in the writing).

Even if, as the Court found, the words in the Shareholders' Agreement appear unambiguous when taken without regard for the surrounding facts giving rise to this lawsuit, the circumstances of its formation and events thereafter strongly indicate otherwise and should have been considered but were not. *See Adkins v. Bluegrass Estates*, 360 S.W.3d 404, 412-13 (Tenn. Ct. App. 2009) (cited by the Court in the Order at p. 8). The parties and the Court have understood the Shareholders' Agreement to apply very differently to two separate and distinct entities, which alone indicates existence of a latent ambiguity. While the Court has determined the Shareholders' Agreement applies to Plaintiff rather than a new company (Dkt. 362), Peter Huang, Jackey Lin, and Sophia Chen (all of the parties to the Shareholders' Agreement) gave sworn testimony that they believed the Shareholders' Agreement was for a new, yet-to-be established company and did <u>not</u> pertain to an investment in or purchase of shares in Plaintiff. (P. Huang Depo. Trans., Dkt. 284-1, at 68:7-71:24; 94:3-12); (J. Lin Depo. Trans., Dkt. 285-1, at 15:25-20:17; 80:3-6); (Chen Decl., Dkt. 292-1, at ¶ 12). Such an admission is precisely the objective means by which a latent

7

ambiguity must be revealed. *Styker Corporation v. National Union Fire Insurance Company of Pittsburg, PA*, 842 F.3d 422, 428 (6th Cir. 2016).[6]

The existence of latent ambiguity is bolstered by the parties' course of conduct, both before and after the Agreement was executed. *See GuestHouse Int'l, LLC v. Shoney's N. Am. Corp.*, 330 S.W.3d 166, 204 (Tenn. Ct. App. 2010). Before the Agreement was executed, on August 2, 2014, Chen sent an email to Huang and Lin with two attachments: (1) a "Buy-Sell Agreement of ProCraft Wholesale, LLC," to which the Shareholders' Agreement appears to be a counter made by Huang and Lin, containing the same share distributions as the Shareholders' Agreement (Dkt. 294-4); and (2) an "Operating Agreement for ProCraft Wholesale, LLC," again reflecting the same share distributions as the Shareholders' Agreement (Dkt. 294-3, filed under seal at Dkt. 296). Additionally, on August 8, 2014, Chen sent Huang copies of the ProCraft® marks, which Huang used to have a draft logo created for the new company (P. Huang Depo. (Dkt. 284-1) at 98:19-99:12 and Exhibit 91; Dkt. 294-6). The draft mark added the phrase "Wholesale Kitchen & Bath." (Dkt. 294-6). The parties' course of conduct before the agreement was executed indicates a new company under the name ProCraft Wholesale, LLC, would be formed.

After execution of the agreement, Chen continued operations of Plaintiff as she had beforehand. (Dkt. 255 ¶ 13). As she had previously, Chen continued to make expenditures exceeding $5,000.00 without calling for a vote, overseeing manufacturing of cabinetry, and communicating with cabinetry suppliers. Huang and Lin never voiced an objection to this activity until legal proceedings pertaining to the present dispute commenced. They failed to do so because they knew they were not owners of Plaintiff, never intended to be owners of Plaintiff (P. Huang

---

[6] This is particularly true here, where the Court has acknowledged, none of the parties the Shareholders' Agreement could or did read it.

8

Depo. Trans., Dkt. 284-1, at 68:7-71:24; 94:3-12); (J. Lin Depo. Trans., Dkt. 285-1, at 15:25-20:17; 80:3-6); (Chen Decl., Dkt. 292-1, at ¶ 12), and furthermore that a new company had never been formed. Even so, Plaintiff agreed to continue supplying cabinetry to Sweet Home Kitchen & Bath and other Plaintiff branded locations, invoicing those entities accordingly, the same way Plaintiff would with any other customer. (Chen Decl., Dkt. 292-1, at ¶¶ 55-61). The parties' course of conduct after execution of the Shareholders' Agreement provides no support for the position that Huang and Lin acquired, or desired to acquire, ownership of Plaintiff shares.

Likewise, the actions taken by Huang and Lin allegedly on behalf of Plaintiff are not attributable to Plaintiff. Huang unilaterally ordered the formation documents for PC Seattle, PC Houston, and PC Dallas, identifying Plaintiff as a member prior to November 2014. (V. Wang Depo., Dkt. 287, filed under seal at Dkt. 289, at 36:24-38:22; 53:16-57:22; 65:16-66:17; 99:21-23). At the time, Huang could not have had any authority to do so no matter how the Shareholders' Agreement is interpreted, because it had not yet been executed. In the same vein, Lin owns the factory where PC Florida, PC Seattle, PC Houston, and PC Dallas (collectively the "Dealer Defendants") now source their cabinetry *instead* of Plaintiff. (Dkt. 235-65 at 7; P. Lin Depo., Dkt. 187, at 74:2-21), activity that would be expressly prohibited by the Shareholders' Agreement if it were for ownership in Plaintiff (Dkt. 253-1). Of note, neither Huang nor Lin have ever received share certificates, a paycheck, distributions, a K-1, or a W-2 from Plaintiff. (Chen Decl., Dkt. 292-1, ¶ 63).

That the Shareholders' Agreement was for a new company and not Plaintiff begs the question of why the new company was never formed. The answer is simply that Huang and Lin never made their full capital contribution totaling $2,000,000. (Dkt. 253-1); (P.Huang Depo., Dkt. 284-1, at 119:4-124:20 and Exhibit 108); (J. Lin Depo., Dkt. 285-1, at 55:4-55:15 and Exhibit

9

108); (Chen Decl., Dkt. 292-1, ¶¶ 32, 36, 40, 44). Many of the payments identified by Huang and Lin made were to the Dealer Defendants without Plaintiff's knowledge (Chen Decl., Dkt. 292-1, ¶¶ 33, 37, 41, 45), as is made clear by their absence from Plaintiff's tax documents (*Id*. ¶¶ 35, 39, 43, 47). The remaining amount of $1,216,394.60 is the maximum possible capital contribution and falls far short of the total required (Dkts. 99-5, 99-11, 99-15); (J. Lin Depo., Dkt. 285-1, at 80:3-6); (Chen Decl., Dkt. 292-1, ¶¶ 28-31, 48-49). That this amount was deposited into Plaintiff's bank account pending remaining contributions does not convert Plaintiff into a new company or give rise to ownership. There was simply nowhere else for it to go because the new company had not been formed.

At the very least, latent ambiguity exists as to whether the Shareholders' Agreement refers to Plaintiff or a new and separate entity. As such, Plaintiff is likely to succeed in showing the Court erred in failing to consider extraneous evidence to determine the intent of the parties and resolve the ambiguity accordingly.

### b. The parties to the Shareholder Agreement were mutually mistaken as to its purpose.

In the alternative, there is a mutual mistake by three parties who cannot read English and yet entered into an agreement in English. "A mutual mistake is one that must be common to both parties. It must be shown that both parties intended to agree to the same thing, but the contract, through error, fails to express that mutual and identical intent. A mutual mistake is one where both parties to a bilateral transaction share the same erroneous belief, and their acts do not in fact accomplish their mutual intent." *Russell v. Sec. Ins. Inc.*, 1999 WL 74787, at *2 (Tenn. Ct. App. Feb. 18, 1999). Where mutual mistake has occurred, consideration of extraneous evidence is permissible because it is "not used to vary the written contract but rather to demonstrate that the 'written contract does not correctly embody the parties' agreement.'" *Morgan Mortgage*

*Acquisition Trust 2007-CH4 v. Birchfield*, No. 2:16-cv-19-TAV-MCLC, 2017 WL 3444694, at *4 (quoting *GRW Enters. v. Davis*, 797 S.W.2d 606, 611 (Tenn. Ct. App. 1990)).

Huang, Lin, and Chen are all native Mandarin Chinese speakers with no fluency in English. (P. Huang Depo., Dkt. 284-1, at 12:11-19; 15:8-17:19; 33:17-34:11); (J. Lin Depo., Dkt. 285-1, at 14:3-15:9); (Chen Decl., Dkt. 292-1, ¶ 9). The Shareholders' Agreement was written in English by Huang and Lin's attorney. (J. Lin Depo., Dkt. 285-1, at 23:24-25:14); (P. Huang Depo., Dkt. 284-1, at 15:8-17:23). The terms were also explained to Huang and Lin in English by the same attorney. (P. Huang Depo., Dkt. 284-1 at 12:14-19; 36:3-12); (J. Lin Depo., Dkt. 285-1, at 15:4-9; 24:11-25). Likewise, no one ever translated or explained the Agreement to Chen before she signed it. (Chen Decl., Dkt. 292-1, ¶ 10). Under such circumstances, the occurrence of a mutual mistake is all but guaranteed. Accordingly, extraneous evidence is admissible regardless of whether the Shareholders' Agreement is ambiguous. *McMillin v. Great S. Corp.*, 480 S.W.2d 152, 155 (Tenn. 1972) (noting that parol evidence may be used to contradict or vary the terms of a written instrument upon a showing of fraud or mutual mistake); *GRW,* 797 S.W.2d at 611 ("[T]he parol evidence rule does not prevent using extraneous evidence to prove that a written contract does not correctly embody the parties' agreement."). However, the Court did not evaluate a single piece of extraneous evidence, let alone an amount adequate to give the Shareholders' Agreement its intended meaning.

Instead, the Court sparsely addresses this issue, concluding Plaintiff is foreclosed from arguing a mutual mistake existed at the time of formation by the parties' pleadings. (Dkt. 362 at 10-11). This conclusion disregards the directly conflicting testimony of Huang and Lin, who testified under oath during their depositions that they never intended to and in fact never did acquire ownership in Plaintiff. (P. Huang Depo., Dkt. 284-1, at 68:7-71:24; 94:3-12); (J. Lin Depo.,

Dkt. 285-1, at 15:25-20:17; 80:3-6); (Chen Decl., Dkt. 292-1, ¶ 12). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of . . . summary judgment.'" *Universal Settlements Int'l, Inc. v. Nat'l Viatical, Inc.*, 568 F. App'x 398, 402 (6th Cir. 2014); *Scott v. Harris,* 550 U.S. 372, 380 (2007). Yet, the Court has adopted the admissions and denials in Huang and Lin's Answers, granting summary judgment *sua sponte* in their favor and bestowing them with undeserved and overwhelming benefit.

The possibility that the parties were mutually mistaken was quickly disposed of in error without consideration of extraneous evidence, despite its admissibility to prove the writing did not correctly capture the parties' agreement and to aid in reforming it to reflect their intent. *GRW*, 797 S.W.2d at 611. On appeal, Plaintiff is likely to succeed in showing extraneous evidence should have been admitted for this purpose.

  2. *The Court Erred in Finding Chen Was Not Authorized to Direct Plaintiff to Bring Claims Against Huang and Lin.*

    a. Chen had authority to direct Plaintiff to enforce its rights as its sole shareholder.

Plaintiff maintains that no vote was required to authorize the filing of this lawsuit for one very simple reason: Chen has always been and continues to be Plaintiff's sole shareholder and officer. The Shareholders' Agreement was intended to form a new company and does not apply to Plaintiff. *See* Section B.1., *supra*. Plaintiff has an unassailable right to bring this lawsuit directly against Huang and Lin. *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 612-13 (6th Cir. 2003). As its only shareholder and officer, Chen is the only individual capable of directing Plaintiff to enforce its legal rights.

<u>b. Even if the Shareholders' Agreement pertains to Plaintiff, which it does not, Chen was authorized and bound by law to unilaterally direct Plaintiff to file this lawsuit.</u>

Given Huang and Lin's self-serving conduct, Chen was the only remaining officer who could act in the best interests of Plaintiff. As its President, Chen is not only authorized, but bound to do so as Plaintiff's fiduciary. Under TENN. CODE ANN. § 48-1-402, all officers are required to discharge their discretionary authority "(1) In good faith; (2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (3) In a manner the director [or officer] reasonably believes to be in the best interests of the corporation." "With respect to directors [or officers] in a close corporation, 'They are required to act in the utmost good faith, and . . . they impliedly undertake to give to the enterprise the benefit of their care and best judgment and to exercise the powers conferred solely in the interest of the corporation . . . and not for their own personal interests.'" *McRedmond v. Estate of Marianelli*, 46 S.W.3d 730, 738 (Tenn. Ct. App. 2000) (quoting 18B Am.Jur. Corporations § 1689). By filing this lawsuit, Chen simply executed her duties as the President of Plaintiff and only officer acting in its best interests.

Under these circumstances, Chen was not required to make a demand for corporate action. Resorting to corporate remedies is not required where pursuit would be futile – i.e. such as where shareholders are being asked to vote to sue themselves. *Maggiore v. Bradford*, 310 F.2d 519, 522 (6th Cir. 1962). The fact that Huang and Lin are named defendants in this case is proof enough alone that a corporate remedy was unavailable:

> It is within the power of the court to decide in every instance upon the facts shown whether or not a request to bring suit would have been an idle ceremony; and in the exercise of this power the court is vested with considerable discretion. A demand upon the corporate authorities for redress of the grievance complained of may be dispensed with as a condition precedent in a stockholder's suit on behalf of the corporation, where it appears that such a demand would be useless and unavailing in that it either would be refused or if

13

> granted the litigation would necessarily be under the control of parties opposed to its success. It need not be made where the corporation is under the control of the wrongdoers or of persons who are necessary parties defendant.

*Akin v. Mackie*, 310 S.W.2d 164, 168 (1958). Huang and Lin, for obvious reasons previously stated herein, would have voted against this lawsuit, despite it being in the best interest of the corporation. Therefore, Chen was not required to make a demand to the corporation or call for a vote. *Id*.

Even if Chen had called for a vote, both Huang and Lin would have been disqualified from participating due to their conflicting interests. "[O]fficers 'are not permitted to deal with the corporation or its assets for their own private gain and cannot deal for themselves and for the corporation at one and the same time . . . .'" *May v. National Bank of Commerce*, 387 F.Supp.2d 770, 779 (W.D. Tenn. Oct. 21, 2004) (quoting *Central Bus Lines v. Hamilton Nat. Bank*, 239 S.W.2d 583, 585 (Tenn. Ct. App. 1951). Huang and Lin have engaged in barefaced self-dealing by shifting manufacturing to a company owned by Lin's family, who then sells directly to the Dealer Defendants, thereby cutting Plaintiff out of those profits. In so doing, Huang and Lin have effectively stolen $3,000,000 from Plaintiff. (*See* Dkts. 12, 13, 14, 18, 19, 20, and 78-2). To add insult to injury, those wrongfully acquired gains have been used to unfairly compete with Plaintiff using Plaintiff's own registered trademarks to sell counterfeit goods to the same customers. *Id*. A vote to bring the present lawsuit would have been a vote to terminate the business relationships from which Huang and Lin been profiting. The conflicting interest present is an example ripped straight from the pages of a law school text book.

Chen was authorized to unilaterally direct Plaintiff to file this lawsuit as the only shareholder and officer acting in its best interests. This is especially true in light of Huang and Lin's pervasive self-dealing and the obvious futility of a vote. The Court erred in not so finding.

### C. THE BALANCE OF HARMS WEIGHS IN FAVOR OF A STAY.

The Court must balance the harm Plaintiff will suffer in the absence of a stay against the harm defendants and third parties may incur. *Corp. Express Office Prods. v. Warren*, 2002 WL 1901902, at *27 (W.D. Tenn. May 24, 2002). Neither Defendants nor any third party will suffer any harm if the Court grants this motion. Staying dissolution of the TRO will not result in substantial delay even if Plaintiff's appeal is unsuccessful. The harm, if any, to Huang and Lin will be negligible and short-lived. This is especially true when viewed in light of the harm to Plaintiff in the absence of a Stay.

More importantly, assuming the Shareholders' Agreement is enforceable as to Plaintiff, "a director, or other officer, of a corporation, although not responsible for errors of judgment <u>is a fiduciary charged with the duty of caring for property of the corporation and managing its affairs honestly and in good faith</u>." *Neese v. Brown*, 405 S.W.2d 577, 581 (1964) (internal citation omitted) (emphasis added). Preventing Huang and Lin from improperly removing Chen and acting in their own self-interest to the detriment of Plaintiff cannot equitably be recognized as harmful. A stay pending appeal will only briefly prevent them from breaching fiduciary duties they voluntarily assumed upon signing the Shareholders' Agreement.

### D. THE PUBLIC INTEREST WILL BE SERVED BY A STAY.

"The public has an interest in the promotion of fair competition and the discouragement of unfair competition." *Brake Parts, Inc. v. Lewis*, 443 Fed. App'x 27, 33 (6th Cir. 2011) (internal quotations omitted). A stay will serve the public interest by "preventing consumers from being misled." *Audi v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006); *see also*, *Choice Hotels Int'l Inc. v. Apex Hospitality, LLC*, 2012 WL 2715716, at *3 (W.D. Mich. June 13, 2012) (preventing potential consumer confusion in the marketplace serves the public interest).

Further, assuming the Shareholders' Agreement pertains to Plaintiff, there is a fundamental public interest in protecting the fiduciary duties owed by an officer to a corporation. Not only that, but "[e]nforcement of contractual duties is in the public interest." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007). Specifically, "Tennessee has a strong public policy in favor of upholding contracts." *Int'l Sec. Mgmt. Grp., Inc. v. Sawyer*, 2006 WL 1638537, at *18 (M.D. Tenn. June 6, 2006).

Finally, a stay will serve the two primary purposes of trademark law: "preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Ford Motor Co. v. Heritage Mgmt. Grp., Inc.*, 911 F.Supp.2d 616, 631 (E.D. Tenn. 2012). Thus, the public interest weighs heavily in favor of a stay.

### E. BOND IS NOT REQUIRED AND SHOULD BE WAIVED.

Bond is not the only means by which to obtain a stay. *WCM Industries, Inc. v. IPS Corporation*, 2016 WL 7470107, at *5 (W.D. Tenn. Aug. 26, 2016). In fact, it is only an absolute requirement under the rules when a stay is granted as a matter of right. *Id*. In the present case, the purpose of supersedeas bond – providing security to a plaintiff that a monetary judgment will be paid if the judgment is affirmed – is absent. *Matec, Inc. v. Bechtel Jacobs Company, LLC*, 2008 WL 2713709, *1 (E.D. Tenn. July 10, 2008). Plaintiff is the plaintiff and no monetary judgments have been awarded. Further, bond in the injunctive sense may be waived where the balance of equities weights in favor of the party seeking relief. *Moltan Co. v. Eagle-Picher Indus*., 55 F.3d 1171, 1176 (6th Cir. 1997). As discussed above, the balance tips heavily in favor of Plaintiff. In addition, Plaintiff already Therefore, Plaintiff respectfully requests the Court exercise its discretion to waive bond.

**F. ALTERNATIVELY, THE COURT SHOULD IMMEDIATELY GRANT A TEMPORARY STAY UNTIL THE SIXTH CIRCUIT COURT OF APPEALS CAN CONSIDER A SIMILAR MOTION.**

Alternatively, Plaintiff requests that this Court, at a minimum, immediately grant a temporary stay so Plaintiff may promptly apply to the Court of Appeals for a stay pending appeal pursuant to Rule 8(a) of the Federal Rules of Appellate Procedure. *River Fields*, 2009 WL 2406250, at *3. As aptly stated by the *River Fields* Court, "reasonable minds can differ." *Id.*; *see also Young v. Colorado State Bd. of Law Examiners*, 625 F.2d 372, 373 (10th Cir. 1980) (appellate court granting motion to stay enforcement district court previously denied). As such, the Sixth Circuit's ability to consider whether a stay and ramifications thereof would be appropriate should be preserved. *Id.*; *see also Pastrick*, 2015 WL 2400411, at *10 (holding trial court's interpretation of contract is not entitled to a presumption of correctness on appeal and court of appeals must make its own determination regarding its meaning and legal import).

## IV. CONCLUSION

The effects of a stay will be fleeting and inconsequential to all but Plaintiff, which is certain to suffer immediate and irreparable harm. Denying the requested stay would lend support for the proposition that two minority shareholders may (1) obtain an ownership interest in a corporation using an ambiguous and ill-formed agreement lacking mutual assent; (2) engage in unlawful, unethical self-dealing in breach of the agreement and fiduciary duties; (3) usurp the customers of the victim-corporation for their own benefit; and (4) use the courts to effectively remove the only rightful owner acting in good faith for the corporation. Such a result is not comprehensible under any rule of law or equity. A stay should therefore be entered pending Plaintiff's appeal.

Respectfully submitted,

/s/ Samuel F. Miller
Samuel F. Miller (BPR No. 22936)
Nicholas R. Valenti (BPR No. 35420)
MILLER LEGAL PARTNERS PLLC
Fifth Third Center – Suite 2000
424 Church Street
Nashville, TN 37219
Telephone/Fax: (615) 988.9590
Email: Smiller@millerlegalpartners.com
       Nvalenti@millerlegalpartners.com

W. Edward Ramage (BPR No. 16261)
BAKER DONELSON BEARMAN CALDWELL
& BERKOWITZ, PC
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, Tennessee 37201
Telephone: (615) 726-5753
Facsimile: (615) 744-5753
Email: eramage@bakerdonelson.com

*Attorneys for Plaintiff ProCraft Cabinetry, Inc.*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 10th day of October 2018, the foregoing was served upon the Defendants represented by counsel via the Court's CM/ECF system. All other parties will be served via U.S. Mail, postage prepaid, and/or personal service as soon as practicable.

Joseph F. Welborn, III
Taylor B. Mayes
Terrence M. McKelvey
Butler Snow LLP
The Pinnacle at Symphony Place
150 Third Avenue, South, Suite 1600
Nashville, Tennessee 37201
Tel: (615) 651-6700
Fax: (615) 651-6701
Joe.welborn@butlersnow.com
Taylor.mayes@butlersnow.com
Terrence.mckelvey@butlersnow.com

Trent P. Cornell
Molly S. DiRago
Christina J. Lesko
Troutman Sanders
One North Wacker Drive, Suite 2905
Chicago, Illinois 60606
Tel: (312) 759-1920
Fax: (312) 759-1939
Trent.cornell@troutman.com
Molly.dirago@troutman.com
Christina.Lesko@troutman.com

*Attorneys for Defendants Qiang Huang and Min Hua Lin*

ProCraft Cabinetry Urbandale
c/o an Officer, Managing or General Agent, or other Agent authorized by appointment or law to receive service of process
10052 Justin Drive, Suite H, Urbandale, Iowa 50322

Hunt Premier Properties LLC
d/b/a ProCraft Cabinet & Granite Depot
c/o Qiao Hunt, Registered Agent
213 West Stoneridge Drive
Milford, Ohio 45150

William B. Jakes
Howell & Fisher PLLC
300 James Robertson Parkway
Nashville, Tennessee 37201
Tel: (615) 244-3370
Fax: (615) 244-3518
bjakes@howell-fisher.com

*Attorneys for Defendants Sweet Home Kitchen & Bath, Inc.; ProCraft Cabinetry Florida, LLC; ProCraft Cabinetry Dallas, LLC; ProCraft Cabinetry Houston, LLC; ProCraft Cabinetry Seattle, LLC; Shu Lin; Yao Zhao; Xiguang Tang; Paul Chin Yang Lin, Tao Yu Zheng; Jia Liu; Qiqi Jiang; Wenchen Chen; Longrong Lin; Kevin Guo; Changuang Lin; Shaochun Lin; Shengquan Guo; Changzhu Lin; and Qingfen Chen*

Brian T. Boyd
Bennett J. Wills
Law Office of Brian T. Boyd
750 Old Hickory Boulevard
Building 2, Suite 150
Brentwood, TN 37027
Telephone: (615)371-6119
Fax: (615)523-2595
Email: brian@boydlegal.co
       bennett@boydlegal.co

*Attorneys for Third-Party Defendant, Sophia Chen*

The Cabinet and Granite Depot LLC
d/b/a ProCraft Cabinet & Granite Depot
c/o Qiao Yun Huang, Registered Agent
9850 Princeton Glendale Road, Suite E
Cincinnati, Ohio 45246

Qiao Yun Huang

Derick Hunt
213 West Stoneridge Drive
Milford, Ohio 45150

Qiao Hunt
213 West Stoneridge Drive
Milford, Ohio 45150

Yongchun Yang
4717 Belmont Park Terrace
Nashville, Tennessee 37215

9850 Princeton Glendale Road, Suite E
Cincinnati, Ohio 45246

ProCraft Custom Cabinets LLC
605 Red Oak Rd.
Stockbridge, Georgia 30281

/s/ Samuel F. Miller
Samuel F. Miller